# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

JENNIFER L. KASILAG, LOUIS         )
MELLINGER, JUDITH              )
M. MENENDEZ, JACQUELINE M.  )
ROBINSON, and                 )
LINDA A. RUSSELL, et al.,       )
                           )
        Plaintiffs,          )
                           )
     v.                       )
                           )
HARTFORD INVESTMENT        )
FINANCIAL SERVICES, LLC,     )
                           )
        Defendant.         )
_____)

Civil Action. 11-cv-1083 (RMB) (AMD)

Motion Date:  July 18, 2011
Oral Argument Requested
Document Filed Electronically

## REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT HARTFORD INVESTMENT FINANCIAL SERVICES, LLC'S MOTION TO DISMISS ALL CLAIMS AGAINST IT PURSUANT TO RULE 12(b)(6)

**RIKER DANZIG SCHERER HYLAND PERETTI LLP**
By:    Anthony J. Sylvester
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800 (tel)
(973) 538-1984 (fax)
asylvester@RIKER.com

**ROPES & GRAY LLP**
By:    Harvey J. Wolkoff
        Robert A. Skinner
        Janna J. Hansen
        Allison M. Boscarine
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
(617) 951-7000

# TABLE OF CONTENTS

**Page**

I.     THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A
       PLAUSIBLE CLAIM THAT HIFSCO'S INVESTMENT MANAGEMENT FEES ARE
       "SO DISPROPORTIONATELY LARGE" THAT THEY BEAR "NO REASONABLE
       RELATIONSHIP TO THE SERVICES RENDERED" ..................................................... 1

       A.     Plaintiffs' sparse factual allegations do not support a plausible
              inference that HIFSCO's fees could not have been the result of arms-
              length bargaining .................................................................................................... 1

       B.     Plaintiffs cannot mask their inadequate factual allegations by relying
              on pre-*Iqbal/Twombly* cases for support .................................................................. 5

II.    THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A
       PLAUSIBLE CLAIM THAT HIFSCO'S 12B-1 FEES ARE "SO
       DISPROPORTIONATELY LARGE" THAT THEY BEAR "NO REASONABLE
       RELATIONSHIP TO THE SERVICES RENDERED" ..................................................... 8

       CONCLUSION ....................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

CASES

Amron v. Morgan Stanley Inv. Advisers, Inc.,
464 F.3d 338 (2d Cir. 2006)........................................................................10

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007).............................................................................. passim

Curran v. Principal Mgmt. Corp.,
No. 09 Civ. 433, 2010 WL 2889752 (S.D. Iowa June 8, 2010), vacated in part on
other grounds, 2011 WL 223872 (S.D. Iowa Jan. 24, 2011)............................6, 7, 9

Curran v. Principal Mgmt. Corp.,
No. 09 Civ. 433, 2011 WL 223872 (S.D. Iowa Jan. 24, 2011)...........................6, 7

Fowler v. UPMC Shayside,
578 F.3d 203 (3d Cir. 2009)...........................................................................4

Frederico v. Home Depot,
507 F.3d 188 (3d Cir. 2007)...........................................................................4

Hoffman v. UBS-AG,
591 F. Supp. 2d 522 (S.D.N.Y. 2008)..............................................................10

In re Am. Mut. Funds Fee. Litig.,
No. 04-5593, 2009 WL 5215755 (C.D. Cal. Dec. 28, 2009)....................................8

In re Evergreen Mut. Funds Fee Litig.,
240 F.R.D. 115 (S.D.N.Y. 2007) ....................................................................3

In re Federated Mutual Funds Excessive Fee Litigation,
No. 04 Civ. 532, 2009 WL 5821045 (W.D. Pa. Sept. 30, 2009) ..............................6

In re Franklin Mut. Funds Fee Litig.,
478 F. Supp. 2d 677 (D.N.J. 2007) ................................................................10

In re Scudder Mut. Funds Fee Litig.,
No. 04 Civ. 1921, 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007) ...........................10

ING Principal Protection Funds Deriv. Litig.,
369 F. Supp. 2d 163 (D. Mass. 2005) .............................................................10

Jones v. Harris Assocs., L.P.,
130 S. Ct. 1418 (2010).......................................................................... passim

*Levy v. Alliance Capital Mgmt. L.P.*,
   No. 97 Civ. 4672, 1998 WL 744005 (S.D.N.Y. Oct. 26, 1998) .............................................10

*Migdal v. Rowe Price-Fleming Int'l, Inc.*,
   248 F.3d 321 (4th Cir. 2001) .........................................................................................4, 7

*Migdal v. Rowe Price-Fleming Int'l, Inc.*,
   No. AMD 98-2162, 2000 WL 350400 (D. Md. Mar. 20, 2000) ..........................................7

*Olesh v. Dreyfus Corp.*,
   No. 94 Civ. 1664, 1995 WL 500491 (E.D.N.Y. Aug. 8, 1995) .........................................10

*Turner v. Davis Select Advisers LP*,
   No. 08 Civ. 421, slip. op. (D. Ariz. Jun. 1, 2011) .........................................................6, 9

*Yameen v. Eaton Vance Distribs., Inc.*,
   394 F. Supp. 2d 350 (D. Mass. 2005) ..........................................................................10

*Yampolsky v. Morgan Stanley Inv. Advisers Inc.*,
   Nos. 03 Civ. 5710, 5896, 2004 WL 1065533 (S.D.N.Y. May 12, 2004), *aff'd sub
   nom. Amron v. Morgan Stanley Inv. Advisers, Inc.*, 464 F.3d 338 (2d Cir. 2006) ...................7

OTHER AUTHORITIES

Mutual Fund Distribution Fees; Confirmations, Securities Act Release No. 9128,
   Exchange Act Release No. 62544, Investment Company Act Release No. 29367, 75
   Fed. Reg. 47064, 47065 (proposed Aug. 4, 2010) ...................................................8

Order Approving Proposed Rule Change Relating to the Limitation of Asset-Based Sales
   Charges as Imposed by Investment Companies, Exchange Act Release No. 30897, 57
   Fed. Reg. 30985-02, 30889 (July 13, 1992) ...........................................................8

MISCELLANEOUS

*Barron's*, "The New Champs" (Feb. 1, 2010) ..................................................................5

FUND DIRECTIONS, *18th Annual Mutual Fund Awards, Trustee of the Year Nominees* (Feb.
   2011 ed.) ....................................................................................................................5

http://www.investopedia.com/terms/1/12b-1plan.asp ...................................................9

Quinn Curtis and John Morley, "An Empirical Study of Mutual Fund Excessive Fee
   Litigation: Do the Merits Matter?", May 2011, *available at*
   http://ssrn.com/abstract=1852652 ...........................................................................5

I.      **THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A PLAUSIBLE CLAIM THAT HIFSCO'S INVESTMENT MANAGEMENT FEES ARE "SO DISPROPORTIONATELY LARGE" THAT THEY BEAR "NO REASONABLE RELATIONSHIP TO THE SERVICES RENDERED"**

Plaintiffs' Opposition confirms that they do not have a sufficient factual basis to support a plausible claim that HIFSCO's investment management fees are excessive under the stringent pleading requirements of *Twombly* and *Iqbal* and the high liability standard established by *Jones* – that HIFSCO's fees were "so disproportionately large" that they "bear[] no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Jones v. Harris Assocs., L.P.*, 130 S. Ct. 1418, 1426 (2010). Plaintiffs primarily allege that the Funds' independent trustees should have insisted on lower fees because (i) HIFSCO's management fees are higher than the fees it pays to the Funds' sub-advisors, Opp. at 19-20; and (ii) HIFSCO's management fees are higher than those paid by non-Fund institutional clients. Opp. at 20-21. But plaintiffs fail to allege *facts* that would show that these comparisons are apt, instead simply waving away by *ipse dixit* the differences in services provided for these fees. The Supreme Court has made clear that a valid pleading requires more – a plausible factual basis to conclude that the fees approved by the directors are so out of bounds that they *could not* have resulted from arm's-length bargaining. Plaintiffs cannot satisfy this high standard by asserting that such facts may turn up in discovery, particularly where the documents attached to their own Complaint and facts in the public record show the *implausibility* of plaintiffs' theory.

A.      **Plaintiffs' sparse factual allegations do not support a plausible inference that HIFSCO's fees could not have been the result of arms-length bargaining.**

Plaintiffs' central theory is that HIFSCO received higher management fees than the Funds' sub-advisors even though virtually all management responsibilities were purportedly delegated to the sub-advisors. *See* Opp. at 6-9. Plaintiffs thus ask the Court to assume that

HIFSCO rendered itself inconsequential by outsourcing its role to its sub-advisors.  *See* Opp. at 6-7; Compl. ¶ 60.  This assertion ignores the investment management agreements attached to plaintiffs' own Complaint – which detail the variety of functions that HIFSCO performs in exchange for its fees.  *See* Def. Mem. at 5, 7 16-17; Compl. Exs. 1 and 2.  Plaintiffs have not pled a single fact to make plausible their assertion that an overwhelmingly independent Board voted, either from a perverse motive or a dearth of information, to approve an arrangement in which a management company would be paid for doing virtually nothing.  Plaintiffs have failed to nudge their claims across the line from *conceivable* to *plausible*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Def. Mem. at 18.

The Supreme Court made abundantly clear in *Jones* that mere fee differentials do not establish a § 36(b) claim absent the required factual basis making such a comparison meaningful.  Although the Court was not presented with the sub-advisory fee comparison, it did caution courts not to rely on "inapt" comparisons between a mutual fund management fee and a fee charged to institutional clients:  "there may be significant differences between the services provided by an investment adviser to a mutual fund and those it provides to a pension fund which are attributable to the greater frequency of shareholder redemptions in a mutual fund, the higher turnover of mutual fund assets, the more burdensome regulatory and legal obligations, and higher marketing costs."  *Jones*, 130 S. Ct. at 1428-29.  Plaintiffs offer no facts about relative services, performance, costs, or anything else that would make their proposed fee comparisons probative.

With respect to the Board's fee approval process, plaintiffs offer only the circular conclusion that the Funds' Board could not have been diligent in its fee approval process because a diligent Board would not have approved the fees.  Opp. at 13 ("A conscientious Board would

have no reason to pay a large fee to a company . . . to perform modest ministerial work."). Such circular reasoning does not pass muster under *Twombly* and *Iqbal*. Plaintiffs then insist that the Board *must have* "precipitously approved [HIFSCO's] fees" because they "did not hold separate meetings for each Fund, but rather approved the investment management and 12b-1 fees for all 85 funds." Opp. at 14. Plaintiffs speculate that the Board spent only 23 minutes considering the management agreements for each Fund. *Id.* But in reality, as reflected in the public record, "[t]he Board considered information furnished to the Board at its meetings *throughout the year*," not just the "four days" that plaintiffs seize upon. Boscarine Decl. Ex. 2 ((Advisers Fund Annual Report dated October 31, 2010, at 36) (emphasis added).[1] Significantly, plaintiffs have not offered a single fact that the Board allegedly failed to take into account. Other courts have dismissed § 36(b) claims making these same types of assertions. *See* Def. Mem. at 20; *see also In re Evergreen Mut. Funds Fee Litig.*, 240 F.R.D. 115, 122 (S.D.N.Y. 2007) (allegations that it was "'unlikely' that [the trustees] 'could devote the amount of time required' due to the number of portfolios they oversee and their other high level positions with other companies" are "insufficient to survive a motion to dismiss").

Plaintiffs' allegations about HIFSCO's profitability and the extent to which HIFSCO shares economies of scale with the Funds' shareholders also fail to bolster the plausibility of their claims. Plaintiffs assert in their Opposition that HIFSCO "failed to pass along economies of scale to the Plaintiffs because the breakpoints were set so high as to be unattainable, and because the fee reductions, even if reached, are miniscule," Opp. at 24. But these allegations are not included in plaintiffs' Complaint, and courts "do not consider after-the-fact allegations in

---

[1] Moreover, all but one of the Funds' directors have served on the Board for several years, and thus consider each Fund and its fee schedule over a multi-year time horizon. *See* Boscarine Decl. Ex. 1 (Combined Statement of Additional Information for the Hartford Mutual Funds dated March 1, 2011 at 43-46).

determining the sufficiency of [a] complaint." *Frederico v. Home Depot*, 507 F.3d 188, 201 (3d Cir. 2007)). In any event, although plaintiffs complain that the Board should have negotiated different breakpoints, the Supreme Court has unequivocally instructed that § 36(b) does not call for "judicial second-guessing of informed board decisions," but instead provides a limited check on outlier fees that bear "no reasonable relationship" to the services rendered. *Jones*, 130 S. Ct. at 1430 (noting that "courts are not well suited to make such precise calculations").[2]

Finally, plaintiffs attempt to justify the dearth of factual support in their Complaint by arguing that they cannot know the salient facts without taking discovery, because the information is in HIFSCO's exclusive possession. Opp. at 21. But a complaint cannot survive a motion to dismiss on the mere hope that discovery will unearth evidence to support a claim. *See Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 328 (4th Cir. 2001) ("[P]laintiffs cannot simply promise the court that once they have completed discovery, something will turn up."); *Fowler v. UPMC Shayside*, 578 F.3d 203, 213 (3d Cir. 2009).

Plaintiffs also skip over the wide array of salient facts available in the public record that undermine the plausibility of their position. As detailed in HIFSCO's opening brief, the litany of SEC-mandated information that is available in the public record would (1) enable a comparison of the Funds' fees schedules with those of other funds with two-tier advisory structures; (2) enable a comparison of the Funds' expense ratios to those of other funds, *see* Def. Mem. at 21-23; (3) show the extent to which the Board voted to increase or decrease fees in recent years, *id.* at 6-7, 9; (4) show whether the Board voted to implement additional breakpoints in recent

---

[2] Although plaintiffs trumpet HIFSCO's regulatory settlement regarding "shelf space" agreements in the 2000 to 2003 time period, Opp. at 13, such allegations are wholly irrelevant to plaintiffs' claims. In addition to the fact that the time period at issue in this case is at least seven years later, plaintiffs cannot colorably allege that "shelf space" allegations – which relate solely to mutual fund *sales* practices – have anything to do with compensation for investment management services. This is a pure red herring.

years, *id.* at 6-7; (5) show whether the Board is comprised of the statutorily-mandated complement of independent directors, *id.* at 4-5; and (6) show performance data revealing any subpar returns for the Funds.[3]  Thus, the problem for plaintiffs is that the salient information *is* publicly available, but undermines their case.  Courts have granted motions to dismiss § 36(b) claims like these prior to discovery, often pointing to the array of facts regarding mutual funds that are available to litigants in the public record.  *See* Def. Mem. at 17-18, 20-21 & n.16, 22-23.

**B.    Plaintiffs cannot mask their inadequate factual allegations by relying on pre-*Iqbal/Twombly* cases for support.**

In arguing that complaints with allegations as thin as theirs have withstood motions to dismiss, plaintiffs rely primarily on cases decided before the Supreme Court's landmark decisions in *Twombly* and *Iqbal* in arguing that complaints with allegations as thin as theirs have withstood motions to dismiss.  *See* Opp. at 2, 8, 15, 21.  Plaintiffs' reliance on these cases, many of which parroted verbatim allegations and passages now reappearing in plaintiffs' pleading, highlights the rote nature of the Complaint.[4]  In a recent decision, by contrast, a § 36(b) claim regarding advisory fees was dismissed under *Twombly*, *Iqbal* and *Jones*:  "Plaintiff's allegations largely consist of general conclusions, not facts, and Plaintiff does not explain how any of the

---

[3] *See also Barron's*, "The New Champs" (Feb. 1, 2010) (ranking Hartford Funds in top ten mutual fund families for 2009) attached hereto as Ex. A (excerpted and reprinted); FUND DIRECTIONS, *18th Annual Mutual Fund Awards, Trustee of the Year Nominees*, at 15 (Feb. 2011 ed.), attached hereto as Ex. B (noting that Hartford Funds Chair Robert Gavin "led the board in reducing fees for institutional, retirement and retail share classes of 42 equity and fixed income funds, including some that were cut by up to 30 basis points," which included some of the Funds at issue).  *See* Def. Mem. at 6-7.

[4] In a recently-published empirical study of this string of copy-cat cases under § 36(b), the authors conclude that the size of management fees appears to have little or nothing to do with whether a fund adviser is targeted for litigation.  *See* Quinn Curtis and John Morley, "An Empirical Study of Mutual Fund Excessive Fee Litigation:  Do the Merits Matter?", May 2011, *available at* http://ssrn.com/abstract=1852652 (concluding that "the size of a fund's family is the strongest predictor of whether the fund will be targeted for an excessive fee suit; fees are a much weaker predictor").

-5-

facts alleged show that a particular fee was 'so disproportionately large . . . .'" *Turner v. Davis Select Advisers LP*, No. 08 Civ. 421, slip. op. at 13 (D. Ariz. Jun. 1, 2011), attached hereto as Ex. C.

The two post-*Twombly* decisions cited by plaintiffs relied heavily on pre-*Twombly* cases and reasoning, and are in any event distinguishable on their facts. *In re Federated Mutual Funds Excessive Fee Litigation*, No. 04 Civ. 532, 2009 WL 5821045 (W.D. Pa. Sept. 30, 2009), involved a fund with no fee breakpoints at all, which the court found in "striking contrast with the prevailing practice in the mutual fund industry." *Id.* at *6. The court also noted that the fund had the single highest expense ratio of a group of 266 funds, and had received a "Stewardship Grade" of "F" from Morningstar. *Id.* Plaintiffs in this case have not made any such allegations (nor could they). The *Federated* court also relied heavily on four other decisions – all of which were pre-*Twombly*. *See id.* at *8. For its part, the court in *Curran v. Principal Mgmt. Corp.*, No. 09 Civ. 433, 2010 WL 2889752 (S.D. Iowa June 8, 2010) ("*Curran I*"), cited *no* § 36(b) case law in support of its decision that the factual allegations were sufficient to state a claim, *id.* at *9, and is readily distinguishable on its facts. The court emphasized that, because of the unique "fund of funds" structure in place there, each plaintiff was allegedly paying "four layers" of investment management fees: (i) a fee to the adviser of the fund-of-funds owned by plaintiff; (ii) a fee to the sub-advisors of those funds; (iii) fees to the advisers of the fourteen or more "underlying funds" owned by the fund-of-funds; and (iv) fees to the sub-advisers of "underlying funds." These allegations have no analog here.[5]

---

[5] In a later decision, the *Curran* court partially reconsidered its original order and dismissed the plaintiffs' claims against the "underlying funds," holding that plaintiffs lacked standing under § 36(b) to assert claims regarding funds they did not own directly – although their claims against the fund-of-funds (which they owned directly) could move forward. *Curran v. Principal Mgmt. Corp.*, No. 09 Civ. 433, 2011 WL 223872 (S.D. Iowa Jan. 24, 2011) ("*Curran II*"). Plaintiffs

The Complaint fails to plausibly allege facts supporting plaintiffs' theory that the Funds' largely independent Board of Directors decided to pay HIFSCO something for nothing.[6] Plaintiffs have simply pointed to the differential between HIFSCO's fees and the sub-advisors' fees as sufficient to sustain their complaint. But that is not enough, post-*Iqbal*, to support a plausible contention – as opposed to merely a speculation that is as inconceivable as conceivable – that an independent board of directors approved fees so excessive and disproportionate that they could not have been the result of arm's-length negotiations. Plaintiffs' insistence that they cannot obtain the facts needed to make their claim plausible is belied by the myriad facts in the public record that they quite conspicuously have failed to cite. Because plaintiffs' allegations do not meet the high pleading bar set by *Jones*, *Twombly*, and *Iqbal*, Count I should be dismissed.

---

here assert in their Opposition that *Curran I* is thus no longer distinguishable because *Curran II* "eliminat[ed] the multi-layer of fees, while leaving intact the claims for fees identical to those at issue in this case." Opp. at 8-9. This is flatly incorrect. In *Curran I*, the court was clear that "four layers of fees . . . are charged for the management of the <u>SAM Funds</u>" – *i.e.*, the fund-of-funds held directly by the plaintiffs. The court in *Curran II* did not revisit its earlier analysis regarding whether the complaint stated a claim under § 36(b), and nowhere suggested that dismissal of the "underlying funds" altered its analysis regarding the fund-of-funds. In any event, HIFSCO respectfully submits that *Curran I* was wrongly decided, citing no § 36(b) case law and failing to properly apply the pleading standards of *Twombly* and *Iqbal*.

[6] Plaintiffs' efforts to distinguish the cases cited by HIFSCO in its opening brief, Opp. at 5 & n.6, 9, 18, 22, are unpersuasive, and, in some instances, flatly incorrect. For example, plaintiffs assert that the complaint in *Migdal*, 248 F.3d 32, failed because it "only pled facts relating to director compensation or alleged that the directors served on multiple boards." Opp. at 18. In fact, the district court noted that plaintiffs had also alleged, *inter alia*, "that two or three other (allegedly similar) funds charge fees amounting to only from 1/2 to 1/3 of those charged by the underlying funds, while outperforming the underlying funds" and that "defendants' earnings increased by more than 20%." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, No. AMD 98-2162, 2000 WL 350400, *3 (D. Md. Mar. 20, 2000). Similarly, the district court in *Amron* dismissed the complaints at issue despite allegations that the "fund underperformed as compared to the S&P 500 Index, had an unfavorable expense ratio, and that the trustees were poor 'watchdogs.'" *Yampolsky v. Morgan Stanley Inv. Advisers Inc.*, Nos. 03 Civ. 5710, 5896, 2004 WL 1065533 (S.D.N.Y. May 12, 2004), *aff'd sub nom. Amron v. Morgan Stanley Inv. Advisers, Inc.*, 464 F.3d 338 (2d Cir. 2006).

II.   **THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A
      PLAUSIBLE CLAIM THAT HIFSCO'S 12B-1 FEES ARE "SO
      DISPROPORTIONATELY LARGE" THAT THEY BEAR "NO REASONABLE
      RELATIONSHIP TO THE SERVICES RENDERED"**

Plaintiffs' Opposition confirms the absence of facts to plausibly support their claim that

HIFSCO's distribution fees are excessive under § 36(b).  While plaintiffs essentially assert that

distribution fees in general are not good for shareholders, Congress and the SEC have both

reached the opposite conclusion.  Indeed, the SEC expressly authorizes these fees and just last

year issued a release recognizing that 12b-1 fees are beneficial to shareholders for a number of

reasons.  *See* Mutual Fund Distribution Fees; Confirmations, Securities Act Release No. 9128,

Exchange Act Release No. 62544, Investment Company Act Release No. 29367, 75 Fed. Reg.

47064, 47065 (proposed Aug. 4, 2010) (hereinafter, "SEC 2010 Release").[7]  Plaintiffs must

lobby Congress and the SEC for the change they seek, not pursue a § 36(b) claim in this Court.

*See, e.g.*, *In re Am. Mut. Funds Fee. Litig.*, No. 04-5593, 2009 WL 5215755, at *46 (C.D. Cal.

Dec. 28, 2009) (noting that "the elimination or modification of Rule 12b-1 is a matter for the

SEC").

Plaintiffs also argue that distribution fees calculated as a percentage of assets under

management should not be allowed, and are thus *per se* excessive.  Opp. at 3.  But pursuant to

statutory authority, the Financial Industry Regulatory Authority ("FINRA") explicitly allows

funds to pay distribution fees as a function of assets under management – and the SEC has

approved FINRA's rule.[8]  The assessment of fees as a percentage of assets under management is

---

[7] SEC 2010 Release at 47065 (current 12b-1 system provides investors "choices as to how they
pay for [brokerage] services"); *id.* at 47111 (proposed new rule "would benefit investors by
permitting funds to continue to pay [with distribution fees] for . . . follow-up services provided to
investors by brokers and other intermediaries after the sale has been made"); *id.* at 47111-12.

[8] *See* Order Approving Proposed Rule Change Relating to the Limitation of Asset-Based Sales
Charges as Imposed by Investment Companies, Securities and Exchange Act of 1934 Release

recognized as a fundamental aspect of the mutual fund industry, and the mere fact that the

Funds' fees are calculated in this standard fashion cannot form the basis for a plausible allegation

that the fees are "so disproportionate" under *Jones*.  *See, e.g.*, http://www.investopedia.com/

terms/1/12b-1plan.asp (noting that 12b-1 fees are typically paid on "an annual percentage based

on the current value of the investment on an annual basis").[9]

     *Jones* requires a comparison of fees to the services rendered.  However, the Opposition

fails to make even passing reference to the distribution services provided by HIFSCO, preferring

instead to assume that such services – if any – *must* be "modest."  Opp. at 10.  Plaintiffs then

inexplicably compare the distribution fees to the *advisory fees*, Opp. at 23, an apples-to-oranges

comparison that finds no foundation in the law.[10]  *See Turner*, slip. op. at 14 (granting motion to

dismiss advisory fee and 12b-1 fee claims and noting that "the ratio between 12b-1 and advisory

fees is irrelevant to a § 36(b)").  Courts routinely dismiss claims regarding 12b-1 distribution

fees where, as here, plaintiffs have failed to plead excessiveness of the fees in the context of the

---

No. 30897, 57 Fed. Reg. 30985-02, 30889 (July 13, 1992) (agreeing that FINRA/NASD's fee limit has "carrie[d] out [FINRA's] congressional mandate to prevent excessive sales charges on mutual funds shares"); SEC 2010 Release, 75 Fed. Reg. at 47069 (discussing SEC approval of FINRA rules).  In fact, a proposed amendment to Rule 12b-1 from 1988 requiring 12b-1 payments to be linked to specific distribution services – as plaintiff argues should be done here – was never adopted by the Commission.  *See* SEC 2010 Release, 75 Fed. Reg. at 47068 n.63 (discussing 1988 proposals).

[9] HIFSCO respectfully submits that the court in *Curran I*, 2010 WL 2889752, misapplied the *Jones* standard in its original decision declining to dismiss the plaintiff's 12b-1 fee claim.  The *Curran* court appears to have mistakenly credited the plaintiff's allegation that "the distribution fees are excessive because they are based on the net asset value of the Subject Funds, rather than the distribution activity, *i.e.*, the number of shares sold."  *Id.* at *11.  The parties did not bring to the *Curran* court's attention the SEC's statements and actions approving of asset-based 12b-1 fees.  Indeed, the logical extension of *Curran*'s holding is that a cookie-cutter 12b-1 fee claim could be stated against *any* fund complex where the fees are calculated as a percentage of the fund's net assets – which is essentially every fund complex in the industry receiving such fees.

[10] In any event, plaintiffs' citation to the Conservative Allocation Fund fees is misleading.  As a fund-of-funds, the Conservative Allocation Fund charges a relatively small advisory fee ranging from 7 basis points to 15 basis points (with breakpoints).  *See* Compl. Ex. 1.

actual services provided.  *See, e.g.*, *Amron*, 464 F.3d at 344; *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d 677, 687 (D.N.J. 2007).[11]

Plaintiffs' argument that Class B shareholders should not continue to be charged 12b-1 fees because that share class is closed to new investors is also without merit.  Opp. at 10.  As explained in HIFSCO's opening brief, the Class B shareholders affirmatively chose the option of paying ongoing 12b-1 fees instead of a front-end sales charge, an option that regulatory authorities and courts explicitly have recognized and permitted.  *See* Def. Mem. at 27; NASD Notice 93-12, Questions and Answers About New NASD Rules Governing Investment Company Sales Charges (Feb. 1993), Question No. 6, *available* at 1993 WL 1434082 (explaining that even where a fund stops selling its shares, it may still pay asset-based sales charges).

Plaintiffs next assert that the Hartford Money Market Fund, Class Y shares, and the Vanguard Funds[12] are "relevant benchmarks" for HIFSCO's distribution fees and services.  Opp. at 23.  However, plaintiffs offer only their own conclusions that the services are the same.  Opp. at 11 ("[T]he Hartford Money Market Fund, as with all of the Plaintiffs' Funds, are offered to the general public, and thus require the same distribution services."); *id.* ("If Class Y and the Money

[11] *See also Yameen v. Eaton Vance Distribs., Inc.*, 394 F. Supp. 2d 350, 356 (D. Mass. 2005); *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 539 (S.D.N.Y. 2008); *In re Scudder Mut. Funds Fee Litig.*, No. 04 Civ. 1921, 2007 WL 2325862, *4, 14-15 (S.D.N.Y. Aug. 14, 2007); *ING Principal Protection Funds Deriv. Litig.*, 369 F. Supp. 2d 163, 166 (D. Mass. 2005); *Levy v. Alliance Capital Mgmt. L.P.*, No. 97 Civ. 4672, 1998 WL 744005, *4 (S.D.N.Y. Oct. 26, 1998); *Olesh v. Dreyfus Corp.*, No. 94 Civ. 1664, 1995 WL 500491, *19, 21 (E.D.N.Y. Aug. 8, 1995); Def. Mem. at 26-30.

[12] Plaintiffs note that the Vanguard funds do not charge 12b-1 fees.  Opp. at 23.  Vanguard fund shareholders do, however, shoulder expenses for fund distribution activity, albeit not pursuant to a Rule 12b-1 distribution arrangement.  *See, e.g.*, Vanguard Fixed Income Securities Funds, Statement of Additional Information dated May 26, 2011 at B-31, *available at* https://personal.vanguard.com/pub/Pdf/sai028.pdf (stating that Vanguard Marketing Corporation, a wholly-owned subsidiary of Vanguard, as principal underwriter for the funds, performs "marketing, promotional, and distribution activities . . . that are primarily intended to result in the sale of the funds' shares" and that "each fund contributes to VMC's marketing and distribution expenses").

Market Fund can function in the absence of marketing and distribution services, then

presumably, the marketing and distribution services with respect to the remaining classes are

either unnecessary or excessive.").  The Court is not required to accept such conclusions as true

facts for purposes of a motion to dismiss, nor should it.  *See Jones*, 130 S. Ct. at 1438 (cautioning

that "courts must be wary of inapt comparisons"); *see* Def. Mem. at 28 (SEC recognizes that

mutual funds generally do not charge their institutional share classes 12b-1 fees); SEC Staff

Memo, at 7-8 (contrasting the different services provided by no-load funds, which do not have

sales charges or 12b-1 fees, and funds charging such fees).

Finally, plaintiffs contend that the Funds' breakpoints should be lower because "the

purpose of the services paid for by the 12b-1 fee, from the investor's perspective, is to reach the

breakpoint."  Opp. at 12.  Even if this were the sole reason for the payment of 12b-1 fees (which,

as explained above, it is not), "reach[ing] the breakpoint" is simply not the standard by which

fees are measured under § 36(b).  Indeed, plaintiffs' argument amounts to no more than an

elaboration on the "no-benefit" theory of liability asserted by § 36(b) plaintiffs time and again –

a theory which has been roundly rejected by the courts.  *See* Def. Mem. 25-30.  The Court should

reject plaintiffs' attempt to extend the scope of § 36(b) liability beyond that which was

authorized by Congress and defined by the Supreme Court in *Jones*.

Plaintiffs' Opposition simply fails to point to any necessary factual support for their

12b-1 distribution fee claim.  By failing to allege facts about the nature or quality of the

distribution services financed by these fees, plaintiffs have offered no yardstick of any kind with

which the Court can measure the alleged excessiveness of the 12b-1 fees, or their proportionality

against the services rendered.  Accordingly, under *Jones*, *Twombly*, and *Iqbal*, Count II must also

be dismissed.

## CONCLUSION

For the foregoing reasons, as well as those set forth in HIFSCO's opening brief, HIFSCO

respectfully requests that the Court enter an order dismissing the Complaint with prejudice for

failure to state a claim.

Dated:  July 11, 2011                         Respectfully submitted,

                                              RIKER DANZIG SCHERER HYLAND PERETTI LLP


                                              */s/ Anthony J. Sylvester*
                                              Anthony J. Sylvester
                                              Headquarters Plaza
                                              One Speedwell Avenue
                                              Morristown, NJ 07962-1981
                                              (973) 538-0800 (tel)
                                              (973) 538-1984 (fax)
                                              avalenziano@RIKER.com

                                              Of Counsel:
                                              ROPES & GRAY LLP
                                              Harvey J. Wolkoff
                                              Robert A. Skinner
                                              Janna J. Hansen
                                              Allison M. Boscarine
                                              Prudential Tower
                                              800 Boylston Street
                                              Boston, MA 02199
                                              harvey.wolkoff@ropesgray.com
                                              robert.skinner@ropesgray.com
                                              janna.hansen@ropesgray.com
                                              allison.boscarine@ropesgray.com

                                              *Attorneys for Defendant Hartford*
                                              *Investment Financial Services, LLC*