UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

———————————————————
JENNIFER L. KASILAG, LOUIS      )
MELLINGER, JUDITH                )
M. MENENDEZ, JACQUELINE M.       )
ROBINSON, and                    )   Civil Action No. 11-cv-1083 (RMB) (AMD)
LINDA A. RUSSELL, et al.,        )
                                 )   Motion Date:  May 7, 2012
          Plaintiffs,            )   Oral Argument Requested
                                 )   Document Filed Electronically
     v.                          )
                                 )
HARTFORD INVESTMENT              )
FINANCIAL SERVICES, LLC,         )
                                 )
          Defendant.             )
———————————————————)

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
DEFENDANT'S MOTION TO DISMISS**

**RIKER DANZIG SCHERER HYLAND
PERETTI LLP**
By:   Anthony J. Sylvester
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800 (tel)
(973) 538-1984 (fax)
asylvester@RIKER.com

**ROPES & GRAY LLP**
By:   Harvey J. Wolkoff
      Robert A. Skinner
      Allison M. Boscarine
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
(617) 951-7000

## TABLE OF CONTENTS

                                                                                                                       **Page**

1.     Plaintiffs' New Factual Allegations Should Be Disregarded as an Improper Attempt to Further Amend the SAC ................................................................................1

2.     The SAC's Comparison to Sub-Advisory Fees Does Not Make Out a Plausible Claim that the Investment Management Fees are "So Disproportionately Large" that They "Bear No Reasonable Relationship to the Services Rendered" ...........................3

3.     The SAC's Allegations that HIFSCO Charges Higher Fees than Vanguard Does Not Plausibly Support a Claim that HIFSCO's Fees Were "So Disproportionately Large" ..................................................................................................................................4

4.     Plaintiffs' Theory of Liability Based on Comparison to Institutional Fees Should Be Limited to the Single Fund as to which the SAC Alleges Facts ....................................5

5.     Plaintiffs' Remaining "Gartenberg Factor" Allegations Do Not Form a Plausible Allegation that HIFSCO's Fees Were "So Disproportionately Large" ...............................6

6.     Plaintiffs' Modified "Disclosure" Theory Still Fails to Allege a Plausible Claim for Excessive 12b-1 Fees on Class A Shares ......................................................................7

7.     Plaintiffs Do Not Have Article III Standing to Pursue 12b-1 Fee Claims on Behalf of Class B Shareholders, and Even If They Did, Plaintiffs Have Alleged Conduct Entirely Consistent with Legal Activities ..............................................................................9

# **TABLE OF AUTHORITIES**

Page(s)

CASES

*Daily Income Fund, Inc. v. Fox*,
    464 U.S. 523 (1984) ..................................................................................................10

*DeMarco v. DepoTech Corp.*,
    149 F. Supp. 2d 1212 (S.D. Cal. 2001) ......................................................................4

*Frederico v. Home Depot*,
    No. Civ.A. 05-5579(JAP), 2006 WL 624901 (D.N.J. Mar. 10, 2006) *aff'd*, 507 F.3d
    188 (3d Cir. 2007) ......................................................................................................2

*Gallus v. Ameriprise*,
    --- F.3d ----, 2012 WL 1058976 (8th Cir. Mar. 30, 2012) .....................................6, 12

*Hoffman v. UBS-AG*,
    591 F. Supp. 2d 522 (S.D.N.Y 2008) .........................................................................7

*In re Franklin Mut. Funds Fee Litig.*,
    478 F. Supp. 2d 677 (D.N.J. 2007) .............................................................................7

*In re Goldman Sachs Mut. Funds Fee Litig.*,
    No. 04-2567, 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006) ........................................7

*In re Mut. Funds Inv. Litig.*,
    767 F. Supp. 2d 531 (D. Md. 2010) ............................................................................3

*In re Mutual Funds Investment Litigation*,
    519 F. Supp. 2d 580 (D. Md. 2007) ..........................................................................10

*In re Resource Am. Sec. Litig.*,
    CA. No. 5446, 2000 WL 1053861 (E.D. Pa. Jul. 26, 2000) ......................................4

*Jones v. Bureau of Prisons*,
    Civ. No. 10-0297 (NLH), 2012 WL 40160 (D.N.J. Jan. 9, 2012) ...............6, 7, 11, 12

*Operating Local 649 Annuity Trust Fund v. Smith Barney Mgmt., LLC*,
    595 F.3d 86 (2d Cir. 2010) .......................................................................................10

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
    632 F.3d 762 (1st Cir. 2011) ....................................................................................10

*Reso v. Artisan Partners Ltd. Partnership*,
    No. 11-cv-873, 2011 WL 5826034 (E.D. Wis. Nov. 18, 2011) .................................5

*Santiago v. Warminster Township*,
    629 F.3d 121 (3d Cir. 2010)......................................................................................11

*Santomenno v. John Hancock Life Ins. Co. (U.S.A.)*,
    No. 11-2520 (3d Cir. Apr. 16, 2012) .......................................................................10

*Schirmer v. Penkethman*,
    Civ. No. 10-1444, 2011 WL 1211324 ......................................................................1

*SEC v. Pentagon Capital Mgmt. PLC*,
    No. 08 Civ. 3324, 2012 WL 479576 (S.D.N.Y. Feb. 14, 2012) ................................3

Nowhere in their Opposition do Plaintiffs explain how the Second Amended Complaint ("SAC") corrects the failings the Court identified in the Amended Complaint ("AC"). Instead, Plaintiffs seek to prop up their allegations with entirely *new* allegations asserted for the first time in their opposition. In addition to being wholly improper as a procedural matter, these new "facts" do nothing to cure the defects in Plaintiffs' allegations under § 36(b). Like the AC before it, the SAC relies largely on inapt industry-wide allegations and/or conclusory assertions regarding HIFSCO's services that are belied by the very documents on which Plaintiffs rely – leaving the pleading as a whole void of any plausible basis to show that the fees were "so disproportionately large" that they "could not have been the product of arm's length bargaining."

1. **Plaintiffs' New Factual Allegations Should Be Disregarded as an Improper Attempt to Further Amend the SAC**

The SAC is Plaintiffs' third bite at the apple, following extensive briefing and argument of the shortcomings in plaintiffs' prior allegations. Nevertheless, Plaintiffs are still not content to rest on their pleading, but now attempt to bolster their claims further with the insertion of many entirely new "facts" in their opposition briefing – allegations that appear nowhere in the SAC.[1] However, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Schirmer v. Penkethman*, Civ. No. 10-1444 RMB/JS, 2011 WL 1211324, at *7 (D.N.J. Mar. 28, 2011) (Bumb, J.) (internal quotation marks omitted). In support, Plaintiffs have submitted *thirty* new exhibits, as compared to the *three* exhibits attached to the SAC. This maneuver is entirely improper, and these new allegations should be disregarded. Particularly after more than a year of briefing and argument over Plaintiffs' claims, HIFSCO should not be required to track a moving target while Plaintiffs continue to search for plausible claims. *See*

---

[1] The newly asserted facts relate to disparate topics such as the number of employees at HIFSCO, the size of the Funds' front-ends sales loads, HIFSCO's maintenance of shareholder records, and the state of mind of the Funds' independent directors.

*Frederico v. Home Depot*, No. Civ.A. 05-5579(JAP), 2006 WL 624901, at *2 (D.N.J. Mar. 10, 2006) *aff'd*, 507 F.3d 188, 201-02 (3d Cir. 2007) ("Not only has Plaintiff's maneuvering in this regard prejudiced Defendant by requiring Defendant to alter its arguments in response to Plaintiff's moving target of factual allegations, but it highlights the issue that the Court must address in the instant motion – the sufficiency (or insufficiency) of Plaintiff's allegations *in her complaint* . . . .").

It is telling that Plaintiffs apparently did not feel sufficiently confident about these new allegations to include them in their pleading.  For example, the opposition brief's repeated assertions regarding the number of HIFSCO employees are based upon carefully selected excerpts of a "Form ADV" that HIFSCO is required to file with the SEC, which were attached by Plaintiffs as Exhibit B to the Lakind Declaration.  *See* Opp. at 5, 7, 8, 11, 12, 14, 17, 22.  The date on this exhibit demonstrates that it was printed by Plaintiffs from the SEC website on November 14, 2011 – the very day the SAC was filed – and yet Plaintiffs elected to hold it in reserve for Motion to Dismiss briefing.  *See* Lakind Decl. ExApril 20, 2012. B.  Such tactics are contrary to the letter and spirit of the Federal Rules.[2]

In another attempt at belated misdirection, Plaintiffs now claim that "HIFSCO does not itself maintain [shareholder] records . . . as HIFSCO was required to rely on Plaintiffs to identify

---

[2]  As for its substance, Plaintiffs' new assertion that the Funds were being managed with only a handful of employees is a preposterous red herring.  Indeed, given the breadth of HIFSCO's responsibilities under the IMA, as discussed in the Motion, it should come as no surprise that literally hundreds of Hartford personnel are in fact engaged in providing those services to the Funds – all of whom are formally employed by other Hartford affiliates for administrative purposes, with their time allocated internally to HIFSCO's business.  Accordingly, only officers of HIFSCO are included on its Form ADV.  Plaintiffs' opposition offers absolutely no factual basis – because it cannot – to support the suggestion that the HIFSCO employees counted under the "investment advisory function" as that term is used in the SEC's Form ADV are the only employees engaged in providing the array of investment management and administrative services set forth in the IMA.

-2-

the share class of their respective investments." Opp. at 10. But Plaintiffs are undoubtedly well aware that most mutual fund shares are not purchased by individual investors directly from the funds themselves, but are instead purchased through third-party intermediaries (*e.g.*, Schwab or Fidelity) – and those intermediaries bundle the share purchases and sales of their individual investor clients into what are known as "omnibus accounts" in transacting with the funds. *See SEC v. Pentagon Capital Mgmt. PLC*, No. 08 Civ. 3324, 2012 WL 479576, at *25 (S.D.N.Y. Feb. 14, 2012) ("An omnibus account is a pooled account, meaning that multiple trades are bundled and submitted together under a single account number."); *In re Mut. Funds Inv. Litig.*, 767 F. Supp. 2d 531, 540 (D. Md. 2010) (explaining that "in an omnibus account, [the Fund] sees nothing but one big shareholder account"). To assert that HIFSCO does not maintain required shareholder records – simply because it cannot "look through" such omnibus accounts to determine what share classes the individual named Plaintiffs own – is implausible at best, and disingenuous at worst.

Accordingly, while it is always improper to introduce new allegations through an opposition to a motion to dismiss, Plaintiffs' attempts to do so here are particularly dubious – and these assertions should be disregarded entirely.

**2.     The SAC's Comparison to Sub-Advisory Fees Does Not Make Out a Plausible Claim that the Investment Management Fees are "So Disproportionately Large" that They "Bear No Reasonable Relationship to the Services Rendered"**

Regardless of whether the new factual assertions in the opposition are taken into account, nowhere in their brief do Plaintiffs explain how the SAC corrects the failings the Court identified in the AC regarding the sub-advisory fee comparison. Plaintiffs still assert conclusorily that "substantially all" of the investment management and administrative services required of HIFSCO are delegated to the sub-adviser – when the very documents relied upon by Plaintiffs show the opposite to be true. Def. Mem. at 11-12.

-3-

Plaintiffs' attempted reliance on a putative expert to resurrect its conclusory allegations is unavailing. Plaintiffs concede the established principle in the Third Circuit that expert declarations may not be considered on a motion to dismiss. *See* Opp. at 12 ("As HIFSCO argues, *Rose v. Bartle* holds that declarations may not be considered on a motion to dismiss.").[3] Nonetheless, Plaintiffs now argue that the allegations in the SAC that are derived from their putative expert's declaration may be considered by the Court. While otherwise-proper allegations supported by an expert may be included in a pleading under certain circumstances,[4] Plaintiffs here do not even attempt to refute that the Pomerantz declaration – and the corresponding SAC paragraphs – are the very same conclusory allegations (with little or no content specific to the Hartford Funds) that the Court rejected in considering Plaintiffs' AC. *See* Def. Mem. at 15. Indeed, the allegations about what "should be" the most important and expensive services and how HIFSCO "should have" charged less for its services are virtually unchanged from the AC.[5] *See id*. at 15 & n.9. Because *conclusory* allegations carry no additional weight merely because a putative expert echoes them, the Pomerantz declaration does nothing to elevate these allegations from the conceivable to the plausible.

3. **The SAC's Allegations that HIFSCO Charges Higher Fees than Vanguard Does Not Plausibly Support a Claim that HIFSCO's Fees Were "So Disproportionately Large"**

In the Opposition, Plaintiffs do nothing to distinguish the repeated holdings of courts in

---

[3] To the extent Plaintiffs' citation to *In re Resource Am. Sec. Litig.*, CA. No. 5446, 2000 WL 1053861 (E.D. Pa. Jul. 26, 2000), is intended to contravene the Third Circuit's clear holding in *Rose v. Bartle*, this unpublished decision is plainly not controlling authority. *See* Opp. at 12.
[4] *See, e.g.*, *DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1222 (S.D. Cal. 2001) ("A better approach might be to include the expert's *nonconclusory* assertions within specific paragraphs in the complaint." (emphasis added))
[5] *See, e.g.*, SAC ¶ 52 ("The evaluation and implementation of a fund's investment program is *generally* the most expensive, and important, investment management activity, with respect to *a fund*."); *id.* ¶ 78 ("[A]s set forth in the Declaration of Steven Pomerantz Ph.D., HIFSCO's total investment management fee for each Hartford Fund bore no reasonable relationship to the services it rendered."); *see also* Def. Mem. at 15 n.9.

§ 36(b) cases refusing to credit a comparison to Vanguard as relevant. *See* Def. Mem. at 16-17. Nor do Plaintiffs undertake to compare HIFSCO's fees to any other mutual fund adviser (including for-profit entities), comparators that are every bit as publicly available to Plaintiffs as are HIFSCO's and Vanguard's fees. In one decision heavily relied on by Plaintiffs, *Reso v. Artisan Partners Ltd. Partnership*, No. 11-cv-873, 2011 WL 5826034 (E.D. Wis. Nov. 18, 2011), the court denied the motion to dismiss but nevertheless agreed with the defendant that "extremely limited comparisons" to Vanguard funds "are of little value." *Id.* at *8.[6]

Thus, Plaintiffs are forced merely to reiterate their allegations that Vanguard's advisory fees are lower than HIFSCO's. It cannot plausibly be alleged that HIFSCO's fees are outside the range of what could have been negotiated at arm's length by simply pointing to just one data point at the very lowest end of the range. Indeed, by contending that Vanguard's fees of zero to one basis point are appropriate comparators, *see* SAC ¶ 171, Plaintiffs essentially allege that HIFSCO breached its fiduciary duties by not offering its services for free. There is no legal support for such a proposition, or for treating Vanguard as a relevant comparison.

4.  **Plaintiffs' Theory of Liability Based on Comparison to Institutional Fees Should Be Limited to the Single Fund as to which the SAC Alleges Facts**

Plaintiffs offer no reason why the litigation should proceed on the basis of an institutional fee comparison as to all six Funds owned by Plaintiffs when only one of the Funds even allegedly has an institutional fee counterpart for purposes of this comparison. The SAC compares the fees paid by the Hartford Inflation Plus Fund (a fixed-income (*i.e.*, bond) Fund sub-advised by HIMCO, which is an affiliate of HIFSCO) to the fees allegedly paid to HIMCO for managing fixed-income separate accounts for other clients. *See* SAC ¶¶ 180-81. But this

---

[6] Although the *Reso* court found the complaint to allege plausible claims under § 36(b), that complaint asserted facts *specific to the funds at issue* that are not present here, including that industry analyst Morningstar had allegedly given the adviser an "F" grade for fees.

single comparison between one Fund and two HIMCO-run separate accounts cannot justify full discovery and litigation as to *all* the Funds, particularly where most of the others are sub-advised by Wellington and thus can offer no analogous comparison. For example, the Hartford Capital Appreciation Fund – far and away the largest of the Funds at issue in this case – is an equity fund pursuing a "large-cap growth" strategy, sub-advised by Wellington. Plaintiffs nowhere allege that comparable services are being provided by HIFSCO or any of its affiliates to other clients for less – nor could they, as no HIFSCO affiliate offers such a strategy to any client.

Instead, Plaintiffs set up a straw man argument. Plaintiffs misconstrue HIFSCO as asserting that discovery should be limited to the single Fund referenced in this sub-allegation "because the other accounts HIMCO manages do not have similar investment strategies to those of the Hartford Funds." *See* Opp. at 17. This is flatly incorrect. HIFSCO maintains that discovery should be limited to the alleged Inflation Plus Fund "analogues" for the straightforward reason that this is the only comparison alleged in the SAC.

**5.     Plaintiffs' Remaining "*Gartenberg* Factor" Allegations Do Not Form a Plausible Allegation that HIFSCO's Fees Were "So Disproportionately Large"**

Plaintiffs argue that the litigation should proceed on the basis of its allegations about the remaining so-called "*Gartenberg* factors": economies of scale, conscientiousness of the Board, and profitability. Opp. at 19. Critically, however, these factors are not themselves the test of liability – the test remains the "so disproportionately large" standard that the Supreme Court embraced in *Jones*. 130 S. Ct. at 1426; *Gallus v. Ameriprise*, --- F.3d ----, 2012 WL 1058976, at *2 (8th Cir. Mar. 30, 2012) (citing *Jones*, 130 S. Ct. at 1426). The so-called "*Gartenberg* factors" are not the equivalent of *elements* of a § 36(b) claim, but are simply a "non-exhaustive" list of considerations that courts may wish to take into account when applying the ultimate standard. Plaintiffs thus cannot satisfy the *Twombly*/*Iqbal* pleading requirements merely by

asserting plausibly that HIFSCO enjoys economies of scale or profitable operations, but must show plausibly that the fees were so large as to be outside the bounds of what could be negotiated at arm's length.

The SAC's invocation of boilerplate "information and belief" assertions regarding the *Gartenberg* factors do nothing to meet this standard. For example, just as the AC before it, the current complaint does not identify any relevant information that the Board of Directors should have considered in approving the fees, but did not. The SAC also asserts that since HIFSCO and its sub-adviser, Wellington, have different breakpoints in their fee agreements, economies of scale are not "meaningfully" shared with the fund shareholders. *See* SAC ¶¶ 116, 126. Such conclusory allegations are insufficient because they say nothing about the costs per investor.[7] Finally, the SAC's allegations with respect to HIFSCO's profitability in managing the Funds rely primarily on "information and belief" and industry-wide generalizations. The SAC again focuses on the dollar amounts of the investment management fees but alleges nothing of substance on HIFSCO's costs, which essentially equates revenue with profits. Such bare-bones allegations do not come close to meeting the plausibility standards of *Iqbal*/*Twombly* and the "so disproportionately large" standard of *Jones.*

6. **Plaintiffs' Modified "Disclosure" Theory Still Fails to Allege a Plausible Claim for Excessive 12b-1 Fees on Class A Shares**

Plaintiffs' opposition argument regarding Class A share 12b-1 fees reflects an abrupt about-face from their position at oral argument that the Funds' disclosures about these fees were misleading. Plaintiffs now do not dispute that the Funds' disclosure documents (cited by

---

[7] *See, e.g.*, *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 540 (S.D.N.Y 2008). Courts in this Circuit and others have dismissed cases relying on general allegations that defendant investment managers refused to pass along economies of scale. *See, e.g.*, *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d 677, 687 (D.N.J. 2007); *Amron*, 464 F.3d at 345; *In re Goldman Sachs Mut. Funds Fee Litig.*, No. 04-2567, 2006 WL 126772, *9 (S.D.N.Y. Jan. 17, 2006).

Plaintiffs in the SAC at the Court's request) clearly spell out that Class A shareholders pay both an up-front sales load at the time of purchase and a 12b-1 distribution and service fee thereafter. Acknowledging that HIFSCO's disclosure is fulsome, Plaintiffs now argue for the first time in their Opposition that "[a]n ICA § 36(b) claim does not focus on the accuracy of the disclosure, rather, it focuses on whether the fees were disproportionate to the services rendered." Opp. at 25. This stands in stark contrast to what Plaintiffs argued at oral argument:

> MR. LAKIND: – we allege that Hartford took the position before the SEC that 12b-1 fees essentially are a replacement for front end and back end loads. Insofar as they charge both, we're alleging with regard to those two share classes that the services provided are already compensated for by the front end and the back end loads, so therefore the 12b-1 fees of necessity must be excessive.
>
> THE COURT: Because of the position they took before the SEC?
>
> MR. LAKIND: Yes.
> * * *
> THE COURT: That seems to be a plausible claim, that if it was represented to – if the allegation is that it was represented to the SEC that the distribution fees will be taken care of or addressed in the front end and back end loads and then that the distribution fees have actually turned out to be much more . . . .

Tr. 97:18-99:4.[8] Indeed, the Court stated that "I don't want to allow a claim that I think is plausible to go forward if this is really – the claim as drafted is really being misconstrued." Tr. 104:11-14; *id.* at 105:6-8 (". . . I am going to direct that you turn over the entire – the filing, because if it is taken out of context, then I think it's ripe for me to look at.").[9]

---

[8] *See also* Tr. 95:22-25 ("And when [HIFSCO] tells the SEC that you get one or the other [sales load or 12b-1 fee], that is not a fair charge to the plaintiffs – or it's a disproportionate charge to the plaintiff because we're paying both."); *id.* at 96:5-6 ("[T]he fact remains that they charge both when they told the SEC they would charge one or the other.").

[9] Plaintiffs suggest that the Court should not consider this claim in the SAC because of the Court's prior ruling on the AC. At oral argument, however, the Court ruled that if "the complaint as amended varies the analysis" of the allegations, that the Court would allow reargument of the point. Tr. 82:7-10; *id.* at 84:1-3. HIFSCO respectfully submits that the inclusion in the SAC of the complete SEC filing relating to HIFSCO's purported

Backing away from their disclosure misrepresentation theory – the very theory that was the centerpiece of Plaintiffs' oral argument and which the Court relied upon in allowing the claim to go forward – Plaintiffs introduce yet another allegation not included in the SAC in order to bolster its claims. Now, Plaintiffs assert that the Funds' <u>Board</u> *must have been* confused about the fact that Class A shareholders pay both a sales load and a 12b-1 fee because one sentence of a Fund disclosure describes 12b-1 fees as a possible "alternative" to sales loads – which of course is true with respect to Class B and C shares. *See* Opp. at 25 ("The Board of Directors, in approving the Hartford Funds' 12b-1 fees, specifically identified them as 'an alternative to paying front end sales charges.'"). Raising this for the first time in Opposition to HIFSCO's motion, Plaintiffs then criticize *HIFSCO* for "fail[ing] to explain how it can reconcile charging both fees when the Directors considered them to be alternatives." *Id.* Aside from improperly introducing new facts in their Opposition, Plaintiffs' *ipse dixit* about what the Board considered or thought – without any factual support whatsoever – cannot save any of the versions of Plaintiffs' allegations regarding Class A 12b-1 fees.

7.  **Plaintiffs Do Not Have Article III Standing to Pursue 12b-1 Fee Claims on Behalf of Class B Shareholders, and Even If They Did, Plaintiffs Have Alleged Conduct Entirely Consistent with Legal Activities**

The opposition does not and cannot explain how Plaintiffs – who own no Class B shares and thus do not pay the 100 basis point 12b-1 fees on these shares – have the required "personal stake" in those fees to give them Article III standing to challenge them as excessive. Plaintiffs cite case law suggesting that mutual fund investors in a given share class might have *statutory* standing to pursue claims for other classes, but nowhere address the Supreme Court's holding in *Gollust v. Mendell* that, notwithstanding statutory standing, "the plaintiff must still allege a

---

misrepresentation of the 12b-1 fees paid by the Funds, SAC ¶ 92 n. 9, entitle HIFSCO to address these newly-pled allegations.

-9-

distinct and palpable injury *to himself*." 501 U.S. 115, 126 (1991) (emphasis added). *See also Santomenno v. John Hancock Life Ins. Co. (U.S.A.)*, No. 11-2520 (3d Cir. Apr. 16, 2012) (slip. op.) (affirming dismissal where plaintiffs did not have a "personal stake in the outcome of the controversy" because "only those parties who would actually benefit from a suit may continue to prosecute the action"); *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 770 (1st Cir. 2011). Instead, Plaintiffs rely on *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984),[10] and *Operating Local 649 Annuity Trust Fund v. Smith Barney Management, LLC*, 595 F.3d 86 (2d Cir. 2010). *See* Opp. at 25-26. Those cases, however, dealt only with statutory standing under § 36(b), not whether the plaintiff had a personal stake in the litigation sufficient to satisfy the requirements of Article III. *Id.* Plaintiffs' suggestion in the next sentence of their Opposition that the named plaintiffs "therefore" have "Article III standing *and* statutory standing" is a non-sequitur.

Plaintiffs also cite *In re Mutual Funds Investment Litigation*, 519 F. Supp. 2d 580 (D. Md. 2007), which held that shareholders in one mutual fund could have Article III standing to assert claims regarding market timing activities as to other funds whose shares they did not own. But the court's reasoning is inapplicable here: "[t]he named plaintiffs have made plausible allegations that investment advisers, traders, and brokers who engaged in market timing and late trading activities caused the *same type of harm* by the *same type of misconduct* to shareholders in various mutual funds within the same family of funds." *Id.* at 587 (emphases added); *see id.* at 548-86 (canvassing Supreme Court precedent holding generally that "a plaintiff who had been

---

[10] Plaintiffs cite *Daily Income Fund* for the proposition that "[a]ny recovery belongs to the fund, not the shareholder *or the specific share class* of the fund." Opp. at 25. *Daily Income Fund* nowhere addressed share classes, and only concluded that any recovery would not go to an individual shareholder prosecuting the suit. Contrary to Plaintiffs' suggestion, any recovery of Class B 12b-1 fees *would* be returned to that particular class of the Funds.

-10-

subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of *another kind*, although similar, to which he has not been subject" (emphasis added)). Here, it cannot be said that the "same type of misconduct" cause the "same type of harm." Plaintiffs here claim that Class A 12b-1 fees of 25 basis points are excessive because those shareholders pay front-end sales loads in addition to ongoing 12b-1 fees, and that the Directors purportedly considered them to be alternatives, but in reality they were not. Regarding the Class B 12b-1 fees of 100 basis points (which no named Plaintiff pays), on the other hand, Plaintiffs claim that those fees are excessive because the share class is closed, not because of some improper combination of different fee types. It cannot be said that this action alleges the "same type of harm by the same type of misconduct."

With respect to Class B being closed to new investors, Plaintiffs nowhere distinguish the reasoning of the SEC and various courts that have concluded that charging 12b-1 fees for a closed share class is not improper. Indeed, Plaintiffs have acknowledged in the SAC that 12b-1 fees may be used to finance initial *and ongoing* commissions and payments to broker-dealers, *see* SAC ¶ 87 – making continued payment of 12b-1 fees following closure of the class to new investors perfectly logical. *See Jones v. Bureau of Prisons*, Civ. No. 10-0297 (NLH), 2012 WL 40160, at *3 (D.N.J. Jan. 9, 2012) ("If the allegations give rise to an 'obvious alternative explanation,' then the complaint 'stop[s] short of the line between possibility and plausibility . . . .'" (internal quotation marks omitted)). Instead, Plaintiffs rely wholly on pre-*Twombly* case law for support that their claims can survive – under the prior *Conley v. Gibson* "no set of facts" pleading standard. *See* Opp. at 24. But now it is no longer sufficient to allege activities that could *conceivably* be unlawful – they must be *plausibly* unlawful. *See Santiago v. Warminster Township*, 629 F.3d 121, 133 (3d Cir. 2010) ("'[M]ere *possibility*' of misconduct [is]

not enough."). While compliance with SEC guidance and industry norms does not necessarily make such fee structures *per se* lawful under § 36(b), these facts vividly demonstrate the implausibility of Plaintiffs' assertion that closure of Class B establishes these fees as "so disproportionately large" under *Jones*.[11]

Finally, Plaintiffs' Opposition offers no further support for its assertion that 12b-1 fees are excessive because they "are substantially a waste of fund assets" – without reference to how those fees compare to the value of the services rendered in exchange. SAC ¶ 98. Recently, the Eighth Circuit rejected such a theory of liability for 12b-1 fees that does not take into account whether the fee is "so disproportionately large" under the *Jones/Gartenberg* standard. *See Gallus*, 2012 WL 1058976, at *5. Plaintiffs' claims here must fail for the same reason.

Dated: April 20, 2012               Respectfully submitted,

                                    RIKER DANZIG SCHERER HYLAND PERETTI LLP

                                    */s/ Anthony J. Sylvester*
                                    Anthony J. Sylvester
                                    Headquarters Plaza
                                    One Speedwell Avenue
                                    Morristown, NJ 07962-1981
                                    (973) 538-0800 (tel)
                                    (973) 538-1984 (fax)
                                    asylvester@RIKER.com

---

[11] Plaintiffs suggest that the Court should not consider this claim in the SAC because of the Court's prior ruling on the AC. Here again, HIFSCO submits that the inclusion in the SAC of (a) pleading of the classes of shares owned by the named plaintiffs, SAC ¶¶ 17-22; and (b) the fact that 12b-1 fees may be used to finance initial *and ongoing* commissions and payments to broker-dealers, SAC ¶ 87, entitle HIFSCO to address these newly-pled allegations.

-13-

        Of Counsel:
        ROPES & GRAY LLP
        Harvey J. Wolkoff
        Robert A. Skinner
        Allison M. Boscarine
        Prudential Tower
        800 Boylston Street
        Boston, MA 02199
        harvey.wolkoff@ropesgray.com
        robert.skinner@ropesgray.com
        allison.boscarine@ropesgray.com

*Attorneys for Defendant Hartford Investment Financial Services, LLC*