# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JENNIFER KASILAG, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> HARTFORD INVESTMENT FINANCIAL SERVICES, LLC, <br><br> Defendant. | Civil No. 1:11-cv-01083-RMB-KMW |
| JENNIFER KASILAG, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> HARTFORD FUNDS MANAGEMENT COMPANY, LLC, <br><br> Defendant. | Civil No. 1:14-cv-01611-RMB-KMW |
| JENNIFER KASILAG, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> HARTFORD FUNDS MANAGEMENT COMPANY, LLC, <br><br> Defendant. | Civil No. 1:15-cv-01876-RMB-KMW |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO (1) STRIKE PLAINTIFFS'
DEMANDS FOR A JURY TRIAL, AND (2) PRECLUDE PLAINTIFFS
FROM OFFERING EVIDENCE AT TRIAL OF "LOST INVESTMENT
EARNINGS," AND MEMORANDUM OF LAW IN OPPOSITION TO
<u>PLAINTIFFS' CROSS-MOTION TO EMPANEL AN ADVISORY JURY</u>**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................III

PRELIMINARY STATEMENT ............................................................1

ARGUMENT ........................................................................................3

I.    SECTION 36(B) DOES NOT AFFORD PLAINTIFFS RECOVERY OF
      LOST INVESTMENT EARNINGS. ...........................................3

      A.    Section 36(b) Does Not Permit Recovery Of "Lost Investment
            Earnings." ........................................................................3

      B.    The Law Of The Case Doctrine Bars Plaintiffs' Request For "Lost
            Investment Earnings." ......................................................8

II.   PLAINTIFFS ARE NOT ENTITLED TO A JURY TRIAL ON THEIR
      REQUEST FOR "LOST INVESTMENT EARNINGS." .............9

      A.    Plaintiffs Do Not Dispute That Section 36(b) Actions Are
            Equitable In Nature. ........................................................10

      B.    Plaintiffs' Request For "Lost Investment Earnings" Is A Request
            For Equitable Surcharge...................................................11

      C.    Plaintiffs' Request For "Lost Investment Earnings" Is Inextricably
            Intertwined With The Core Equitable Remedy They Seek. ...............20

III.  PLAINTIFFS' SHOULD BE PRECLUDED FROM SEEKING "LOST
      INVESTMENT EARNINGS."......................................................22

      A.    Plaintiffs Do Not Dispute That They Failed To Disclose
            Computations Of "Lost Investment Earnings." .................22

      B.    Precluding Plaintiffs From Introducing Evidence Of "Lost
            Investment Earnings" At Trial Is Appropriate....................23

IV.   THE COURT SHOULD NOT EMPANEL AN ADVISORY JURY...........29

i

A.     Empaneling An Advisory Jury Would Lead To Inefficiency,
       Delay, And A Waste Of Judicial Resources. .....................................31

B.     There Is No Special Role For Advisory Juries In Section 36(b)
       Cases, And This Case Does Not Implicate Any Unique Issues
       That Justify Empaneling An Advisory Jury........................................34

CONCLUSION .........................................................................................................38

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Cyprus Amax Minerals Co.*,
  149 F.3d 1156 (10th Cir. 1998) .......................................................21

*Alexander v. Primerica Holdings, Inc.*,
  819 F. Supp. 1296 (D.N.J. 1993) ....................................................21

*AstraZeneca LP v. Breath Ltd.*,
  No. 08-1512, 2014 U.S. Dist. LEXIS 136008 (D.N.J. Sept. 26,
  2014) ..............................................................................23, 24, 27

*Baptiste v. Rohn*,
  No. 13-104, 2016 U.S. Dist. LEXIS 41095 (D.V.I. Mar. 29, 2016) .................25

*Bauer-Ramazani v. Teachers Ins. & Annuity Ass'n of Am.-College
  Ret. & Equities Fund*,
  No. 09-0190, 2013 U.S. Dist. LEXIS 169261 (D. Vt. Nov. 27,
  2013) ...............................................................................17

*Beesley v. Int'l Paper Co.*,
  No. 06-703, 2009 WL 260782 (S.D. Ill. Feb. 4, 2009) ......................................35

*Bethea v. Merchants Commercial Bank*,
  No. 11-51, 2015 WL 1577976 (D.V.I. Apr. 1, 2015)........................................20

*Byrd v. Shannon*,
  715 F.3d 117 (3d Cir. 2013) ...............................................................7

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Bollinger,
  Inc.*,
  573 F. App'x 197 (3d Cir. 2014) ......................................................19

*Chauffeurs, Teamsters & Helpers, Local 391 v. Terry*,
  494 U.S. 558 (1990).................................................................11, 12, 20

*CIGNA Corp. v. Amara*,
  563 U.S. 421 (2011)....................................................................17, 18

iii

*City of Rome v. Hotels.com, L.P.*,
    549 F. App'x 896 (11th Cir. 2013) ..................................................................26

*In re Currency Conversion Fee Antitrust Litig.*,
    No. 04-5723, 2012 WL 4361443 (S.D.N.Y. Sept. 11, 2012) ................30, 31, 32

*Curtis v. Loether*,
    415 U.S. 189 (1974).................................................................................12

*Dayton Valley Inv'rs, LLC v. Union Pac. R.R. Co.*,
    No. 08-127, 2010 U.S. Dist. LEXIS 108232 (D. Nev. Sept. 24,
    2010) ...................................................................................................25

*Desmond v. Ng*,
    No. 15-11155, 2015 WL 5886187 (D. Mass. Oct. 8, 2015) ..............................19

*Dewey Elecs. Corp. v. Montage, Inc.*,
    117 F.R.D. 73 (M.D. Pa. 1987) ..............................................................32, 33

*Doe v. Barrow County*,
    No. 03-156, 2005 WL 6033020 (N.D. Ga. Mar. 3, 2005)..................................30

*EEOC v. HI 40 Corp., Inc.*,
    No. 93-0230, 1994 WL 421494 (W.D. Mo. Apr. 5, 1994)..................................38

*Eichorn v. AT&T Corp.*,
    484 F.3d 644 (3d Cir. 2007) ...................................................................19

*Ellis v. Rycenga Homes, Inc.*,
    No. 04-0694, 2007 WL 1032367 (W.D. Mich. Apr. 2, 2007)............................17

*In re Evangelist*,
    760 F.2d 27 (1st Cir. 1985)......................................................................5, 7

*F.A.A. v. Cooper*,
    132 S. Ct. 1441 (2012)...........................................................................6, 7

*Fleming v. Peavy-Wilson Lumber Co.*,
    38 F. Supp. 1001 (W.D. La. 1941) ...........................................................30

*Forrest v. Omega Protein, Inc.*,
    No. 11-92, 2011 WL 4352302 (E.D. Va. Sept. 16, 2011)..................................32

*In re Franklin Mut. Funds Fee Litig.*,
  478 F. Supp. 2d 677 (D.N.J. 2007) ...................................................3, 4

*Gabriel v. Alaska Elec. Pension Fund*,
  773 F.3d 945 (9th Cir. 2014) .............................................................15

*Gardner v. Calvert*,
  253 F.2d 395 (3d Cir. 1958) ...............................................................7

*In re Gartenberg*,
  636 F.2d 16 (2d Cir. 1980) .............................................................5, 9

*Glielmi v. Raymond Corp.*,
  No. 09-5734, 2013 U.S. Dist. LEXIS 7128 (D.N.J. Jan. 17, 2013) ...........*passim*

*In re Globe Parcel Serv., Inc.*,
  75 B.R. 381 (E.D. Pa. 1987) ..............................................................20

*Golden v. Kelsey-Hayes Co.*,
  73 F.3d 648 (6th Cir. 1996) ..............................................................21

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002)..............................................................*passim*

*Green v. Fund Asset Mgmt., L.P.*
  286 F.3d 682 (3rd. Cir 2002) ........................................................3, 4

*Hatco Corp. v. W.R. Grace & Co.*,
  59 F.3d 400 (3d Cir. 1995) ...............................................................10

*Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*,
  No. 11-282, 2012 WL 162361 (D. Conn. Jan. 19, 2012) ..................................20

*Hecht Co. v. Bowles*,
  321 U.S. 321 (1944)..........................................................................14

*Hellman v. Cataldo*,
  No. 12-02177, 2013 WL 4482889 (E.D. Mo. Aug. 20, 2013) ..........................20

*In re Iron Workers Local 25 Pension Fund*,
  Nos. 04-40243, 07-12368, 2011 U.S. Dist. LEXIS 34505 (E.D.
  Mich. Mar. 31, 2011) ................................................................12, 17

v

*Jones v. Harris Assocs. L.P.*,
   559 U.S. 335 (2010)............................................................................1, 2, 34, 35

*Kalish v. Franklin Advisers, Inc.*,
   928 F.2d 590 (2d Cir. 1991) ...................................................................5

*Kalish v. Franklin Advisers, Inc.*,
   No. 87-6919, 1988 U.S. Dist. LEXIS (S.D.N.Y. Feb. 29, 1988),
   *aff'd*, 928 F.2d 590 (2d Cir. 1991)......................................................5

*Kasilag v. Hartford Inv. Fin. Servs.*,
   Civ. Nos. 11-1083, 14-1611, 2016 U.S. Dist. LEXIS 47063 (D.N.J.
   Mar. 24, 2016)...............................................................................8, 31

*Kodak Graphic Commc'ns Can. Co. v. E.I. Du Pont de Nemours &
   Co.*,
   No. 08-6553, 2013 U.S. Dist. LEXIS 151922 (W.D.N.Y. Oct. 22,
   2013) .........................................................................................25, 28

*Kramer v. Banc of Am. Sec., LLC*,
   355 F.3d 961 (7th Cir.), *cert. denied*, 542 U.S. 932 (2004) ..............37

*Maharaj v. Cal. Bank & Tr.*,
   288 F.R.D. 458 (E.D. Cal. 2013) ...........................................................26

*Mercedes Benz USA LLC v. Coast Auto. Grp. Ltd.*,
   No. 99-3121, 2008 U.S. Dist. LEXIS 72172 (D.N.J. Sept. 23,
   2008) .........................................................................................28

*Midwest Elec. Coop. Corp. v. Tri-State Generation & Transmission
   Ass'n, Inc.*,
   No. 10-2349, 2014 U.S. Dist. LEXIS 58574 (D. Colo. Apr. 28,
   2014) .........................................................................................26

*MKB Constructors v. Am. Zurich Ins. Co.*,
   No. 13-611, 2014 U.S. Dist. LEXIS 137495 (W.D. Wash. Sept. 29,
   2014) .........................................................................................25

*Morrissey v. Curran*,
   650 F.2d 1267 (2d Cir. 1981) .................................................................15

*Moss v. Lane Co., Inc.*,
   471 F.2d 853 (4th Cir. 1973) .................................................................29

*NAACP v. Acusport Corp.*,
   226 F. Supp. 2d 391 (E.D.N.Y. 2002) ..........................................................36, 37

*Nicholas v. Pa. State Univ.*,
   227 F.3d 133 (3d Cir. 2000) ......................................................................23, 28

*Norfolk S. Ry. Co. v. Pittsburgh & W. Va. R.R.*,
   No. 11-1588, 2015 U.S. Dist. LEXIS 92159 (W.D. Pa. July 15,
   2015) .....................................................................................................................26

*Ollier v. Sweetwater Union High Sch. Dist.*,
   267 F.R.D. 338 (S.D. Cal. 2010) ...............................................................30, 38

*In re Pan Am Corp.*,
   No. 93-7125, 1994 WL 174318 (S.D.N.Y. May 3, 1994)..................................33

*Parsons v. Bd. of Trs. of Nev. Resort Ass'n – I.A.T.S.E. Local 702 Ret.
   Plan*,
   No. 12-00299, 2013 WL 5324946 (D. Nev. Sept. 20, 2013) .......................19, 36

*Pereira v. Farace*,
   413 F.3d 330 (2d Cir. 2005) ................................................................................18

*RDK Truck Sales & Serv. Inc. v. Mack Trucks, Inc.*,
   No. 04-4007, 2009 WL 1441578 (May 19, 2009).................................................7

*Reich v. King*,
   861 F. Supp. 379 (D. Md. 1994).........................................................................29

*Rosen v. Dick*,
   83 F.R.D. 540 (S.D.N.Y. 1979).........................................................................33

*Schuster v. Shepard Chevrolet, Inc.*,
   No. 99-8326, 2002 WL 507130 (N.D. Ill. Apr. 3, 2002) ...................................37

*Sergent v. McKinstry*,
   472 B.R. 387 (E.D. Ky. 2012) ...........................................................................19

*Silver State Broad., LLC v. Beasley FM Acquisition*,
   No. 11-1789, 2016 U.S. Dist. LEXIS 8904 (D. Nev. Jan. 25, 2016) ...........24, 25

*Sivolella v. AXA Equitable Funds Mgmt., LLC*,
   No. 11-4194, 2013 U.S. Dist. LEXIS 115622 (D.N.J. July 3, 2013).............1, 18

vii

*Skoldberg v. Villani*,
601 F. Supp. 981 (S.D.N.Y. 1985) ................................................................32, 33

*Soley v. Wasserman*,
08-9262, 2013 WL 1655989 (S.D.N.Y. Apr. 17, 2013)....................................19

*Stoneback v. ArtsQuest*,
No. 12-3286, 2012 WL 4963624 (E.D. Pa. Oct. 17, 2012)................................19

*Termini v. Life Ins. Co. of N. Am.*,
474 F. Supp. 2d 775 (E.D. Va. 2007) ...............................................................13

*Tull v. United States*,
481 U.S. 412 (1987).......................................................................................20, 22

*United Power Ass'n v. Fed. Emergency Mgmt. Agency*,
No. 99-180, 2001 WL 1789404 (D.N.D. Aug. 14, 2001)...................................38

*Van Asdale v. Int'l Game Tech.*,
No. 04-703, 2010 WL 1490349 (D. Nev. Apr. 13, 2010) ..................................32

*In re Visteon Corp.*,
612 F.3d 210 (3d Cir. 2010) ...............................................................................7

*White v. Smiths Detection, Inc.*,
No. 10-4078, 2013 WL 1845072 (D.N.J. Apr. 30, 2013) ...............................8, 9

*Young v. Pleasant Valley Sch. Dist.*,
No. 07-854, 2011 U.S. Dist. LEXIS 42353 (M.D. Pa. Apr. 19,
2011) ............................................................................................................24, 26

*In re YRC Worldwide, Inc. ERISA Litig.*,
No. 09-2593, 2010 U.S. Dist. LEXIS 125654 (D. Kan. Nov. 29,
2010) ...........................................................................................16, 17, 20, 21

## Statutes

15 U.S.C. § 80a-35(b) .......................................................................*passim*

## Rules

Fed. R. Civ. P. 26(a)...........................................................................2, 22, 27, 28

Fed. R. Civ. P. 37(c)...........................................................................................23

Fed. R. Civ. P. 39(c)............................................................................2, 29

**Other Authorities**

1 Austin Wakeman Scott et al., *Scott and Ascher on Trusts* (5th ed.
    2015) ...........................................................................13, 14

George G. Bogert & George T. Bogert, *The Law of Trusts & Trustees*
    (Sept. 2015)...............................................................................13

8 J.W. Moore et al., *Moore's Federal Practice* (3d ed. 2004) ...............................30

John H. Langbein, *What ERISA Means by "Equitable": The Supreme
    Court's Trail of Error in* Russell*,* Mertens *and* Great-West, 103
    Colum. L. Rev. 1317 (2003) ...............................................................15

Restatement (2d) of Trusts (1959) ..................................................13, 14

Restatement (3d) of Trusts (2012) ........................................................15

## PRELIMINARY STATEMENT

Plaintiffs do not dispute that no court in the forty-six year history of Section 36(b) has ever held that a party is entitled to a jury trial in an action seeking recovery under Section 36(b).  No fewer than eighteen decisions have found that Section 36(b) does not afford a right to a jury trial and, consistent with this established precedent, all eight Section 36(b) actions that have been tried— including most recently the *AXA* litigation tried in the District of New Jersey earlier this year—have been tried before courts.  Indeed, the Supreme Court's seminal decision in *Jones v. Harris Associates L.P.* consistently speaks of courts, not juries, assessing whether a fee violates Section 36(b).  559 U.S. 335, 349-52 (2010); *see* Defs.' Br. at 10.[1]

In response to Defendants' motion, Plaintiffs attempt to sweep away this extensive precedent on the grounds that, after the decision in *AXA* striking the plaintiffs' jury demands in that case, they amended their complaint in this action to seek an unprecedented form of relief never before seen in Section 36(b) actions— "lost investment earnings" to the Funds on the amount of any fees deemed excessive.  But "lost investment earnings" is not a cognizable form of relief under Section 36(b), whose statutory text and legislative history demonstrate an intent to

---

[1] Capitalized terms not defined herein have the meanings ascribed in Defendants' opening brief.

try breach of fiduciary duty claims before courts, not juries.  Even if it were

cognizable, such relief would fall distinctly within the realm of equitable relief for

which there is no right to a jury trial.  None of Plaintiffs' authorities, which do not

involve Section 36(b) or the Investment Company Act of 1940, compels a different

conclusion.

Finally, even if Plaintiffs could overcome all of these hurdles, they have no

legitimate answer to their failure to meet their obligation under Rule 26 to disclose

a computation of alleged lost investment earnings during fact discovery or

otherwise raise the topic in expert discovery.  Accordingly, they should be

precluded from offering evidence on the subject at trial.

Plaintiffs' cross-motion for an advisory jury should also be denied.  Far from

making trial of this case more efficient, an advisory jury would undermine the

purpose of Rule 39(c)(1) of the Federal Rules of Civil Procedure by imposing

significant and unnecessary burdens and delay on both the Court and the parties.

Nor does Plaintiffs' Section 36(b) claim entail the application of community-based

standards.  To the contrary, Plaintiffs' claim is governed by specific analytical

factors that have been defined by the Supreme Court in *Jones* and in numerous

appellate and district courts in more than forty years of litigation under Section

36(b).  In short, an advisory jury would have no proper role in this case, and

empaneling an advisory jury would only serve to heighten the complexity and

burden of this trial.

## ARGUMENT

## I.  SECTION 36(B) DOES NOT AFFORD PLAINTIFFS RECOVERY OF LOST INVESTMENT EARNINGS.

Plaintiffs' assertion that "lost investment earnings" is a remedy available

under Section 36(b), which no court has ever held, contradicts the statutory text of

Section 36(b), congressional intent, and case law interpreting the statute.  As the

statute and cases construing it show, Section 36(b) provides a limited remedy—

repayment of the allegedly excessive portion of the fee.

### A.  Section 36(b) Does Not Permit Recovery Of "Lost Investment Earnings."

Section 36(b) is a limited statute and its text, legislative history, and

longstanding case law affirm that it was intended to provide a narrow and specific

federal remedy.  As the Third Circuit held in *Green v. Fund Asset Management,

L.P.*, Section 36(b) was "intended to provide a very specific, narrow federal

remedy" that is "significantly more circumscribed than common law fiduciary duty

doctrines."  286 F.3d 682, 685 (3d Cir. 2002); *see also In re Franklin Mut. Funds

Fee Litig.*, 478 F. Supp. 2d 677, 683 (D.N.J. 2007) (the fiduciary duty imposed by

Section 36(b) is "significantly narrower than the fiduciary relationship recognized

by common law").  Among other things, a shareholder may sue only the recipient

of the fees (unlike the common law rule permitting shareholders to sue fund

directors) and the plaintiff bears the burden of proving a breach of fiduciary duty (in contrast to the common law rule that requires a fiduciary to justify its conduct). *Green*, 286 F.3d at 685.  The legislative history of Section 36(b) confirms that the statute's narrow scope was intended to "curb the potential for increased costs of litigation and the abusive use of lawsuits."  *In re Franklin*, 478 F. Supp. 2d at 686; *see also id.* at 687 (noting Congress' intent to "prevent the harassment of investment advisers by ill-founded or nuisance law suits, the so-called strike suit.") (internal quotation marks omitted).

Among other limitations, Section 36(b)(3) sets forth explicit constraints on allowable recovery under the statute, stating that "[n]o award of damages shall be recoverable for any period prior to one year before the action was instituted" and that any award of relief "shall in no *event exceed the amount of compensation or payment* received from such investment company."  15 U.S.C. § 80a-35(b)(3) (emphasis added).  In construing Section 36(b)(3), Plaintiffs attempt to read expansive language into the statute that does not exist, contending that "lost investment earnings" are a proper form of relief so long as the "*total* amount of damages does not exceed the *total* amount of advisory fees paid to Defendants *annually*."  *See* Pls.' Br. at 2 (emphasis added).  But nowhere does Section 36(b)(3) contain these additional words.  On its face, the statute evidences an intent

4

to cabin relief for an alleged breach of fiduciary duty to the compensation or fees paid to the investment adviser.

In light of the limiting language in Section 36(b)(3) and against the backdrop of Section 36(b)'s legislative history, courts have narrowly interpreted Section 36(b) as providing only for recovery of the allegedly excessive portion of a manager's fees.  *See In re Evangelist*, 760 F.2d 27, 29-30 (1st Cir. 1985) ("the remedy Congress created [is] the payment of any excess fee to the company" and "legislative history makes clear [that] the limitation [of recovery] *prevents . . . special damages that the excess payments may have caused*") (emphasis added); *Kalish v. Franklin Advisers, Inc.*, 928 F.2d 590, 592 (2d Cir. 1991) ("The central issue in this action is whether the fund adviser . . . exacted an exorbitant fee.  Any unreasonable portion of the fee must be returned to the fund."); *see also* Defs.' Br. at 18-19 (citing various Section 36(b) cases that characterize relief as restitution of allegedly excessive management compensation).[2]

---

[2] Plaintiffs rely heavily on the fact that the court in *In re Gartenberg*, 636 F.2d 16, 18 (2d Cir. 1980), stated that it was "leaving for another day a determination of whether a plaintiff making a bona fide claim for damages" is entitled to a jury trial. But the court's expression that its decision was limited to the facts of that case is hardly a determination that any such bona fide claims exist, nor did the court attempt to define the term.  *See also Kalish v. Franklin Advisers, Inc.*, No. 87-6919, 1988 U.S. Dist. LEXIS, at *3 (S.D.N.Y. Feb. 29, 1988) (implicitly questioning "bona fide claim for damages" concept), *aff'd*, 928 F.2d 590 (2d Cir. 1991).

Confronted with Section 36(b)'s limited scope and existing case law, Plaintiffs urge the Court to adopt a particular meaning of "actual damages" that would encompass lost investment earnings by relying on constructions of that phrase in entirely different statutory contexts. Pls.' Br. at 5. But the Supreme Court has unequivocally rejected the argument that the term "actual damages" has a particularized meaning independent of the statutory context in which it is used.

In *F.A.A. v. Cooper*, the Supreme Court considered precisely the question of whether the term "actual damages" has a specific meaning. 132 S. Ct. 1441, 1449 (2012). The Supreme Court—acknowledging the same principle of statutory construction that Plaintiffs seek to apply here whereby a term of art presumably adopts the "cluster of ideas" attached to it—rejected its application, stating, "[e]ven as a legal term, however, *the meaning of 'actual damages' is far from clear*." *Id.* (emphasis added) The Supreme Court observed that the meaning of the term found in Black's Law Dictionary was "of little value" and declared that "the precise meaning of [actual damages] changes with the specific statute in which it is found." *Id.* (citation and internal quotation marks omitted). The Court in *Cooper* continued on to explore the various contexts in which the term "actual damages" has been employed, and delineated its different meanings. *Id.* at 1449-50. Summarizing its point, the Court affirmed that "[b]ecause the term 'actual damages' has this chameleon-like quality, *we cannot rely on any all-purpose*

6

*definition* but must consider the particular context in which [it] appears." *Id*. at 1450 (emphasis added); *cf. Byrd v. Shannon*, 715 F.3d 117, 123 (3d Cir. 2013) ("In determining whether the language of a particular statutory provision has a plain meaning, we consider the language in the context of the entire statute.").

Ignoring *Cooper*, Plaintiffs invoke various cases that have nothing to do with Section 36(b) to assert that "actual damages" should incorporate lost investment earnings.[3]  But in light of the Supreme Court's admonishment that a particular meaning of "actual damages" does not exist, no basis exists to apply Plaintiffs' asserted meaning here.  As the court in *In re Evangelist* noted and as the text and history of Section 36(b) confirm, the "remedy Congress created" is limited to "the payment of any excess fee to the company."  760 F.2d at 29; *see In re Visteon Corp.*, 612 F.3d 210, 221 (3d Cir. 2010) ("The words of a statute are not to be lightly jettisoned by courts looking to impose their own logic on a statutory scheme.").  Section 36(b)(3) "prevents . . . *special* damages that the excess payments may have caused."  *In re Evangelist*, 760 F.2d at 30.

---

[3] Plaintiffs' case law ranges from breach of an oral agreement in an admiralty suit to the scope of damages under the Unfair Practices Act.  *See generally Gardner v. Calvert*, 253 F.2d 395 (3d Cir. 1958); *RDK Truck Sales & Serv. Inc. v. Mack Trucks, Inc.*, No. 04-4007, 2009 WL 1441578 (May 19, 2009).

### B.     The Law Of The Case Doctrine Bars Plaintiffs' Request For "Lost Investment Earnings."

Plaintiffs' argument that they are entitled to lost profits in the form of lost investment earnings is further precluded by the law of the case doctrine.  In the Court's recent summary judgment opinion, in deciding Plaintiffs' cross-motion for partial summary judgment regarding damages, the Court confronted the question of what damages are available under Section 36(b) and determined that the "proper measure of damages 'shall be limited to the actual damages resulting from the breach of fiduciary duty' . . . . *In this case, the actual damages would be the difference between the fee paid and a fee that would have been 'fair' – i.e., a fee that could have been negotiated at arm's length*."  *Kasilag v. Hartford Inv. Fin. Servs.*, Civ. Nos. 11-1083, 14-1611 (RMB/KMW), 2016 U.S. Dist. LEXIS 47063, at *61-62 (D.N.J. Mar. 24, 2016) (emphasis added) (citing *In re Evangelist*, 760 F.2d at 29).

The law of the case doctrine "limits relitigation of an issue once it has been decided in the same litigation" and, for finality purposes, "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *White v. Smiths Detection, Inc.*, No. 10-4078, 2013 WL 1845072, at *18 (D.N.J. Apr. 30, 2013) (citation and internal quotation marks omitted).  Reconsideration of an issue is barred by the doctrine unless "extraordinary circumstances" exist, including "where (1) new evidence is

8

available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Id*. at *19 (citation and internal quotation marks omitted).

No such extraordinary circumstances exist here: there is no new evidence, no new law, and this Court's decision—in line with years of 36(b) case law construing damages for breach of fiduciary duty as the amount of the allegedly excessive fee—is not clearly erroneous or manifestly unjust. The law of the case doctrine forecloses Plaintiffs' attempt to relitigate this issue.

## II.   PLAINTIFFS ARE NOT ENTITLED TO A JURY TRIAL ON THEIR REQUEST FOR "LOST INVESTMENT EARNINGS."

Even if Section 36(b) permitted Plaintiffs to recover "lost investment earnings," which it does not, Plaintiffs would not be entitled to a jury trial by virtue of requesting such relief. Plaintiffs suggest in a single line of their brief, unsupported by explanation or citation, that "the construction" of Section 36(b) is "silent regarding the right to a jury trial." Pls.' Br. at 7. In doing so, Plaintiffs leave many of Defendants' arguments unaddressed, tacitly conceding them. [4] Plaintiffs do not address the fact that the only references in Section 36(b) to who decides a claim under that section speak of courts, not juries, performing the

---

[4] Although the court in *In re Gartenberg*, 636 F.2d at 17, which Plaintiffs did not invoke in this portion of their brief, remarked that the statute is "silent" on the "jury-non-jury issue" in the course of finding that no right to a jury trial existed in that case, there is no indication from the court's brief discussion of the issue that it considered the same arguments raised by Defendants.

Section 36(b) analysis.  Defs.' Br. at 11.  Likewise, they do not respond to any of the legislative history cited by Defendants demonstrating Congress's intent to create an equitable cause of action and equitable remedy.  Defs.' Br. at 13-15.  For the reasons stated in Defendants' opening brief, Section 36(b)'s text and legislative history demonstrate an intent to try Section 36(b) claims before courts, not juries.

Plaintiffs instead turn to a secondary question that they can only reach if the statutory text or Congress's intent is unclear:  whether the Seventh Amendment protects a right to a jury trial on their requested remedies.  *See* Defs.' Br. at 10.  But even if Section 36(b) or its legislative history were ambiguous on the jury trial question, there is no constitutional right to a jury trial to be found here.  The Seventh Amendment right to a jury trial arises only for claims and remedies concerning legal rights, not equitable ones.  The breach of fiduciary duty claim that Plaintiffs bring here and the remedies they seek, including their request for "lost investment earnings," are distinctly equitable.

### A.    Plaintiffs Do Not Dispute That Section 36(b) Actions Are Equitable In Nature.

As noted in Defendants' opening brief, where a statute's text is ambiguous on the right to a trial by jury, the Seventh Amendment protects the right to a jury trial only in legal—not equitable—actions.  *Hatco Corp. v. W.R. Grace & Co.*, 59 F.3d 400, 411 (3d Cir. 1995).  Under the Seventh Amendment, a court must engage in two-step analysis to ascertain whether the claims and remedies involve legal

rights or only equitable rights.  *See* Defs.' Br. at 16; Pls.' Br. at 8.  First, the court must evaluate the nature of the claim in comparison to 18th-century actions brought in the courts of England prior to the merger of law and equity.  *Chauffeurs, Teamsters & Helpers, Local 391 v. Terry*, 494 U.S. 558, 565 (1990).  Next, it must determine whether the remedy sought is legal or equitable.  *Id*.  Under both the first and second inquiries, Plaintiffs' request for alleged "lost investment earnings" falls distinctly within the realm of equity.

Significantly, with respect to the first step, the nature of the action, Plaintiffs do not dispute that claims for breaches of fiduciary duty are equitable in nature, nor could they, given that breach of fiduciary duty claims have been regarded as equitable claims for centuries.  Pls.' Br. at 12-13.  Indeed, conceding the equitable nature of Section 36(b), Plaintiffs withdrew their jury demand on their Section 36(b) claim to the extent they seek the return of the allegedly excessive fees.  Pls.' Br. at 1; Defs.' Br. at 19.  Put simply, Plaintiffs admit they do not meet the first prong of the Seventh Amendment test.

**B.  Plaintiffs' Request For "Lost Investment Earnings" Is A Request For Equitable Surcharge.**

With respect to the second prong of the Seventh Amendment test, Plaintiffs do not dispute that the core relief they seek—the return to the Funds of the allegedly excessive fees—is equitable.  Instead, they claim that their ancillary request for "lost investment earnings" associated with those fees is a legal remedy.

11

It is not.  Despite Plaintiffs' efforts to call it something else, Plaintiffs' request for "lost investment earnings" is nothing other than a request for the longstanding equitable remedy of surcharge against a fiduciary—a type of relief available *only* in courts of equity.

Plaintiffs argue that they do not "make a claim for surcharge" in their complaint (Pls.' Br. at 13), but merely changing the name of the remedy in a complaint or brief does not transform equitable relief into legal relief.  *In re Iron Workers Local 25 Pension Fund*, Nos. 04-40243, 07-12368, 2011 U.S. Dist. LEXIS 34505, at *45-46 (E.D. Mich. Mar. 31, 2011) ("Plaintiffs' request for relief is not legal simply because they label the request as one for money damages. . . ."). Moreover, the determination as to whether relief is equitable or legal does not hinge on whether the relief requested is characterized as monetary damages; rather, it hinges on the nature of the remedy itself.  *Curtis v. Loether*, 415 U.S. 189, 196 (1974); *Chauffeurs*, 494 U.S. at 571*; In re Iron Workers Local 25 Pension Fund*, 2011 U.S. Dist. LEXIS 34505, at *46-48, *53.

In maintaining that their request for "lost investment earnings" is not a request for equitable surcharge, Plaintiffs largely ignore the fact that their claim under Section 36(b) is an equitable claim for breach of fiduciary duty—a fact

Plaintiffs themselves concede.  As the Restatement of Trusts[5] emphasizes, the

"remedies of the beneficiary against the trustee are *exclusively equitable*."

Restatement (2d) of Trusts § 197 (1959), at 433 (emphasis added).  During the

days of the divided bench, beneficiaries could not obtain relief against fiduciaries

in a court of law.  1 Austin Wakeman Scott et al., *Scott and Ascher on Trusts*

§§ 1.1, 24.1 (5th ed. 2015).[6]  Rather, they could only seek relief in a court of

equity.  Scott & Ascher, *supra*, §§ 1.1, 24.1.  Courts of equity, unlike courts of law,

could compel fiduciaries to act in accordance with their fiduciary duties and had

the power to fashion *whatever remedy was necessary* under the circumstances to

best protect the beneficiary—including compensating the beneficiary for *losses*

when the trustee's action caused the beneficiary to suffer harm—without regard to

the rigid, technical constraints that governed the ability of courts of law to fashion

legal relief.  Scott & Ascher, *supra*, §§ 24.1, 24.3; George G. Bogert & George T.

Bogert, *The Law of Trusts & Trustees* § 861 (Sept. 2015) ("Equity . . . will provide

the beneficiary with *whatever remedy is necessary* to protect him and *recompense*

---

[5] Although, as noted above, Section 36(b) is significantly more circumscribed than
common-law breach of fiduciary duty, the Restatement of Trusts is apt to the
analysis of the nature of Plaintiffs' requested remedy for "lost investment
earnings," given that claims for breach of fiduciary duty were historically
"examined under trust law principles."  *Termini v. Life Ins. Co. of N. Am.*, 474 F.
Supp. 2d 775, 778 (E.D. Va. 2007).

[6] The relevant portions of the Scott & Ascher treatise cited herein, which do not
appear to be available on LEXIS or Westlaw, are attached as Exhibit 1 to the
Declaration of Robert C. Hora, dated June 24, 2016 ("Hora Decl.").

*him for loss . . . .*") (emphasis added); *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944).

Thus, in actions where a beneficiary sues a fiduciary for its breach of duty, the fiduciary could be required to restore the beneficiary to the "position in which he would have been if the trustee had not committed the breach of trust." Restatement (2d) of Trusts, *supra*, § 205 cmt. a, at 458; *see also id.* § 205, at 458; Scott & Ascher, *supra*, § 24.3.3 ("If the trustee has committed a breach of trust, the beneficiaries can maintain a suit in equity to compel the trustee to redress the breach of trust by making specific reparation, paying money, or otherwise"); *id.* at § 24.3 (listing money payment designed to redress fiduciary breach as one of the "equitable remedies" available to a beneficiary). Indeed, in many cases described by the comments, the Restatement makes clear that the fiduciary could be liable for monetary payment as part of putting the plaintiff back in the position he would have been in without the breach. *See, e.g.*, Restatement (2d) of Trusts, *supra*, § 205 illus. 1, at 459 ("A is trustee of $10,000 in cash. As a result of his negligence the money is stolen. A is liable for $10,000.").

As noted in Defendants' opening brief, the recovery of losses from a breaching fiduciary was and is an express type of equitable relief known as surcharge, which seeks to put the beneficiary back in the position he or she would have been if the fiduciary breach had not occurred. Restatement (2d) of Trusts,

*supra*, § 205(a); Restatement (3d) of Trusts § 95 cmt. b (2012); *Morrissey v. Curran*, 650 F.2d 1267, 1282 (2d Cir. 1981) ("At common law, an accounting surcharging a trustee for breach of his fiduciary duty was a readily available remedy."); *see also Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 962-63 (9th Cir. 2014) (in ERISA action, finding equitable surcharge remedy available for losses resulting from breach of fiduciary duty); *see also* Defs.' Br. at 21-22. Although surcharge is akin to the legal remedy of damages in that it can include monetary relief for losses suffered by the plaintiff (rather than the restitution of improper gains by the defendant), it was clearly equitable:  it was regularly and exclusively granted in courts of equity.[7]

In arguing that their request for "lost investment earnings" seeks legal rather than equitable relief, Plaintiffs primarily rely on *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002).  Pls.' Br. at 8-9.  But nothing in *Great-West* undermines the conclusion that Plaintiffs' request for "lost investment earnings" is anything other than a request for equitable surcharge.  *Great-West* involved a provision in an ERISA plan that required beneficiaries to reimburse the plan for monies advanced for medical expenses if they later recovered money from

---

[7] *See* Restatement (3d) Trusts § 95, Reporter's Notes on cmts. a-c (noting that equity may grant money damages); John H. Langbein, *What ERISA Means by "Equitable": The Supreme Court's Trail of Error in* Russell*, Mertens and* Great-West, 103 Colum. L. Rev. 1317, 1353 (2003) ("it may once have been technically correct to say that damages were exclusively a common law remedy, but only because damages in equity were called surcharge").

a third party. *Id*. at 207. In that case, the defendant Knudson, a plan beneficiary, was injured in a car accident, and plaintiff Great-West covered her medical expenses on behalf of her husband's plan. *Id*. at 207-08. Knudson filed a tort suit against a third party, and recovered money in a settlement agreement. *Id*. Great-West then filed a claim under Section 502(a)(3) of ERISA, which only allows for equitable relief, seeking to compel Knudson to reimburse the plan by paying a portion of her settlement. *Id*. at 208. The Court explained that "the imposition of personal liability on respondents for a contractual obligation to pay money," *id.* at 221, was relief that was typically "not available in equity," *id.* at 211. Since Section 502(a)(3) of ERISA permits only equitable relief, *id.* at 209-10, the court found Great-West's action was not authorized by that section, *id.* at 221.

*Great-West* hardly governs here: It did not involve the right to a jury trial under the Seventh Amendment; did not involve a claim under Section 36(b) of the Investment Company Act; and did not involve a claim against a fiduciary or a claim premised on a breach of fiduciary duty. Rather, "in *Great-West*, the Supreme Court was considering a claim more akin to a breach of contract action, arising from a contractual duty instead of a fiduciary duty, and the Court quite unremarkably determined that such a claim was a legal claim, distinguished from equitable claims that ordinarily involved imposition of constructive trusts." *In re YRC Worldwide, Inc. ERISA Litig.*, No. 09-2593, 2010 U.S. Dist. LEXIS 125654,

16

at *13-14 (D. Kan. Nov. 29, 2010).  Plaintiffs are not bringing any contractual

claims here, but instead are expressly suing for breach of fiduciary duty under

Section 36(b), a claim they concede is equitable in nature.

Since *Great-West* was decided, numerous courts have refused to accept

arguments by plaintiffs bringing breach of fiduciary duty claims that *Great-West*

somehow means that "a surcharge action against a fiduciary seeking payment to

the trust estate arising from the fiduciary's breach of duty is a 'suit at common law'

within the meaning of the Seventh Amendment, even though no common-law

court in the colonial Anglo-American legal system would ever have entertained

such a suit or granted such relief."  *Ellis v. Rycenga Homes, Inc.*, No. 04-0694,

2007 WL 1032367, at *4 (W.D. Mich. Apr. 2, 2007); *In re YRC Worldwide*, 2010

U.S. Dist. LEXIS 125654, at *13-14 (distinguishing *Great-West*).  Similarly,

numerous courts have stricken jury demands in breach of fiduciary duty cases in

which plaintiffs relied on *Great-West*, finding such reliance misplaced.[8]

In *Amara*, decided nine years after *Great-West*, the Supreme Court noted in

the context of interpreting Section 502(a)(3) of ERISA, the same section of ERISA

---

[8] *See, e.g., Bauer-Ramazani v. Teachers Ins. & Annuity Ass'n of Am.-College Ret. & Equities Fund*, No. 09-0190, 2013 U.S. Dist. LEXIS 169261, at *35 (D. Vt. Nov. 27, 2013) (finding *Great-West* distinguishable in ERISA breach of fiduciary duty claim); *In re Iron Workers Local 25 Pension Fund*, 2011 U.S. Dist. LEXIS 34505, at *47-48 (declining to apply *Great-West* to ERISA breach of fiduciary duty claim, and collecting cases holding the same); *In re YRC Worldwide, Inc.*, 2010 U.S. Dist. LEXIS 125654, at *13-14 (distinguishing fiduciary duties at issue in ERISA action from contractual duties at issue in *Great-West*).

at issue in *Great-West*, that the fact that "relief takes the form of a money payment does not remove it from the category of traditionally equitable relief"; recognized that "[e]quity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty"; and noted that "prior to the merger of law and equity this kind of monetary remedy against [a fiduciary], sometimes called a 'surcharge,' was 'exclusively equitable.'" *CIGNA Corp. v. Amara*, 563 U.S. 421, 441-42 (2011) (citation omitted). Plaintiffs characterize these statements as *dicta* because the Supreme Court grounded its decision on the technical pension plan question presented in that case on another section of the ERISA statute (Section 502(a)(1)(B)), but nowhere do they dispute these longstanding principles regarding equitable relief, nor could they—as noted above, these principles have been settled for hundreds of years.[9] Nor do the other cases that Plaintiffs invoke in their discussion of *Amara*, none of which involves

---

[9] Plaintiffs' reliance on *Pereira v. Farace*, 413 F.3d 330 (2d Cir. 2005), an out-of-circuit case that does not involve Section 36(b) and pre-dates *Amara*, does not shift the Seventh Amendment analysis in their favor. Citing to *Pereira*, Plaintiffs claim that their request for "lost investment earnings" qualifies as legal relief. Pls.' Br. at 9. In *Pereira*, the court considered whether damages that plaintiffs sought from a fiduciary, stemming from payment of dividends at the time of insolvency in violation of Delaware Corporate Law, qualified as legal or equitable relief. *Pereira*, 413 F.3d at 335-36. Although the court in *Pereira* described such relief as legal relief, it did not address the equitable remedy of surcharge. Moreover, the Court in *AXA* considered and rejected arguments that the holdings in *Great-West* and *Pereira* establish that Section 36(b) provides a legal remedy. *Sivolella v. AXA Equitable Funds Mgmt., LLC*, No. 11-4194, 2013 U.S. Dist. LEXIS 115622, at *15-17 (D.N.J. July 3, 2013). The *AXA* Court found no such support. *Id.*

Section 36(b), indicate that surcharge is not an equitable remedy, or establish that it is not what Plaintiffs are seeking here.[10]

In arguing that they are seeking legal relief, Plaintiffs also rely on a series of quotes excerpted from a variety of cases that either do not involve breach of fiduciary duty claims, or rely on misapplications of *Great-West*. Pls.' Br. at 10-12; *see, e.g., Stoneback v. ArtsQuest*, No. 12-3286, 2012 WL 4963624, at *9-10 (E.D. Pa. Oct. 17, 2012) (in whistleblower action, finding that underlying claims and relief sounded in tort for wrongful discharge); *Desmond v. Ng*, No. 15-11155, 2015 WL 5886187, at *6 (D. Mass. Oct. 8, 2015) (in bankruptcy adversary proceeding, awarding jury trial only for breach of contract and other legal claims).[11]  Nothing in

---

[10] *See Parsons v. Bd. of Trs. of Nev. Resort Ass'n – I.A.T.S.E. Local 702 Ret. Plan*, No. 12-00299, 2013 WL 5324946, at *10 (D. Nev. Sept. 20, 2013) (in motion to dismiss plaintiffs' action for unearned wages, dismissing action where plaintiff failed to adequately plead breach of fiduciary duty) (cited in Pls.' Br. at 14); *see also Sergent v. McKinstry*, 472 B.R. 387, 407-08 (E.D. Ky. 2012) (in premature bankruptcy adversary proceeding on claims for gross negligence and breach of fiduciary duty where no equitable remedy was sought and duties arose from employment rather than fiduciary relationship, finding jury trial available for determination of legal restitution) (cited in Pls.' Br. at 14).

[11] Plaintiffs' other citations are unavailing for the same reasons.  *See, e.g., Eichorn v. AT&T Corp.*, 484 F.3d 644, 657-58 (3d Cir. 2007) (in ERISA action, affirming grant of summary judgment against former employees who sought back pay for unearned benefits they were barred from receiving by an agreement between their former employer and its parent company); *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Bollinger, Inc.*, 573 F. App'x 197, 201-02 (3d Cir. 2014) (in ERISA action, affirming motion to dismiss plaintiffs' claims for reimbursement of duplicative medical benefits); *Soley v. Wasserman*, 08-9262, 2013 WL 1655989, at *2-3 (S.D.N.Y. Apr. 17, 2013) (applying state law to determine that compensation claim qualified as legal remedy without any consideration of surcharge, and

these cases, none of which involves Section 36(b), alters the longstanding rule that a request for losses resulting from a breach of fiduciary duty is exclusively equitable, or establishes that Plaintiffs' request for "lost investment earnings" is anything but a request for equitable surcharge. The Seventh Amendment does not afford Plaintiffs a right to a jury trial on the request for lost investment earnings.

**C.     Plaintiffs' Request For "Lost Investment Earnings" Is Inextricably Intertwined With The Core Equitable Remedy They Seek.**

Even if Plaintiffs' request for "lost investment earnings" was not a request for equitable surcharge, which it is, a plaintiff is not entitled to a jury trial where a request for monetary damages is "inextricably intertwined" with equitable relief. *Chauffeurs*, 494 U.S. at 570-71; *Tull v. United States*, 481 U.S. 412, 424 (1987); *In re YRC Worldwide*, 2010 U.S. Dist. LEXIS 125654, at *16. Plaintiffs' request for "lost investment earnings" on the amount of any fees deemed excessive is entirely

---

denying jury trial on equitable accounting claim); *Bethea v. Merchants Commercial Bank*, No. 11-51, 2015 WL 1577976, at *3-4 (D.V.I. Apr. 1, 2015) (in ERISA action considering whether losses qualified as legal or equitable restitution, but failing to consider surcharge); *Hellman v. Cataldo*, No. 12-02177, 2013 WL 4482889, at *1, *4 (E.D. Mo. Aug. 20, 2013) (in ERISA action, finding that plaintiffs' requested remedy qualified as legal restitution); *Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*, No. 11-282, 2012 WL 162361, at *7 (D. Conn. Jan. 19, 2012) (in ERISA action post-*Amara*, striking jury demands for equitable claims, and not addressing Supreme Court's *Amara* analysis with respect to restitution claim); *In re Globe Parcel Serv., Inc.*, 75 B.R. 381, 383 (E.D. Pa. 1987) (in bankruptcy adversary proceeding for negligence, conversion, breach of contract and breach of fiduciary duty, finding jury trial available where majority were legal claims).

dependent on and intertwined with their equitable claim for the return of those

fees, and thus does not afford Plaintiffs a jury trial.

In *Alexander v. Primerica Holdings, Inc.*, 819 F. Supp. 1296, 1309 (D.N.J.

1993), for instance, the plaintiffs brought a breach of fiduciary duty claim under

ERISA for reinstatement of certain plan benefits.  The plaintiffs also sought

monetary damages for expenses and costs incurred as a result of the alleged breach

of fiduciary duty in changing the benefit plan.  *Id*.  Noting that the "main thrust" of

plaintiffs' requested relief was "restitution and [was] equitable," the court held that

the monetary relief was "incidental to the overriding equitable relief sought by the

class of Plaintiffs as a whole" and did not afford plaintiffs to a jury trial.  *Id*. at

1310; *see also In re YRC Worldwide, Inc.*, 2010 U.S. Dist. LEXIS 125654, at*16

(holding that relief was "inextricably intertwined" where "plaintiffs would not be

entitled to money damages on behalf of the plan until they obtained a ruling that

defendants breached their fiduciary duties"); *see also Adams v. Cyprus Amax

Minerals Co.*, 149 F.3d 1156, 1161 (10th Cir. 1998) (denying jury trial where

threshold equitable issue was determinate of any claim for monetary damages);

*Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 661 (6th Cir. 1996) (same).

This case is no different.  Plaintiffs' request for "lost investment earnings"

on any fees deemed excessive is wholly dependent on this Court's determinations

as to whether Defendants have breached any fiduciary duty and should return any

fees to the funds as restitution.  Plaintiffs themselves argue that "lost investment earnings" requires a finding that the fees are excessive and cannot be computed absent such a finding.  Pls.' Br. at 17.  Thus, even according to Plaintiffs, "lost investment earnings" do not constitute relief that is separable from Plaintiffs' equitable claims and on which Plaintiffs could base an independent cause of action. *Cf. Tull*, 481 U.S. at 424 (relief is not intertwined if it qualifies as a separate and independent remedy).  Accordingly, such request for relief does not entitle Plaintiffs to a jury trial.

## III.   PLAINTIFFS' SHOULD BE PRECLUDED FROM SEEKING "LOST INVESTMENT EARNINGS."

In any event, Plaintiffs should be precluded from offering evidence on "lost investment earnings" due to their acknowledged failure to comply with their discovery obligations under the Federal Rules.

### A.   Plaintiffs Do Not Dispute That They Failed To Disclose Computations Of "Lost Investment Earnings."

Notably, Plaintiffs do not dispute that they failed to disclose computations of "lost investment earnings" in their initial disclosures, or at any point during the more than two years of fact or expert discovery, and thus violated Rule 26.  *See* Fed. R. Civ. P. 26(a)(1)(A)(iii).  As a result, the Court has discretion to preclude Plaintiffs from introducing any evidence of "lost investment earnings" at trial, unless Plaintiffs demonstrate that their failure to disclose was substantially justified

22

or harmless.  *See* Fed. R. Civ. P. 37(c)(1); *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000) (affirming order precluding plaintiff from introducing any evidence of future lost earnings at trial); *Glielmi v. Raymond Corp.*, No. 09-5734, 2013 U.S. Dist. LEXIS 7128, at *21 (D.N.J. Jan. 17, 2013) (articulating burden).

Plaintiffs fail to carry their burden.  Plaintiffs do not argue that their failure to disclose during discovery is substantially justified.  Rather, Plaintiffs are left to argue that their failure to disclosure computations of alleged "lost investment earnings" as required is immaterial.  *See* Pls.' Br. at 2, 15-20.  As explained below, it is not.  The Court should therefore preclude Plaintiffs from introducing evidence of "lost investment earnings" at trial.

## B.   Precluding Plaintiffs From Introducing Evidence Of "Lost Investment Earnings" At Trial Is Appropriate.

To determine whether the sanction of excluding evidence from trial is warranted, courts in the Third Circuit consider several factors, often referred to as the *Pennypack* factors, including:  (1) the prejudice or surprise of the party against whom the evidence would be offered; (2) the ability of that party to cure the prejudice; (3) the extent to which permitting the evidence would disrupt the orderly and efficient trial of the case; (4) the presence of any bad faith or willfulness in not disclosing the evidence; and (5) the importance of the evidence.  *See, e.g.*, *Nicholas*, 227 F.3d at 148; *AstraZeneca LP v. Breath Ltd.*, No. 08-1512, 2014 U.S.

23

Dist. LEXIS 136008, at *12 (D.N.J. Sept. 26, 2014) (Bumb, J.).  Each factor falls decidedly in favor of exclusion.

### 1.    Defendants Would Suffer Incurable Prejudice.

With respect to the first factor, Defendants would be prejudiced if Plaintiffs were permitted to seek lost investment earnings at trial.  *See* Defs.' Br. at 25-26. Courts in the Third Circuit routinely find that the first *Pennypack* factor favors exclusion where, as here, the litigation has progressed through discovery and the party against whom the evidence would be offered is preparing for trial.  *See, e.g.*, *AstraZeneca LP*, 2014 U.S. Dist. LEXIS 136008, at *13-14; *Glielmi*, 2013 U.S. Dist. LEXIS 7128, at *21-22; *Young v. Pleasant Valley Sch. Dist.*, No. 07-854, 2011 U.S. Dist. LEXIS 42353, at *4-5 (M.D. Pa. Apr. 19, 2011).

Plaintiffs assert that there is no prejudice to Defendants because the information needed to calculate "lost investment earnings" is accessible to Defendants, presumably somewhere in the more than 2.5 million pages produced during discovery in this case.  *See* Pls.' Br. at 2, 17-20.  This assertion sets the discovery process and the burden of proof at trial on their heads.  *See Silver State Broad., LLC v. Beasley FM Acquisition*, No. 11-1789, 2016 U.S. Dist. LEXIS 8904, at *11 (D. Nev. Jan. 25, 2016) ("[A] plaintiff cannot shift to the defendant the burden of attempting to determine the amount of the plaintiff's alleged damages.") (citation and internal quotation marks omitted).

24

Unsurprisingly, courts have repeatedly rejected the argument Plaintiffs make here. For example, in *Silver State*, the court held that the "risk of prejudice to the defendants is substantial," despite plaintiffs' argument that they provided "documents and evidence from which the defendants could discern the damages computation." *Id.* at *10, *13. The court explained that requiring defendants to proceed to trial without an understanding of how "damages were calculated is trial by ambush." *Id.* at *13.[12] This is precisely the situation Defendants face here.

Similarly, courts have rejected Plaintiffs' argument that there is no prejudice to Defendants because the damages computation is purportedly simple. *See, e.g.*, *Dayton Valley Inv'rs, LLC v. Union Pac. R.R. Co.*, No. 08-127, 2010 U.S. Dist. LEXIS 108232, at *13-14 (D. Nev. Sept. 24, 2010) ("The simplicity of the calculation simply underscores the gravity of the [non-disclosing party's] failure.").[13] Plaintiffs' argument is also belied by the fact that Plaintiffs still have

---

[12] *See also MKB Constructors v. Am. Zurich Ins. Co.*, No. 13-611, 2014 U.S. Dist. LEXIS 137495, at *19 (W.D. Wash. Sept. 29, 2014) ("[T]he fact that the [plaintiff] provided other documents or information within the discovery period from which [defendant] might have divined [plaintiff's] . . . damages calculation is insufficient to avoid prejudice or harm to [defendant]."); *Kodak Graphic Commc'ns Can. Co. v. E.I. Du Pont de Nemours & Co.*, No. 08-6553, 2013 U.S. Dist. LEXIS 151922, at *14 (W.D.N.Y. Oct. 22, 2013) (prejudice weighed "decidedly in favor of preclusion," despite "claim that the damages were contained within the 600,000 pages of discovery exchanged in this case").

[13] In discussing the first *Pennypack* factor, Plaintiffs rely upon four cases that purportedly have "similar circumstances" to those presented here. Pls.' Br. at 17-18. Plaintiffs are incorrect. Notably, unlike here, the non-disclosing party in each case disclosed a computation of damages. *See, e.g.*, *Baptiste v. Rohn*, No. 13-104,

not provided any computation of "lost investment earnings," notwithstanding the

alleged simplicity of the calculation.[14]

Turning to the second *Pennypack* factor, there is no cure for the prejudice

Defendants would suffer if Plaintiffs are allowed to seek "lost investment

earnings" at trial.  Any measure to cure such prejudice will interrupt trial

preparation and result in unnecessary burden and expenses to Defendants.  *See,*

*e.g.*, *Glielmi*, 2013 U.S. Dist. LEXIS 7128, at *22 (second factor weighed in favor

of exclusion where prejudice could not be "cured in a timely and cost-efficient

manner"); *Young*, 2011 U.S. Dist. LEXIS 42353, at *5 ("unclear how [defendants']

prejudice can be cured" where permitting undisclosed evidence would "interrupt

---

2016 U.S. Dist. LEXIS 41095, at *5 (D.V.I. Mar. 29, 2016) (plaintiff provided
"calculation of damages for her lost wages claim"); *Norfolk S. Ry. Co. v.
Pittsburgh & W. Va. R.R.*, No. 11-1588, 2015 U.S. Dist. LEXIS 92159, at *3-4
(W.D. Pa. July 15, 2015) (plaintiffs disclosed "calculation of damages" and
"itemize[d]" the dollar amount sought); *Midwest Elec. Coop. Corp. v. Tri-State
Generation & Transmission Ass'n, Inc.*, No. 10-2349, 2014 U.S. Dist. LEXIS
58574, at *5 (D. Colo. Apr. 28, 2014) (plaintiffs provided "calculation of
damages"); *Maharaj v. Cal. Bank & Tr.*, 288 F.R.D. 458, 463 (E.D. Cal. 2013)
(plaintiff disclosed computation of lost wages but no "analysis of her
computation").

[14] Plaintiffs contend that lost investment earnings can only be calculated <u>after</u> trial
once the amount of allegedly excessive fees has been determined.  *See* Pls.' Br. at
17.  This contention has no basis.  Plaintiffs' expert Dr. Pomerantz submitted a
report computing the amounts of allegedly excessive fees.  Hora Decl. Ex. 2.
Plaintiffs' contention also fails as a matter of law.  *See City of Rome v. Hotels.com,
L.P.*, 549 F. App'x 896, 905 (11th Cir. 2013) (failure to compute damages was not
justified, despite plaintiffs' argument that they lacked "certified data" to calculate
damages and a "final recalculation of damages would have been necessary").

trial preparation").  The Federal Rules require complete disclosure of Plaintiffs'

"lost investment earnings" theory, including computations in their initial

disclosures and a written report from an expert that will testify at trial on this

theory.  *See* Fed. R. Civ. P. 26.  Despite more than two years of discovery,

Plaintiffs have failed to comply with these basic disclosure requirements.

Reopening discovery on the eve of trial and forcing Defendants to, among other

things, analyze any new disclosures that Plaintiffs are required to provide on lost

investment earnings, retain an expert to rebut Plaintiffs' "lost investment earnings"

computations (which still have not been disclosed), and engage in further expert

depositions will only accentuate the prejudice to Defendants.  *See, e.g.*,

*AstraZeneca LP*, 2014 U.S. Dist. LEXIS 136008, at *13-14 (prejudice incurable

where expert discovery had closed and thus defendants were "unable to hire an

expert of their own to conduct the tests, or to otherwise adequately rebut

[Plaintiffs' expert's] results").

### 2.    The Remaining *Pennypack* Factors Favor Exclusion.

The remaining *Pennypack* factors also favor precluding Plaintiffs from

introducing evidence of "lost investment earnings" at trial.  With respect to the

third factor, allowing Plaintiffs to introduce such evidence would result in a "more

complicated and lengthy trial," thereby disrupting the efficient resolution of this

litigation.  *See Glielmi*, 2013 U.S. Dist. LEXIS 7128, at *23.  Plaintiffs themselves

suggest that allowing the introduction of evidence of "lost investment earnings" will result in an additional trial phase. *See* Pls.' Br. at 19-20 ("[A]fter a finding of liability has been made and the amount of excessive fees determined, Plaintiffs will furnish evidence . . . that will allow the trier of fact to calculate lost investment earnings."). Moreover, Defendants would need to call additional witnesses to rebut Plaintiffs theories and calculations.

Turning to the fourth factor, Plaintiffs argue that they have not acted in bad faith (Pls.' Br. at 19),[15] but the relevant factor is bad faith <u>or</u> willful failure to disclose evidence. *Nicholas*, 227 F.3d at 148. A party's failure is willful where the party offers no reasonable explanation for its failure. *See Mercedes Benz USA LLC v. Coast Auto. Grp. Ltd.*, No. 99-3121, 2008 U.S. Dist. LEXIS 72172, at *10-11 (D.N.J. Sept. 23, 2008). Here, Plaintiffs have offered no reasonable explanation for their failure to compute the alleged "lost investment earnings" in their initial disclosures as required by Rule 26(a). The only rationale offered is that "lost investment earnings" can only be calculated after trial once the amount of allegedly excessive fees has been determined. But this argument rings hollow for

---

[15] Plaintiffs argue that bad faith does not exist because Defendants purportedly "had the opportunity to explore any bases for [lost investment earnings] during discovery." Pls.' Br. at 19. This argument again misconstrues the parties' burdens in the discovery process. *See, e.g.*, *Kodak Graphic*, 2013 U.S. Dist. LEXIS 151922, at *11 (rejecting argument that party should have asked "the right deposition questions regarding a computation that [was] never provided" because "[s]uch a result would be contrary to the purpose of the discovery rules").

28

the reasons set forth above (*see* p. 26 n.14):  Plaintiffs' expert Dr. Pomerantz

submitted a report computing the amounts of allegedly excessive fees.  Hora Decl.

Ex. 2.

Finally, with respect to the fifth factor, evidence of "lost investment

earnings" is not important.  As explained above, "lost investment earnings" is not a

cognizable remedy under Section 36(b).  *See* Section I.A.  Furthermore, Plaintiffs

apparently did not believe such relief was important—they did not raise the

concept in discovery or their expert reports.  *See Glielmi*, 2013 U.S. Dist. LEXIS

7128, at *23 (finding undisclosed information not important to case because if it

was, it "would have undoubtedly been produced earlier").

In sum, each of the *Pennypack* factors warrants precluding Plaintiffs from

introducing evidence of lost investment earnings at trial.

## IV.   THE COURT SHOULD NOT EMPANEL AN ADVISORY JURY.

Plaintiffs' cross-motion to empanel an advisory jury should be denied.  An

advisory jury would have no proper role in this case.  Although Federal Rule of

Civil Procedure 39(c)(1) provides a court with discretion to "try any issue with an

advisory jury," advisory juries are used only in rare and exceptional circumstances.

*See, e.g.*, *Moss v. Lane Co.*, *Inc.*, 471 F.2d 853, 855 (4th Cir. 1973) (use of

advisory juries "should be restricted . . . to the exceptional case where there are

peculiar and unique circumstances supporting its use"); *Reich v. King*, 861 F.

Supp. 379, 385 (D. Md. 1994) (denying motion in case "for a breach of fiduciary

duty under ERISA," where circumstances were "not so unique or exceptional as to

warrant the use of an advisory jury").[16]  A critical consideration that courts

examine in deciding whether to use an advisory jury is whether doing so would be

an efficient use of judicial resources and jurors' time, a question that Plaintiffs

conspicuously avoid.[17]  Because advisory juries add inefficiencies and

complications, they are used typically only when:  (1) a plaintiff asserts multiple

claims, some of which will be tried to a jury as of right, and a court allows the jury

to advise on non-jury claims with overlapping issues; or (2) an advisory jury would

assist the court in determining community norms where the underlying legal

---

[16] *See also*, *e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, No. 04-5723, 2012
WL 4361443, at *2-3 (S.D.N.Y. Sept. 11, 2012) (denying motion for advisory jury
in antitrust lawsuit, and noting parenthetically that such juries are not empaneled
except in "extraordinary or peculiar or unique, or exceptional cases where there are
unique circumstances"); *Ollier v. Sweetwater Union High Sch. Dist.*, 267 F.R.D.
338, 339 (S.D. Cal. 2010) (same in Title IX lawsuit, where "no special factors or
extraordinary circumstances present"); *Doe v. Barrow County*, No. 03-156, 2005
WL 6033020, at *5 (N.D. Ga. Mar. 3, 2005) (same in constitutional challenge);
*Fleming v. Peavy-Wilson Lumber Co.*, 38 F. Supp. 1001, 1003 (W.D. La. 1941)
(same in Fair Labor Standards Act lawsuit, reasoning that:  "The right to direct the
trial of issues with an advisory jury will not be exercised by a court of equity
without substantial reasons.  An advisory jury is used only in extraordinary cases,
to inform the conscience of the court.") (citation and internal quotation marks
omitted); 8 J.W. Moore *et al.*, *Moore's Federal Practice* § 39.41, at 39-87 (3d ed.
2004).

[17] *See*, *e.g.*, *Ollier*, 267 F.R.D. at 339 (denying motion for advisory jury in Title IX
case because it "would add unnecessary expense, time and complexity to a case
that has no special factors or extraordinary circumstances" warranting an advisory
jury).

standards in the case require an application or understanding of such norms.

Neither of these circumstances is present here.

###    A.    Empaneling An Advisory Jury Would Lead To Inefficiency, Delay, And A Waste Of Judicial Resources.

The Court indicated in its recent summary judgment decision that it does not

expect trial in this matter to take more than a few days. *Kasilag*, 2016 U.S. Dist.

LEXIS 47063, at *60. Empaneling an advisory jury, however, would impose

unnecessary burdens, inefficiencies, and delay on the Court and the parties. As

Plaintiffs' brief indicates, advisory juries are most often used in cases with

overlapping factual issues that cut across claims that are triable to a jury and others

that are triable to the court. But those are not the facts of this case. The only

claims in this lawsuit arise under Section 36(b), and there is no right to a jury trial

on those claims for the reasons already stated in Defendants' briefing.[18]  Under

these circumstances, courts rarely empanel a jury to serve exclusively in an

advisory capacity because of the substantial burdens a jury trial places on the

parties, the court, and, of course, the jurors compelled to serve. *See*, *e.g.*, *In re*

*Currency Conversion Fee Antitrust Litig.*, 2012 WL 4361443, at *2 (denying

motion for advisory jury, reasoning that, "[b]ecause none of Plaintiffs' claims are

_____

[18] Plaintiffs argue that an advisory jury should be empaneled because it would "promote judicial efficiency" if "it is subsequently determined on appeal that Plaintiffs have a right to a jury trial." *See* Pls.' Br. at 22. But for all of the reasons articulated in Defendants' briefing, there is nothing uncertain about the unavailability of a jury trial under Section 36(b). No court has ever granted one.

triable of right by a jury, empaneling an advisory jury to determine whether Defendants engaged in a conspiracy would waste judicial resources and generate inefficiencies"); *Forrest v. Omega Protein, Inc.*, No. 11-92, 2011 WL 4352302, at *4 (E.D. Va. Sept. 16, 2011) ("empaneling a jury in an advisory capacity would result in an inefficient use of judicial resources"); *Skoldberg v. Villani*, 601 F. Supp. 981, 982 (S.D.N.Y. 1985) (denying request for advisory jury because any role it would play did "not justify the additional time and expense involved in presenting this case to a jury").[19]

Indeed, as in the *Currency Conversion*, *Forrest*, and *Skoldberg* cases, empaneling an advisory jury here would result in substantial inefficiencies, additional complexities, and considerably more work for the Court and the parties. For example, the use of an advisory jury here would require, among other things:

- *Voir dire*;

- Repeated sidebars during the course of trial;

- Preparation and consideration of jury instructions and the holding of one or more jury instruction conferences;

- Reading into the record or reviewing in open court recorded testimony that the Court could otherwise accept and review at a later time;

---

[19] *See also Van Asdale v. Int'l Game Tech.*, No. 04-703, 2010 WL 1490349, at *7 (D. Nev. Apr. 13, 2010) (denying advisory jury request in Sarbanes-Oxley action, reasoning that, *inter alia*, it "imposes a burden on jurors whose ultimate decision may not matter"); *Dewey Elecs. Corp. v. Montage*, *Inc.*, 117 F.R.D. 73, 75 (M.D. Pa. 1987) (same in patent infringement case because bench trial would save judicial resources).

- Extensive requests during the course of trial for limiting instructions;

- Complex evidentiary rulings;

- Far more extensive motions *in limine* to prevent confusion regarding complicated economic evidence bearing on economies of scale, comparative fee structures, expense allocations and profitability, among other things, that would more readily be weighed and understood by the Court sitting as the trier of fact;

- Far more extensive trial objections which otherwise might not be made; and

- Jury deliberations.

All of these time-consuming tasks would be avoided in a bench trial. *See, e.g.*, *Dewey*, 117 F.R.D. at 75; *cf. Rosen v. Dick*, 83 F.R.D. 540, 544 (S.D.N.Y. 1979) ("A bench trial always moves more expeditiously than a jury trial.").

Moreover, none of these significant burdens would be offset by any material advantages. As a number of courts have noted, the "interests of judicial economy would not be served . . . by empaneling an advisory jury because the Court will still have to make its own findings of fact and conclusions of law." *In re Pan Am Corp.*, No. 93-7125, 1994 WL 174318, at *4 (S.D.N.Y. May 3, 1994); *see also, e.g., Skoldberg*, 601 F. Supp. at 982 ("Whatever value the views of a jury may have is diminished by the fact that the Court must still come to its own judgment in accordance with Fed. R. Civ. P. 52(a).").

**B.     There Is No Special Role For Advisory Juries In Section 36(b) Cases, And This Case Does Not Implicate Any Unique Issues That Justify Empaneling An Advisory Jury.**

Ignoring the inefficiencies and needless complexities that an advisory jury would create, Plaintiffs argue that, because one of Defendants' experts commented in a background section of his report that many individuals have purchased sub-advised mutual funds, an advisory jury would be especially appropriate for this Section 36(b) case.  Pls.' Br. at 26.  Plaintiffs are wrong.

Plaintiffs' Section 36(b) claim does not require defining a community-based standard of morality or "reasonableness."  Quite the contrary, "reasonableness" is an impermissible standard for judging advisory fees in Section 36(b) lawsuits. *Jones*, 559 U.S. at 341.  As the Supreme Court observed, "Congress rejected a 'reasonableness' requirement that was criticized as charging the courts with rate-setting responsibilities. . . ." *Id.* at 352.  The inquiry under Section 36(b) focuses on the adviser itself, the value of its services rendered, and a series of additional factors that the *courts* weigh (*see id.* at 349-52)—all in an attempt to determine whether the fees charged fall within a range of what arm's-length negotiations among fiduciaries and investment advisors might produce.[20]  The inquiry does *not*

---

[20] One of these factors is the fees charged by comparable mutual funds, and because Defendants' expert discusses this factor—as experts regularly do in Section 36(b) cases—Plaintiffs' claim that this case is well-suited for an advisory jury.  Pls.' Br. at 26.  But a jury would bring no special expertise to bear on this technical question—which does not involve any "community standards" —and *Jones* makes

involve the sort of shifting community norms that might help judges determine whether, for example, a photograph is obscene.  As another district court held recently in a breach of fiduciary duty case under ERISA, "[w]hile Plaintiff argues that an advisory jury would incorporate the public's views of morality, it is the job of the Court to decide the legal viability of Plaintiff's claims and the Court has an extensive and comprehensive statutory and regulatory framework . . . to rely on." *Beesley v. Int'l Paper Co.*, No. 06-703, 2009 WL 260782, at \*6 (S.D. Ill. Feb. 4, 2009) (advisory jury would not promote judicial economy but would "prolong proceedings, substantially increase the cost of the trial to the parties, and divert the Court's resources").  This reasoning is particularly apt here.

Furthermore, no court has ever empaneled an advisory jury in connection with a Section 36(b) case.  Plaintiffs suggest that their request for an advisory jury is bolstered by an order entered *sua sponte* by a district judge in the Western District of Pennsylvania in a separate litigation brought by Plaintiffs' lawyers

---

clear that the analysis necessary to determine whether an advisory fee violates Section 36(b) must be assessed by *courts*.  *Jones*, 559 U.S. at 349-52 ("courts may give such comparisons [of fees charged to funds and other investment advisory clients] the weight that they merit in light of the similarities and differences between the services that the clients in question require, but courts must be wary of inapt comparisons"; "courts should be mindful that the Act does not necessarily ensure fee parity between mutual funds and institutional clients contrary to petitioners' contentions"; "[w]here a board's process for negotiating and reviewing investment-adviser compensation is robust, a reviewing court should afford commensurate deference to the outcome of the bargaining process"; "the standard for fiduciary breach under § 36(b) does not call for judicial second-guessing of informed board decisions").

against a different mutual fund advisor. Pls.' Br. at 25. However, this issue was never briefed in that case. Moreover, because the case was never tried, no advisory jury was ever empaneled. In any event, a review of the order in question underscores the needless complexity which an advisory jury would add to this case: the order required, *inter alia*, that the parties prepare "verdict forms consisting of specific interrogatories that correlate to the separate components of the *Gartenberg* standard as construed and clarified in *Jones* and in a manner that identifies each central fact inquiry or mixed question of law and fact under that construction. . . ." Declaration of Daniel S. Sweetser, dated June 6, 2016 (ECF No. 199-2), Ex. D.

Plaintiffs' other citations do not in any way suggest that an advisory jury should be empaneled here. The authority on which Plaintiffs rely principally to support their request for an advisory jury is *NAACP v. Acusport Corp.*, 226 F. Supp. 2d 391, 398 (E.D.N.Y. 2002). But that case is simply illustrative of one of the categories of cases discussed above, *i.e.*, those requiring a definition of a community-based standard. In *Acusport*, the NAACP sued gun manufacturers and distributors for injunctive relief, contending that their marketing methods endangered the "public health, safety, and peace." *Id.* at 400. Observing that advisory juries originally were conceived by the English Chancery Court "to have its conscience enlightened," the district judge in *Acusport* reasoned that an

advisory jury might be helpful because the NAACP's claims implicated "community-based standards," which themselves "may incorporate the public's views of morality and changing common law." *Id.* at 397-98 (citation and internal quotation marks omitted). The court concluded that, in determining whether the gun manufacturers and distributors had unlawfully endangered the public health, safety and peace, it was appropriate "to take into consideration the values and standards of the community" via an advisory jury "representative of our diverse community." *Id.* at 400.[21]

Courts regularly deny requests for advisory juries when, as here, a jury is not already being empaneled to hear legal claims and "community standards" are not at issue. *See*, *e.g.*, *Kramer v. Banc of Am. Sec.*, *LLC*, 355 F.3d 961, 967 (7th Cir.), *cert. denied*, 542 U.S. 932 (2004) (affirming denial of request for advisory jury on disability discrimination claim where district court "saw no point to the expense and time of an advisory jury, particularly on an issue that I suspect I need no advice") (citation and internal quotations marks omitted); *Schuster v. Shepard Chevrolet, Inc.*, No. 99-8326, 2002 WL 507130, at *11 (N.D. Ill. Apr. 3, 2002)

---

[21] Not surprisingly, a number of the authorities cited in *Acusport* as examples of the use of advisory juries also involved causes of action dependent upon community standards of morality or requiring application of a "reasonableness" standard. 226 F. Supp. 2d at 398-99 (citing to cases involving whether the community would consider magazines to be obscene; issues of what constitutes "reasonable suspicion" justifying a search; whether community viewed nearby landfill to be a nuisance; and whether distress claimed by plaintiffs from having mail opened by the CIA "was of the sort that would be experienced by reasonable people").

(same in age discrimination case, where "the benefit to be derived from an advisory verdict would not outweigh [the] additional burdens that would be imposed on the jury"); *Ollier*, 267 F.R.D. at 339 (advisory jury "would add unnecessary expense, time and complexity" to Title IX case); *see also United Power Ass'n v. Fed. Emergency Mgmt. Agency*, No. 99-180, 2001 WL 1789404, at *3 (D.N.D. Aug. 14, 2001) (declining request in FEMA case); *EEOC v. HI 40 Corp., Inc.*, No. 93-0230, 1994 WL 421494, at *1 (W.D. Mo. Apr. 5, 1994) (same in EEOC case).

Finally, it is insufficient for Plaintiffs to invoke "national public policy" as a purported justification for empaneling an advisory jury here. Pls.' Br. at 23. Countless equitable actions involve the enforcement of federal statutes that, by definition, involve issues of national policy. But that has never been deemed sufficient when, as here, there are no resulting trial efficiencies and the legal standards to be applied are not community based. *See*, *e.g.*, *Ollier*, 267 F.R.D. at 339 (rejecting "subtle suggestion" of proponent of advisory jury that Title IX "should be influenced by community beliefs about the funding of sports programs in the local schools or gender equality").

## CONCLUSION

For all the reasons stated above and in Defendants' opening brief, Defendants respectfully request that the Court strike Plaintiffs' jury demands in

their entirety, preclude Plaintiffs from offering evidence of "lost investment earnings," and deny Plaintiffs' cross-motion to empanel an advisory jury.

Dated:  June 24, 2016


MILBANK, TWEED, HADLEY & McCLOY LLP

Sean M. Murphy (*pro hac vice*)
Robert C. Hora (*pro hac vice*)
28 Liberty Street
New York, NY  10005-1413
(212) 530-5000
*Of Counsel*

SHERMAN WELLS SYLVESTER & STAMELMAN LLP

By: /s/ Anthony Sylvester
Anthony Sylvester
210 Park Avenue, 2nd Floor
Florham Park, NJ 07932
(973) 302-9700
*Attorneys for Defendants*