UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JENNIFER L. KASILAG, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> HARTFORD INVESTMENT <br> FINANCIAL SERVICES, LLC, <br><br> Defendant. | *Filed Electronically* <br> **Civ. A. No. 11-cv-1083 (RMB/KMW)** |
| JENNIFER L. KASILAG, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> HARTFORD FUNDS <br> MANAGEMENT COMPANY, LLC, <br><br> Defendant. | **Civ. A. No. 14-cv-1611 (RMB/KMW)** |
| JENNIFER L. KASILAG, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> HARTFORD FUNDS <br> MANAGEMENT COMPANY, LLC, <br><br> Defendant. | **Civ. A. No. 15-cv-1876 (RMB/KMW)** <br><br> **Judge: Karen M. Williams** <br><br> **Final Pretrial Conference** <br> **August 16, 2016, 10:00 a.m.** <br><br> **JOINT** <br> **FINAL PRETRIAL ORDER** |

The following shall constitute the Final Pretrial Order pursuant to Rule 16 of

the Federal Rules of Civil Procedure.  This Final Pretrial Order shall govern the

1

conduct of the trial of this case.  After October 31, 2016, amendments to this Order will be allowed only in exceptional circumstances to prevent manifest injustice. *See* Fed. R. Civ. P. 16(e).  Counsel are urged to move to amend in a timely fashion any portion of the Order that must be changed or modified between the filing of the Order and the trial date.

**APPEARANCES:**

**a.**    **Counsel for Plaintiffs**:  Arnold Lakind, Robert Lakind, Robert Stevens and Daniel Sweetser of Szaferman, Lakind, Blader & Blumstein, P.C., and Robin F. Zwerling and Andrew Robertson of Zwerling, Schachter & Zwerling, LLP.

**b.**    **Counsel for Defendants**:  Sean M. Murphy, Jamie G. Cavoli, Robert C. Hora, and Andrea G. Hood of Milbank, Tweed, Hadley & McCloy LLP, and Anthony J. Sylvester and Anthony Valenziano of Sherman Wells Sylvester & Stamelman LLP for Defendants Hartford Investment Financial Services ("HIFSCO") and Hartford Funds Management Company, LLC ("HFMC") (together with HIFSCO, "Hartford").

**PART I.     JURISDICTION and BRIEF SUMMARY OF THE CASE:**

This Court has jurisdiction over the subject matter of this action pursuant to Section 44 of the Investment Company Act of 1940 (the "ICA"), 15 U.S.C. § 80a-43.  The parties agree that venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b).  Plaintiffs are investors in a number of Hartford mutual funds.

Defendant HIFSCO (until 2013) and Defendant HFMC (2013 to present) served as the investment manager to the Funds pursuant to Investment Management Agreements ("IMA").  Pursuant to Section 36(b) of the ICA, 15 U.S.C. § 80a-35(b), investment advisers have "a fiduciary duty with respect to the receipt of compensation for services" rendered to mutual funds (*i.e.*, fees funds pay to the adviser).  Section 36(b) permits mutual fund shareholders to assert a claim against investment advisers for alleged breaches of that duty.  15 U.S.C. § 80a-35(b). Plaintiffs claim that Defendants breached that fiduciary duty and charged excessive fees.  Defendants deny this allegation.

**PART II.   STIPULATED FACTS:**

The Parties' Joint Stipulation of Facts is attached as Exhibit A.

**PART III.   PLAINTIFFS' CONTESTED FACTS:**

**1.      Plaintiffs intend to prove the following contested facts with regard to liability:**

Plaintiffs' Contested Facts on Liability and Damages is attached as Exhibit B.

**2.      Plaintiffs intend to prove the following contested facts with regard to damages:**

Plaintiffs' Contested Facts on Liability and Damages is attached as Exhibit B.

**PART IV.   DEFENDANTS' CONTESTED FACTS:**

**1.    Defendants intend to prove the following contested facts with regard to liability:**

Defendants' Contested Facts on Liability and Damages is attached as Exhibit C.

**2.    Defendants intend to prove the following contested facts with regard to damages:**

Defendants' Contested Facts on Liability and Damages is attached as Exhibit C.  Defendants note that in its recent order granting Defendants' motion to strike Plaintiffs' jury demands, the Court stated that it would try the issues of liability and damages separately.

**PART V.   WITNESSES and SUMMARY OF TESTIMONY:**
**Only the witnesses whose <u>names and addresses</u> are listed herein will be permitted to testify at the time of trial.  For each witness listed, there must be a <u>description of their testimony</u>.  Any objection to a witness must be noted by opposing counsel and for each such witness objected to, the name of the witness and the reason for the objection shall be given.**

**A.    <u>Plaintiffs' Witnesses and Summary of Their Testimony</u>**

**1.    Plaintiffs intend to call the following witnesses with regard to liability and anticipate they will testify as follows:**

<u>Live Witnesses</u>

**1.    <u>Vernon Meyer</u>:**

Address:    Hartford Funds Management Company, LLC
5 Radnor Corporate Center, Suite 300
100 Matsonford Road
Radnor, PA 19087

Mr. Meyer is Chief Investment Officer of Defendants, an Officer for all Funds, and one of Defendants' 30(b)(6) witnesses. Mr. Meyer will be called as a hostile witness pursuant to Evid. Rule 611(c)(2).  It is anticipated that he will testify

4

regarding the nature of Defendants' business, including but not limited to: Defendants' Investment Management Agreements ("IMAs"), the services they provide under the IMAs, Defendants' fees under the IMAs, Defendants' expenses under the IMAs, Defendants' delegation of IMA services to Sub-Advisers, the Sub-Advisory Agreements, the Sub-Advisers' services, the fees paid to the Sub-Advisers, Defendants' services to approximately 50 mutual funds and other products in addition to Plaintiffs' Funds, the Funds' service contracts with other entities, services provided under contracts separate from the IMAs and/or for fees that are separate and in addition to the fees collected under the IMAs, Defendants' involvement in the 15(c) process, the information Defendants provided to the Board, the Board's involvement in the 15(c) process, Defendants' interaction and communications with the Board, Defendants' exchange of information with the Board, the Board's oversight of approximately 60 mutual funds in addition to Plaintiffs' Funds, Defendants' expense calculation and allocation process and Defendants' profitability reports.

**2.     Defendants' Custodian of Records.**

> Address:     Hartford Funds Management Company, LLC
> 5 Radnor Corporate Center, Suite 300
> 100 Matsonford Road
> Radnor, PA 19087

Plaintiffs will call a Custodian of Defendants' records to testify regarding the creation, authenticity and admissibility of exhibits.

**3.     J.P. Morgan Chase Bank N.A. Custodian of Records.**

> Address:     JPMorgan
> 1 Chase Manhattan Plaza 19[th] Floor
> New York, NY

Plaintiffs will call a Custodian of records of this company to testify regarding the creation, authenticity and admissibility of exhibits.

**4.     State Street Bank and Trust Company Custodian of Records.** Plaintiffs will call a Custodian of records of this company to testify regarding the creation, authenticity and admissibility of exhibits.

<u>Address:</u>    State Street New Jersey
1255 Broad Street
Building 1
Clifton New Jersey, 07013

5.    **Wellington's Record Custodian:** Plaintiffs will call a Custodian of records of this company to testify regarding the creation, authenticity and admissibility of the exhibits.

<u>Address:</u>    4 Radnor Corporate Center, Suite 500
Radnor, Pennsylvania 19087

**Witnesses Plaintiffs Intend to Call by Designation**

6.    **Thomas Mack:**

<u>Address:</u>    657-C Del Parquet Drive
Santa Barbara, CA 93103

Mr. Mack is principal of Thomas H. Mack & Co., Inc., and a consultant to the Board. The parties have agreed to exchange copies of their affirmative read in designations by October 21, 2016. However, in general, this individual's read in testimony will include, but is not limited to, one or more of the following topics: expenses under the IMAs, the fees paid under the Sub-Advisory Agreements, the information Defendants provided to the Board, the Board's involvement in the 15(c) process, Defendants' interaction and communications with the Board, Defendants' exchange of information with the Board, Defendants' expense calculation and allocation process and Defendants' profitability reports.

7.    **Robert Ball:**

<u>Address:</u>    Wellington Management Company LLP
280 Congress Street
Boston, MA 02210

Mr. Ball is a Vice-President employed by the Sub-Adviser, Wellington Management Company, LLP ("Wellington"), and the Relationship Manager for

Wellington's business relationship with Defendants. The parties have agreed to exchange copies of their affirmative read in designations by October 21, 2016.
However, in general, this individual's read in testimony will include, but is not limited to, one or more of the following topics: Wellington's Sub-Advisory Agreements with Defendants, Sub-Advisory fees, the services that Wellington performs for Defendants and/or the Funds, the resources Wellington uses in providing services to the Defendants and/or the Funds, Wellington's agreement with Defendants, Wellington's involvement in the 15(c) process, the information Wellington provided to the Board, Wellington's interaction and communications with the Board, Wellington's exchange of information with the Defendants, Wellington's interaction and communications with Defendants, Wellington's business, and Defendants' services provided to the Funds.

8. **Harvey Rosen**:

    <u>Address</u>:    JPMorgan Chase Bank, N.A.
                   1 Beacon Street
                   Boston, MA

Mr. Rosen is the Global Head of Fund Accounting for JPMorgan Chase Bank, N.A., ("JPMCB") and JPMCB's Rule 30(b)(6) witness. The parties have agreed to exchange copies of their affirmative read in designations by October 21, 2016.
However, in general, this individual's read in testimony will include, but is not limited to, one or more of the following topics:  the competitive market for mutual fund administration services, the administration services provided by JPMCB to unaffiliated mutual fund clients, and the fees charged to such clients by JPMCB for administration services.

9. **Robert Gavin**:

    <u>Address</u>:    Minnesota

Mr. Gavin is Chairman of the Board that oversees, among others, the Plaintiffs' Funds, and the Funds' Rule 30(b)(6) witness. The parties have agreed to exchange copies of their affirmative read in designations by October 21, 2016. However, in general, this individual's read in testimony will include, but is not limited to, one or more of the following topics:  the Board's oversight of the Funds, Defendants' IMAs, the services they provide under the IMAs, Defendants' fees under the IMAs, Defendants' expenses under the IMAs, Defendants' delegation of IMA services to Sub-Advisers, the Sub-Advisory Agreements, the services of the Sub-

Advisers, Defendants' services to approximately 50 mutual funds and other products in addition to Plaintiffs' Funds, the Funds' service contracts with other entities, services provided under contracts separate from the IMAs and/or for fees that are separate and in addition to the fees collected under the IMAs, Defendants' involvement in the 15(c) process, the information Defendants provided to the Board, the Board's involvement in the 15(c) process, Defendants' interaction and communications with the Board, Defendants' exchange of information with the Board, the Board's oversight of  approximately 60 mutual funds in addition to Plaintiffs' Funds, Defendants' expense calculation and allocation process, Defendants' profitability reports, the Board's oversight over the Funds' other contracts, fees and service providers including: the transfer agent, distributor, accountant and custodian, and the Board's compensation.

**10.**   **Lemma Senbet**:

    Address:    Nairobi, Kenya

Mr. Senbet is a member of the Board that oversees, among others, the Plaintiffs' Funds.  The parties have agreed to exchange copies of their affirmative read in designations by October 21, 2016. However, in general, this individual's read in testimony will include, but is not limited to, one or more of the following topics: Board's oversight of the Funds, Defendants' IMAs, the services they provide under the IMAs, Defendants' fees under the IMAs, Defendants' expenses under the IMAs, Defendants' delegation of IMA services to Sub-Advisers, the Sub-Advisory Agreements, the services of the Sub-Advisers, Defendants' services to approximately 50 mutual funds and other products in addition to Plaintiffs' Funds, the Funds' service contracts with other entities, services provided under contracts separate from the IMAs and/or for fees that are separate and in addition to the fees collected under the IMAs, Defendants' involvement in the 15(c) process, the information Defendants provided to the Board, the Board's involvement in the 15(c) process, Defendants' interaction and communications with the Board, Defendants' exchange of information with the Board, the Board's oversight of approximately 60 mutual funds in addition to Plaintiffs' Funds, Defendants' expense calculation and allocation process, Defendants' profitability reports, the Board's oversight over the Funds' other contracts, fees and service providers including: the transfer agent, distributor, accountant and custodian, and the Board's compensation.

**11.**   **Duane Hill**:

<u>Address</u>:     108 North Lake Drive
                Stamford, CT 06903

Mr. Hill is a member of the Board that oversees, among others, the Plaintiffs' Funds. The parties have agreed to exchange copies of their affirmative read in designations by October 21, 2016. However, in general, this individual's read in testimony will include, but is not limited to, one or more of the following topics: the Board's oversight of the Funds, Defendants' IMAs, the services they provide under the IMAs, Defendants' fees under the IMAs, Defendants' expenses under the IMAs, Defendants' delegation of IMA services to Sub-Advisers, the Sub-Advisory Agreements, the services of the Sub-Advisers, Defendants' services to approximately 50 mutual funds and other products in addition to Plaintiffs' Funds, the Funds' service contracts with other entities, services provided under contracts separate from the IMAs and/or for fees that are separate and in addition to the fees collected under the IMAs, Defendants' involvement in the 15(c) process, the information Defendants provided to the Board, the Board's involvement in the 15(c) process, Defendants' interaction and communications with the Board, Defendants' exchange of information with the Board, the Board's oversight of approximately 60 mutual funds in addition to Plaintiffs' Funds, Defendants' expense calculation and allocation process, Defendants' profitability reports, the Board's oversight over the Funds' other contracts, fees and service providers including: the transfer agent, distributor, accountant and custodian, and the Board's compensation.

**12.**  **<u>James Davey</u>**

    <u>Address</u>:     Hartford Funds Management Company, LLC
                5 Radnor Corporate Center, Suite 300
                100 Matsonford Road
                Radnor, PA 19087

**13.**  **<u>Tamara Fagely</u>**

    <u>Address</u>:     1227 Holly Avenue North
                Oakdale, MN 55128

**14.**  **<u>Edward Macdonald</u>**

|  | Address: | Hartford Funds Management Company, LLC |
|---|---|---|
|  |  | 5 Radnor Corporate Center, Suite 300 |
|  |  | 100 Matsonford Road |
|  |  | Radnor, PA 19087 |

**15.** **Colleen Pernerewski**

Address:    The Hartford
One Hartford Plaza
Hartford, CT 06155

**16.** **Jeffrey Cloutier**

Address:    310 South Glover Road
River Falls, WI 54022

**17.** **Marilyn Orr**

Address:    1552 Alameda Street
St. Paul, MN 55107

**18.** **Elizabeth Schroeder**

Address:    Hartford, CT

**19.** **Steven Lombardi**

Address:    36 Munnisunk Drive
Simsbury, CT 06070

**20.** **Matthew Arciero**

Address:    45 Stony Corners Circle
Avon, CT 06001

**21.** **Vernon Meyer**

Address:    Hartford Funds Management Company, LLC
5 Radnor Corporate Center, Suite 300
100 Matsonford Road

10

Radnor, PA 19087

Plaintiffs have agreed to provide copies of the admissions of these individuals that
they will read in to the Defendants by October 21, 2016. However, in general, this
individual's read in testimony will include, but is not limited to, one or more of the
following topics: Defendants' IMAs, the services they provide under the IMAs,
Defendants' fees under the IMAs, Defendants' expenses under the IMAs,
Defendants' delegation of IMA services to Sub-Advisers, the Sub-Advisory
Agreements, the Sub-Advisers' services, the fees paid to the Sub-Advisers,
Defendants' services to approximately 50 mutual funds and other products in
addition to Plaintiffs' Funds, the Funds' service contracts with other entities,
services provided under contracts separate from the IMAs and/or for fees that are
separate and in addition to the fees collected under the IMAs, Defendants'
involvement in the 15(c) process, the information Defendants provided to the
Board, the Board's involvement in the 15(c) process, Defendants' interaction and
communications with the Board, Defendants' exchange of information with the
Board, the Board's oversight of approximately 60 mutual funds in addition to
Plaintiffs' Funds, Defendants' expense calculation and allocation process and
Defendants' profitability reports.

> **2.    Plaintiffs intend to call the following witnesses with regard
> to damages and anticipate they will testify as follows:**

Given the nature of this case, portions of the testimony of many liability
witnesses identified above and many exhibits will relate to the issue of damages.

> **B.    Defendants' objections to Plaintiffs' Witnesses:  If there are no
> objections to any of the witnesses, defendant shall so state that in
> this portion of the Order.  If there are objections to any of
> plaintiffs' witnesses, they shall be listed here.**

**Defendants' Objections to Witnesses Plaintiffs Intend To Call Live:**

**1.    Vernon Meyer:**  Defendants object to the extent Plaintiffs seek to elicit
testimony from Mr. Meyer that does not pertain to the six "remaining factual
disputes" that the Court has identified for trial (*see* SJ Opinion at 53-54), and
Defendants reserve their right to object to such testimony at trial and/or to move to
preclude it.  In particular, any testimony relating to the Board's process of
approving the fees under the IMA, or the split in fees and services as between
Defendants and the subadvisers, is irrelevant, in light of the Court's ruling on

summary judgment that (i) there is no genuine factual dispute as to the adequacy of the Board's process, such that the Board's approval of the IMA is entitled to substantial weight, and (ii) the "combined services" of Defendants and the subadvisers "should be measured against the totality of the advisory fee." *Id.* at 42-43. Accordingly, much of the testimony Plaintiffs anticipate eliciting from this witness pertains to matters that are irrelevant, including Defendants' purported delegation of IMA services to subadvisers; the subadvisory agreements; the subadvisers' services; the fees paid to subadvisers; Defendants' services to funds and products not at issue in this case; the Funds' service contracts with other entities; services provided under contracts separate from the IMA and/or for fees that are separate and in addition to the fees collected under the IMAs; and any testimony pertaining to the Board's process of negotiating and approving the fee. In addition, Defendants object on grounds that Plaintiffs' description of the anticipated testimony from this witness is virtually identical to their description of the anticipated testimony of 12 other witnesses on their list, such that the anticipated testimony of these witnesses is cumulative and unnecessary in the aggregate, particularly given that the Court has stated that it "does not anticipate that the resolution of [the remaining] factual disputes would require more than a few days of trial time." *Id.* at 54. Further, given that the Court has bifurcated the liability and damages phases of this trial, Defendants object to the extent Plaintiffs seek to elicit testimony concerning alleged damages in the liability phase.

**2.**   **Defendants' Custodian of Records**: No objection.

**3.**   **J.P. Morgan Chase Bank N.A. Custodian of Records**: All objections reserved subject to identification of custodian.

**4.**   **State Street Bank and Trust Company Custodian of Records**: All objections reserved subject to identification of custodian.

**5.**   **Wellington's Record Custodian**: All objections reserved subject to identification of custodian.

**Witnesses Outside The Court's Subpoena Power**: Defendants object to any attempts by Plaintiffs to subpoena any witnesses for trial who are outside the subpoena power of the Court under Fed. R. Civ. P. 45(C)(1)(A).

**Defendants' Objections to Witnesses Plaintiffs Intend to Call By Designation**:

6.   **Thomas Mack**: Defendants object to the extent that Plaintiffs seek to read in deposition testimony of Mr. Mack concerning the independence, care, and conscientiousness of the Funds' Board.  The Court ruled on summary judgment that there is no genuine factual dispute as to the adequacy of the Board's process, such that the Board's approval of the IMA is entitled to substantial weight.  The Court made clear that as to the procedural aspect of the *Jones v. Harris* analysis and the *Gartenberg* factor relating to independence and conscientiousness of the Board, there remains no factual dispute.  *See* SJ Opinion at 52-53; *see also id.* at 53-54 (listing six factual disputes remaining for trial).

7.   **Robert Ball**: Defendants object to the extent that Plaintiffs seek to read in deposition testimony of Mr. Ball that does not pertain to the "six remaining factual disputes" that the Court has identified for trial.  *See* SJ Opinion at 53-54.  In particular, any testimony relating to the split in fees and services as between Defendants and the subadvisers, is irrelevant, in light of the Court's ruling on summary judgment that the "combined services" of Defendants and the subadvisers "should be measured against the totality of the advisory fee."  *Id.* at 42-43.  Accordingly, much of the testimony Plaintiffs anticipate reading in from this witness pertains to matters that are irrelevant, including Defendants' purported delegation of IMA services to subadvisers; the subadvisory agreements; the subadvisers' services versus Defendants' services; and the fees paid to subadvisers versus to Defendants.

8.   **Harvey Rosen**: Defendants object on grounds that Mr. Rosen, an officer at JPMorgan Chase Bank with no connection to Plaintiffs or Defendants, cannot provide any relevant testimony by designation or otherwise.  Plaintiffs assert that Mr. Rosen's designated deposition testimony will relate to "the competitive market for mutual fund administration services" and the services JPMorgan provides and fees it charges to "unaffiliated mutual fund clients" for such services.  Such testimony would not be relevant to any of the remaining factual disputes in this case, including the issue of comparative fee structures, because under the IMA Defendants provide both management and administrative services and they do not provide such services to unaffiliated clients.

9.   **Robert Gavin**: Defendants object on grounds that there is no basis to expect that Mr. Gavin, a retired Board member, will provide any relevant testimony by designation or otherwise.  The Court ruled on summary judgment that there is no genuine factual dispute as to the adequacy of the Board's process, such

that the Board's approval of the IMA is entitled to substantial weight.  The Court
made clear that as to the procedural aspect of the *Jones v. Harris* analysis and the
*Gartenberg* factor relating to independence and conscientiousness of the Board,
there remains no factual dispute.  *See* SJ Opinion at 52-53; *see also id.* at 53-54
(listing six factual disputes remaining for trial).  Accordingly, there is no need for
Mr. Gavin or any other member of the Board to be called as a witness by
designation or otherwise.  Mr. Gavin should be stricken from Plaintiffs' witness
list.

**10.   Lemma Senbet**:  With respect to Mr. Senbet, a Board member, Defendants
incorporate by reference their objection to Plaintiffs' calling of Robert Gavin as a
witness.  Mr. Senbet should similarly be stricken from Plaintiffs' witness list.

**11.   Duane Hill**:  With respect to Mr. Hill, a Board member, Defendants
incorporate by reference their objection to Plaintiffs' calling of Robert Gavin as a
witness.  Mr. Hill should similarly be stricken from Plaintiffs' witness list.

**12.   James Davey**:  With respect Mr. Davey, Defendants incorporate by
reference their objection above to Plaintiffs' description of the anticipated
testimony of Mr. Meyer, given that the description of the testimony of these
witnesses is identical.

**13.   Tamara Fagely**:  With respect to Ms. Fagely, Defendants incorporate by
reference their objection above to Plaintiffs' description of the anticipated
testimony of Mr. Meyer, given that the description of the testimony of these
witnesses is identical.

**14.   Edward Macdonald**:  With respect to Mr. Macdonald, Defendants
incorporate by reference their objection above to Plaintiffs' description of the
anticipated testimony of Mr. Meyer, given that the description of the testimony of
these witnesses is identical.

**15.   Colleen Pernerewski**:  With respect to Ms. Pernerewski, Defendants
incorporate by reference their objection above to Plaintiffs' description of the
anticipated testimony of Mr. Meyer, given that the description of the testimony of
these witnesses is identical.

**16.   Jeffrey Cloutier**:  With respect to Mr. Cloutier, Defendants incorporate by
reference their objection above to Plaintiffs' description of the anticipated

testimony of Mr. Meyer, given that the description of the testimony of these witnesses is identical.

**17.** **Marilyn Orr**:  With respect to Ms. Orr, Defendants incorporate by reference their objection above to Plaintiffs' description of the anticipated testimony of Mr. Meyer, given that the description of the testimony of these witnesses is identical.

**18.** **Elizabeth Schroeder**:  With respect to Ms. Schroeder, Defendants incorporate by reference their objection above to Plaintiffs' description of the anticipated testimony of Mr. Meyer, given that the description of the testimony of these witnesses is identical.

**19.** **Steven Lombardi**:  With respect to Mr. Lombardi, Defendants incorporate by reference their objection above to Plaintiffs' description of the anticipated testimony of Mr. Meyer, given that the description of the testimony of these witnesses is identical.

**20.** **Matthew Arciero**:  With respect to Mr. Arciero, Defendants incorporate by reference their objection above to Plaintiffs' description of the anticipated testimony of Mr. Meyer, given that the description of the testimony of these witnesses is identical.

**21.** **Vernon Meyer**:  With respect to the deposition testimony of Mr. Meyer, Defendants incorporate by reference their objection above to Plaintiffs' description of the anticipated testimony of Mr. Meyer as a live witness, given that the description of the testimony is identical.

**General Objection to Witnesses Plaintiffs Intend to Call By Designation**:  The parties have agreed to exchange copies of their affirmative read in designations by October 21, 2016.  Until such time, Defendants reserve all available objections.

## C.   Defendants' Witnesses and Summary of Their Testimony

### 1.   Defendants intend to call the following witnesses with regard to liability and anticipate they will testify as follows:[1]

**Witnesses Defendants Intend To Call Live:**

1.   **Vernon Meyer**

   <u>Address</u>:   Hartford Funds Management Company, LLC
   5 Radnor Corporate Center, Suite 300
   100 Matsonford Road
   Radnor, PA 19087

Vernon Meyer is a Senior Vice President of the Hartford Life Insurance Company ("<u>HLIC</u>") and serves as the managing director and Chief Investment Officer of HFMC and managing director of Hartford Funds Management Group, Inc. ("<u>HFMG</u>").

Mr. Meyer may testify regarding the nature and quality of the services Hartford provides to the Funds. Mr. Meyer may also testify about the agreements between the Funds and their service providers. Mr. Meyer may also testify about Fund performance and analyses of the Funds' performance.

Mr. Meyer may further testify about Hartford's profitability with respect to the Funds for providing investment management services and certain other Fund services, including its methodology for determining its profitability. He may also testify about Hartford's profitability compared to certain other investment management firms in the industry.

Mr. Meyer may further testify regarding the Funds' fees, competition in the mutual fund industry, comparisons of the Funds' investment management fees, the Funds' total expense ratios, the "spread" between the fees paid to Hartford and the subadviser, and fee "spreads" compared to peer funds. Mr. Meyer may also testify about the pricing of the Funds, and the levels at which the Funds' fees and breakpoints are set. Mr. Meyer may also testify about analyses of the Funds' fees,

---

[1] Certain of the topics identified below are for rebuttal purposes. Defendants note that the inclusion of a given topic is not an admission that it is relevant or admissible.

16

and about the risks that Hartford assumes as the Funds' investment manager and sponsor.

Mr. Meyer may further testify about Hartford's mutual fund business, including its organizational structure, pricing, and products, as well as Hartford's interaction with and reliance on its parent company, HIG. Mr. Meyer may further testify as to the services provided to the Funds by Hartford's subadvisers on Hartford behalf.

Mr. Meyer may further testify regarding economies of scale, including how Hartford shares the benefits of any potential economies of scale with the Funds. Mr. Meyer may also testify regarding Hartford's realization of fall-out benefits, if any, or the lack of such benefits as a result of serving as investment manager to the Funds. In addition, Mr. Meyer may testify on any topics Plaintiffs have noted on their witness list for Mr. Meyer.

To the extent necessary, Mr. Meyer may also serve as a custodian of records.

The above summary is not an exhaustive synopsis of all facts to which Mr. Meyer may testify.

2.    **Edward Macdonald**

Address:    Hartford Funds Management Company, LLC
5 Radnor Corporate Center, Suite 300
100 Matsonford Road
Radnor, PA 19087

Edward P. Macdonald is the Deputy General Counsel, Executive Vice President, and Assistant Secretary of Hartford. He also serves as the Chief Legal Officer, Vice President, and Secretary of the Funds.

Mr. Macdonald may testify regarding the nature and quality of services that Hartford provides to the Funds, including compliance- and legal-related services, as well as administrative and general business management services. He may also testify regarding the services performed by Hartford in connection with the annual contract renewal process mandated by Section 15(c) of the ICA, including the preparation and dissemination by Hartford of reports, presentations, and other materials to the Independent Directors.

Mr. Macdonald may further testify regarding the legal and regulatory environment in which Hartford and the Funds operate.  He may also testify regarding the risks that Hartford assumes as the Funds' investment manager.

Mr. Macdonald may further testify regarding Hartford's various agreements with the Funds and service providers, including the IMAs between Hartford and the Funds, and the subadvisory agreements between Hartford and the subadvisers. Mr. Macdonald may further testify as to the services provided to the Funds by Hartford's subadvisers on Hartford behalf.  He may also testify regarding the fees paid by the Funds, including comparisons of the Funds' fees to the fees of similar funds.

Mr. Macdonald may further testify regarding Hartford's interaction with and reliance on its parent company, HIG.  He may also testify regarding Hartford's profitability with respect to the Funds, including Hartford's methodology for determining its profitability.

Mr. Macdonald may further testify regarding economies of scale, including how Hartford shares the benefits of any potential economies of scale with the Funds.  Mr. Macdonald may also testify regarding Hartford's realization of fall-out benefits, if any, as a result of serving as investment manager to the Funds.  In addition, Mr. Macdonald may testify on any topics Plaintiffs have noted on their witness list for Mr. Macdonald.

To the extent necessary, Mr. Macdonald may also serve as a custodian of records.

The above summary is not an exhaustive synopsis of all facts to which Mr. Macdonald may testify.

**Witnesses Defendants Intend To Call By Designation:**

1.    **Robert Ball**

    Address:    Wellington Management Company LLP
                 280 Congress Street
                 Boston, MA 02210

Robert Ball is Wellington's Relationship Manager with respect to Hartford. Defendants intend to offer his testimony by deposition designation under Fed. R.

Evid. 804(b)(1).  The parties have agreed to exchange copies of their affirmative read in designations by October 21, 2016.

In general, Mr. Ball may testify regarding Hartford's engagement of Wellington as subadviser for certain of the Funds and Wellington's provision of subadvisory services on Hartford's behalf, including, selecting and trading Fund portfolio securities, performing certain compliance monitoring tasks, and providing certain reports to the Board.  Further, Mr. Ball may testify about the role of Wellington's portfolio managers of the Funds, including their interactions with Hartford's IAG teams and the Board.

Mr. Ball may also testify about the subadvisory fee negotiation process between Hartford and Wellington, including the various factors that are considered during the negotiation process.  In addition, Mr. Ball may testify on any topics Plaintiffs have noted on their witness list for Mr. Ball.

The above summary is not an exhaustive synopsis of all facts to which Mr. Meyer may testify.

2.    **Jeffrey Cloutier**

Address:    310 South Glover Road
River Falls, WI 54022

Jeffrey Cloutier is a former employee of Hartford, whose deposition testimony Defendants intend to offer by designation under Fed. R. Evid. 804(b)(1). The parties have agreed to exchange copies of their affirmative read in designations by October 21, 2016.  Mr. Cloutier served as the Director of Financial Planning and Analysis for Hartford and until November 2013.

In general, Mr. Cloutier may testify about the nature and quality of services provided to the Funds by his team on behalf of Hartford, including fund profitability calculations, financial reporting services, and pricing.  Mr. Cloutier may also testify about the methodology used by Hartford to calculate and report its profitability in connection with managing the Funds.  In addition, Mr. Cloutier may testify on any topics Plaintiffs have noted on their witness list for Mr. Cloutier.

The above summary is not an exhaustive synopsis of all facts to which Mr. Cloutier may testify.

3.     **Tamara "Tami" Fagely**

    <u>Address:</u>    1227 Holly Avenue North
                    Oakdale, MN 55128

Ms. Fagely is the former Chief Financial Officer and former Chief Operating Officer of Hartford, whose deposition testimony Defendants intend to offer by designation under Fed. R. Evid. 804(b)(1). The parties have agreed to exchange copies of their affirmative read in designations by October 21, 2016. Ms. Fagely held various financial officer roles with Hartford and its affiliated legal entities from 2001 until her retirement in December 2013. Ms. Fagely also served as an officer of the Funds during her tenure. Ms. Fagely has been a Certified Public Accountant and holds securities licenses Series 6, 26, and 27.

In general, Ms. Fagely may testify regarding the nature and quality of Hartford's services to the Funds. Ms. Fagely may further testify as to the services provided to the Funds by Hartford's subadvisers on Hartford behalf. Ms. Fagely may also testify about the process by which Hartford calculates and reports its profitability for management of the Funds, and the third-party consultants who reviewed that profitability. Ms. Fagely may also testify about Hartford and the Funds' financial statements, costs, and pricing. In addition, Ms. Fagely may testify on any topics Plaintiffs have noted on their witness list for Ms. Fagely.

The above summary is not an exhaustive synopsis of all facts to which Ms. Fagely may testify.

4.     **Steven Lombardi**

    <u>Address:</u>    36 Munnisunk Drive
                    Simsbury, CT 06070

Steven Lombardi is a former employee of Hartford, whose deposition testimony Defendants intend to offer by designation under Fed. R. Evid. 804(b)(1). The parties have agreed to exchange copies of their affirmative read in designations by October 21, 2016. Mr. Lombardi served as a Director in the product development and management area of the Hartford until August 2012.

In general, Mr. Lombardi may testify as to the nature and quality of services provided to the Funds by his team, including product development and pricing analysis. Mr. Lombardi may also testify about Hartford's fees in comparison to industry peers. Mr. Lombardi may also testify as to Hartford's costs and profit

margin calculations for providing services to the Funds.  In addition, Mr. Lombardi may testify on any topics Plaintiffs have noted on their witness list for Mr. Lombardi.

The above summary is not an exhaustive synopsis of all facts to which Mr. Lombardi may testify.

5.   **Thomas Mack**

Address:      657-C Del Parquet Drive
                      Santa Barbara, CA 93103

Thomas Mack is a consultant to the Board of Directors of the Funds, whose deposition testimony Defendants intend to offer by designation under Fed. R. Evid. 804(b)(1).  The parties have agreed to exchange copies of their affirmative read in designations by October 21, 2016.  Mr. Mack holds a Masters in Business Administration from Harvard Business School.  He is the former Chief Financial Officer of the Paine Webber mutual fund complex.  Mr. Mack began his consulting practice in 1991 and has worked on a variety of consulting arrangements for numerous mutual fund boards and investment managers.  He has served as a consultant to the Board of Directors to the Funds since 2008.

In general, Mr. Mack may testify regarding industry standards for the accounting treatment of subadvisory fees when calculating investment management profit margins.  He may also testify about the use of cost allocation methodologies to calculate investment management profit margins.  Mr. Mack may testify as to his review, analysis, and conclusions of Hartford's cost allocation methodology and calculations of investment management profit margins, which were conducted in 2009 and again in 2014.  Mr. Mack may testify as to comparisons of the Funds' fees to similar funds and to the criterion he and his late business partner, Geoff Bobroff, applied to their evaluation of Lipper peer groupings.  Mr. Mack may testify as to the feasibility of conducting economies of scale analyses in the mutual fund industry.  In addition, Mr. Mack may testify on any topics Plaintiffs have noted on their witness list for Mr. Mack.

The above summary is not an exhaustive synopsis of all facts to which Mr. Mack may testify.

6.     **Marilyn Orr**

  <u>Address</u>: 1552 Alameda Street
      St. Paul, MN 55107

  Marilyn Orr is a former Vice-President of Investment Finance Tax and Reporting at Hartford, whose deposition testimony Defendants intend to offer by designation under Fed. R. Evid. 804(b)(1).  The parties have agreed to exchange copies of their affirmative read in designations by October 21, 2016.  Ms. Orr retired from Hartford in March 2013.  Ms. Orr also served as Assistant Treasurer of the Funds.  In general, Ms. Orr may testify about the nature and quality of services provided to the Funds by her team.  In addition, Ms. Orr may testify on any topics Plaintiffs have noted on their witness list for Ms. Orr.

  The above summary is not an exhaustive synopsis of all facts to which Ms. Orr may testify.

7.     **Colleen Pernerewski**

  <u>Address</u>: The Hartford
      One Hartford Plaza
      Hartford, CT 06155

  Colleen Pernerewski is the former Chief Compliance Officer ("<u>CCO</u>") for HIFSCO and the mutual funds.  Defendants intend to offer her deposition testimony by designation under Fed. R. Evid. 804(b)(1).  The parties have agreed to exchange copies of their affirmative read in designations by October 21, 2016.

  In general, Ms. Pernerewski may testify regarding the nature and quality of the compliance related services that Hartford provides to the Funds, including the development and execution of the Funds' and Hartford's mandatory compliance program.  Ms. Pernerewski may further testify about Hartford's compliance testing of the subadvisers, quarterly compliance reviews for Board reporting purposes, the Annual Assessment of the Funds' Compliance Program furnished to the Board, Hartford's Form ADV, and code of ethics and conflict management.

  Ms. Pernerewski may further testify to the due diligence Hartford performs on the subadvisers, Wellington and HIMCO, and other of the Funds' service providers.  Ms. Pernerewski may further testify as to the services provided by Hartford's subadvisers on Hartford behalf.

In addition, Ms. Pernerewski may testify to certain of the risks that Hartford bears as the Funds' investment manager.  Ms. Pernerewski may also testify on any topics Plaintiffs have noted on their witness list for Ms. Pernerewski.

The above summary is not an exhaustive synopsis of all facts to which Ms. Pernerewski may testify.

**Witnesses on Plaintiffs' Witness List:**  Defendants reserve the right to call or designate the deposition testimony of any witness on Plaintiffs' witness list.

> **2.      Defendants intend to call the following witnesses with regard to damages and anticipate they will testify as follows:**

The Court recently stated in its order granting Defendants' motion to strike Plaintiffs' jury demand that it will try the issues of liability and damages separately.  Nevertheless, Defendants note that they do not have an affirmative claim for damages.  In defense of any claim by Plaintiffs for damages in a later phase of this case, Defendants would rely upon the cross-examination of Plaintiffs' witnesses, the direct examinations of Defendants' experts, and direct examinations or deposition designations of Defendants' witnesses listed above.

> **D.      Plaintiffs' objections to Defendants' Witnesses:  If there are no objections to any of the witnesses, plaintiff shall so state that in this portion of the Order.  If there are objections to any of defendants' witnesses, they shall be listed here.**

**Witnesses Defendants Intend to Call Live:**

1.      **Vernon Meyer:** Plaintiffs object to any testimony of Mr. Meyer that does not pertain to the six "remaining factual disputes" that the Court has identified for trial (*see* SJ Opinion at 53-54), including testimony related to the Board. Plaintiffs object to any testimony from Mr. Meyer that differs from the testimony of Defendants' Rule 30(b)(6) witnesses with regard to non-investment advisory services; Hartford's profitability with respect to the Funds for providing investment management services and certain other Fund services, including its methodology for determining its profitability; and/or other matters within the scope of Plaintiffs' Rule 30(b)(6) notice. With respect to the aforementioned topics, Mr. Myer was not designated as Defendants' 30(b)(6) witness on such topics, rather Defendants designated Tamara Fagely, and/or Colleen Pernerewski as the 30(b)(6)

witnesses on such topics. Furthermore, for certain topics, Mr. Meyer was designated by Defendants as a 30(b)(6) witness, and Plaintiffs object to any testimony from Mr. Meyer that differs from the testimony he gave as a Rule 30(b)(6) witnesses.

Plaintiffs object to any testimony from Mr. Meyer "about HFMC's …organizational structure, . . . as well as Hartford's interaction with and reliance on its parent company, HIG" because in discovery Plaintiffs requested that Defendants produce a 30(b)(6) witness with respect to "[t]he corporate organizational and operational structure of Defendants," and no such witness was ever identified or produced by Defendants. Plaintiffs further object to testimony regarding "Hartford's interaction with and reliance on its parent company, HIG" because such testimony is irrelevant. If Mr. Meyer is permitted to testify regarding the foregoing topics, Plaintiffs object to such testimony insofar as it is inconsistent with any testimony provided by Defendants' Rule 30(b)(6) designees.

Plaintiffs object to any testimony by Mr. Meyer that constitutes expert opinion. The summary of this fact witness's testimony indicates an intention of Defendants to improperly use Mr. Meyer as an expert, and that Defendants may attempt to elicit opinions and explanations from this employee on technical and specialized subject matters, rather than just facts. Even if this witness had the qualifications to do so under Fed. R. Evid. 702, an employee of a party may not offer expert testimony at trial unless the party has, in accordance with Fed. R. Civ. P. 26(a)(2)(C), disclosed during discovery "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Under Fed. R. Civ. P. 37(c)(1), the Court must bar any such testimony, as Defendants' failure to disclose in accordance with Fed. R. Civ. P. 26(a)(2)(C) was unjustified and would greatly prejudice Plaintiffs if permitted. This above described objection regarding Mr. Meyer's proposed expert testimony applies to other lay witnesses identified by Defendants and is hereinafter referred to by Plaintiffs as an objection to Non-Disclosed Expert Witness Testimony.

**2.** **Edward Macdonald:** Plaintiffs object to any testimony of Mr. Macdonald that does not pertain to the six "remaining factual disputes" that the Court has identified for trial (*see* SJ Opinion at 53-54), including testimony related to the Board.

Plaintiffs object to any testimony from Mr. Macdonald that differs from the testimony of Defendants' Rule 30(b)(6) witnesses with regard to services, the

nature and quality of services that Hartford provides to the funds, compliance and legal related services, administrative and general management services, services performed by Hartford in connection with the annual contract renewal process, Hartford's various agreements with the Funds and service providers, the IMAs between Hartford and the Funds, the Subadvisory Agreements, the services of the Sub-Advisers, the fees paid by the Funds, economies of scale, fall-out benefits, Hartford's profitability with respect to the Funds, Hartford's methodology for determining its profitability, and/or other matters within the scope of Plaintiffs' Rule 30(b)(6) notice.  With respect to the aforementioned topics, Mr. Macdonald was not designated as Defendants' 30(b)(6) witness on such topics, rather Defendants designated Vernon Meyer, Tamara Fagely, and/or Colleen Pernerewski as the 30(b)(6) witnesses on such topics.

Plaintiffs object to any testimony from Mr. Macdonald "about Hartford's interaction with and reliance on its parent company, HIG," as it is irrelevant and because in discovery Plaintiffs requested that Defendants produce a 30(b)(6) witness with respect to "[t]he corporate organizational and operational structure of Defendants and its Affiliates," and no such witness was ever identified or produced by Defendants.  In the event Mr. Macdonald is permitted to testify "about Hartford's interaction with and reliance on its parent company, HIG," Plaintiffs object to any such testimony that differs from Vernon Meyer, Tamara Fagely and/or Colleen Pernerewski as they were Defendants' designated 30(b)(6) witnesses regarding the services Defendants and their affiliates provide to the Funds. Further, in the event Mr. Macdonald is permitted to testify "about Hartford's interaction with and reliance on its parent company, HIG," Plaintiffs further object to any such testimony that differs from Ms. Fagely's as she was the designated 30(b)(6) witness regarding the costs and expenses incurred by Defendants and their affiliates in providing services to the Funds.

Plaintiffs also object to any testimony from Mr. Macdonald that constitutes Non-Disclosed Expert Witness Testimony.

**Witnesses Defendants Intend to Call By Designation:**

3.  **Robert Ball:** No objection.

4.  **Jeffrey Cloutier**:  Plaintiffs object to any testimony of Mr. Cloutier that does not pertain to the six "remaining factual disputes" that the Court has identified for trial (*see* SJ Opinion at 53-54).

Plaintiffs object to any testimony from Mr. Cloutier that differs from the testimony of Defendants' Rule 30(b)(6) witnesses about the nature and quality of services provided to the Funds by this team on behalf of Hartford, fund profitability calculations, financial reporting services, pricing, the methodology used by Hartford to calculate and report its profitability in connection with managing the Funds, and/or other matters within the scope of Plaintiffs' Rule 30(b)(6) notice. With respect to the aforementioned topic, Mr. Cloutier was not designated as Defendants' 30(b)(6) witness on such topics, rather Defendants designated Vernon Meyer, Tamara Fagely, and/or Colleen Pernerewski as the 30(b)(6) witnesses on such topics.

Plaintiffs also object to any testimony from Mr. Cloutier that constitutes Non-Disclosed Expert Witness Testimony.

5.    **Tamara "Tami" Fagely:**  No objection.

6.    **Steven Lombardi:**  Plaintiffs object to any testimony of Mr. Lombardi that does not pertain to the six "remaining factual disputes" that the Court has identified for trial (*see* SJ Opinion at 53-54).

Plaintiffs object to any testimony from Mr. Lombardi that differs from the testimony of Defendants' Rule 30(b)(6) witnesses about the nature and quality of services provided to the Funds by his team, product development and pricing analysis, Hartford's costs and profit margin calculations for providing services to the Funds, and/or other matters within the scope of Plaintiffs' Rule 30(b)(6) notice. With respect to the aforementioned topic, Mr. Lombardi was not designated as Defendants' 30(b)(6) witness on such topics, rather Defendants designated Vernon Meyer, Tamara Fagely, and/or Colleen Pernerewski as the 30(b)(6) witnesses on such topics.

Plaintiffs also object to any testimony from Mr. Lombardi that constitutes Non-Disclosed Expert Witness Testimony.

7.    **Thomas Mack:** Plaintiffs object to any testimony of Mr. Mack that does not pertain to the six "remaining factual disputes" that the Court has identified for trial (*see* SJ Opinion at 53-54), including because Mr. Mack was a "consultant to the Board," and his testimony is irrelevant in light of the Court's ruling on the parties' Summary Judgment Motions.

Plaintiffs object to any testimony from Mr. Mack that differs from the testimony of Defendants' Rule 30(b)(6) witnesses about the accounting treatment of subadvisory fees when calculating investment profit margins, cost allocation methodologies to calculate investment profit margins, Hartford's cost allocation methodology, calculations of investment management profit margins, economies of scale, and/or other matters within the scope of Plaintiffs' Rule 30(b)(6) notice. With respect to the aforementioned topics, Mr. Mack was not designated as Defendants' 30(b)(6) witness on such topics, rather Defendants designated Vernon Meyer and/or Tamara Fagely as the 30(b)(6) witnesses on such topics.

Plaintiffs also object to any testimony from Mr. Mack that constitutes Non-Disclosed Expert Witness Testimony.

8.   **Marilyn Orr:** Plaintiffs object to any testimony of Ms. Orr that does not pertain to the six "remaining factual disputes" that the Court has identified for trial (*see* SJ Opinion at 53-54).

Plaintiffs object to any testimony from Ms. Orr that differs from the testimony of Defendants' Rule 30(b)(6) witnesses about the nature and quality of services provided to the Funds by her team and/or other matters within the scope of Plaintiffs' Rule 30(b)(6) notice. With respect to the aforementioned topics, Ms. Orr was not designated as Defendants' 30(b)(6) witness on such topics, rather Defendants designated Vernon Meyer, Tamara Fagely and/or Colleen Pernerewski as the 30(b)(6) witnesses on such topics.

Plaintiffs also object to any testimony from Ms. Orr that constitutes Non-Disclosed Expert Witness Testimony.

9.   **Colleen Pernerewski:** Plaintiffs object to any testimony of Ms. Pernerewski to the extent Defendants seek to elicit testimony from Ms. Pernerewski that does not pertain to the six "remaining factual disputes" that the Court has identified for trial (*see* SJ Opinion at 53-54), including testimony related to the Board.

**General Objection to Witnesses Defendants Intend to Call By Designation**:
The parties have agreed to exchange copies of their affirmative read in designations by October 21, 2016.  Until such time, Plaintiffs reserve all available objections.

## PART VI.  **EXPERT WITNESSES**

Any prior Scheduling Order of the court concerning experts is applicable to this action and the directives of the Scheduling Order shall govern expert testimony in this case.  Any expert not listed in this portion of the Final Pretrial Order shall not be permitted to testify at the time of trial.  Additionally, the <u>curriculum vitae</u> of every expert expected to testify at the time of trial shall be attached to this Final Pretrial Order.  The <u>curriculum vitae</u> or summary of the expert's qualifications may be read into the record at the time the expert takes the stand, and no opposing counsel shall be permitted to question the qualifications of the expert unless the basis of the objection is set forth in this Final Pretrial Order.  No expert will be permitted to testify at trial unless all opposing counsel have received the <u>curriculum vitae</u> of the expert and the information required by Fed.R.Civ.P. 26(a)(2) as directed in the Scheduling Order.

If any hypothetical questions are to be put to an expert witness on direct examination, they shall be written in advance and submitted to the court and counsel prior to the commencement of trial.

1.      Plaintiffs' expert witnesses are:

1.   **Kent Barrett, CPA:**

<u>Address</u>:      Veris Consulting, Inc.
                  151 N. State Street
                  Morgan, UT  84050

Mr. Barrett will provide testimony consistent with his reports dated February 25, 2015 and May 18, 2015.  Mr. Barrett's curriculum vitae is attached as Exhibit D.

2.   **Richard Kopcke, Ph. D.:**

<u>Address</u>:      Center for Retirement Research
                  Boston College, Hovey House
                  140 Commonwealth Avenue
                  Chestnut Hill, MA 02467

Dr. Kopcke will provide testimony consistent with his reports dated February 27, 2015 and May 18, 2015.  Dr. Kopcke's curriculum vitae is attached as Exhibit D.

28

    2.    **Defendants' objections to the qualifications of plaintiffs' expert witnesses are: (The objections shall be referenced to the name of each listed expert.)**

1.    **Kent Barrett, CPA**: Defendants will move to strike the opinions of Plaintiffs' expert Kent Barrett, to the extent those opinions (i) conflict with the Summary Judgment Opinion, (ii) lack reliability, or (iii) relate to topics on which Barrett is unqualified to opine. First, Defendants will ask the Court to bar Barrett from opining that Hartford presents the Board with a "significantly distorted view of its profitability" on grounds that the Court rejected this contention in the Summary Judgment Opinion and held that considerable weight should be accorded to the Board's approval of the fees. Defendants also will ask the Court to bar Barrett from offering "net profitability" calculations based on only a portion of the overall fee and only the services Hartford provides directly, based on the Court's determination that under Section 36(b), the "combined services" of both Hartford and Wellington "should be measured against the totality of the advisory fee." SJ Opinion at 42-43. Second, Defendants will ask the Court to strike Barrett's profitability calculations and opinions regarding fall-out benefits as unreliable. Barrett fails to cite any authority from his claimed area of expertise (accounting) supporting his approach to calculating profitability, and his opinions on fall-out benefits amount to nothing more than basic math exercises applied to revenue items assumed to be fall-out benefits. Third, Defendants will also ask the Court to strike Barrett's opinions on fall-out benefits on grounds that Barrett lacks the qualifications to offer such opinions.

2.    **Richard Kopcke, Ph.D.**: Defendants will move to strike the opinions of Plaintiffs' expert Richard Kopcke, to the extent those opinions (i) conflict with the Summary Judgment Opinion, (ii) lack reliability, (iii) reflect legal conclusions, which are the exclusive province of this Court, or (iv) relate to topics on which Kopcke lacks the qualifications to opine. First, Defendants will ask the Court to bar Kopcke from offering opinions based on the artificial construct of Hartford's "retained fees" (*i.e.*, the portion of the overall fee that remains after Hartford pays Wellington) or only those services that Hartford provides directly to the Funds, based on the Court's determination that under Section 36(b), the "combined services" of both Hartford and Wellington "should be measured against the totality of the advisory fee." SJ Opinion at 42-43. Second, Defendants will ask the Court to strike Kopcke's purported comparisons of Hartford's "retained fees . . . to fees of other administrators" and of Hartford's "profit margins" to "customary margins . . . in competitive markets for investment management services," on grounds that the service providers and agreements to which Kopcke compares Hartford are so

limited and so plainly distinguishable that these comparisons must be rejected as unreliable.  Third, Defendants will seek to exclude any direct or indirect statement or opinion by Kopcke that the fees at issue were not and could not have been the product of arm's-length bargaining, since such testimony would amount to improper legal conclusion given the nature of the case.  Fourth, Defendants will ask the Court to strike Kopcke's opinions regarding what is customary in the mutual fund industry on grounds that Kopcke has no specialized knowledge relating to the industry, having never conducted any scientific or reliable survey or study of industry "customs," and never having worked for a mutual fund investment adviser, participated in the management and administration of a mutual fund, or served on a mutual fund board.

**3.    Defendants' expert witnesses are:**

1.    **Robin Cooper**

      Address:   427 Habersham Street
                        Savannah, Georgia 31401

Robin Cooper is a management and cost accounting consultant and chief executive of Consensus.  He previously served as a professor of management accounting at Goizueta Business School, Emory University, and at Harvard Business School.  Dr. Cooper is a member of the American Accounting Association and a fellow of the Institute of Chartered Accountants in England and Wales.  Dr. Cooper's research and publications focus on management accounting and cost accounting.   His *curriculum vitae* is attached as Exhibit E.

Dr. Cooper may testify regarding Hartford's profitability and the methodologies it used to calculate its profitability, including Hartford's treatment of subadvisory fees as expenses when calculating profitability.  He may also testify about Hartford's cost allocation methodology.

Dr. Cooper may also address the opinions of Plaintiffs' accounting expert, Mr. Kent E. Barrett, including his opinions regarding:  (1) the accounting treatment of subadvisory fees, (2) Hartford's profitability calculations, (3) Hartford's cost allocation methodology, and (5) Hartford's operating expenses.  Dr. Cooper may also respond to these and other topics as they are presented in the expert testimony of Mr. Barrett and Dr. Kopcke.

The above summary is not an exhaustive synopsis of all those matters to which Dr. Cooper may testify.

2.   **Robert Glenn Hubbard**

Address:   Columbia Business School
3022 Broadway, Uris Hall 101
New York, NY 10027

Robert Glenn Hubbard is the Dean of the Graduate School of Business at Columbia University, where he also is the Russell L. Carson Professor of Economics and Finance. In addition, Dr. Hubbard is a Professor of Economics at Columbia University. His academic research and publications focus on corporate finance, financial institutions, economics, mutual funds, industrial organization, and public policy. Dr. Hubbard's *curriculum vitae* is attached as Exhibit E.

Dr. Hubbard may testify regarding the nature and characteristics of the mutual fund industry. For example, Dr. Hubbard may testify regarding competition, regulations, and the subadvisory structure in the mutual fund industry. Dr. Hubbard may also testify, from an economic and comparative perspective, regarding the fees paid by the Funds. For example, Dr. Hubbard may testify to how the Funds' fees are consistent with the fees of similar funds. Dr. Hubbard may also testify from an economic perspective regarding Hartford's profitability with respect to the Funds.

Dr. Hubbard may further testify regarding the Funds' performance. Dr. Hubbard may also testify regarding economies of scale and how Hartford shares the benefits of any potential economies of scale with the Funds. Dr. Hubbard may also address Plaintiffs' assertions regarding purported fall-out benefits. Dr. Hubbard may also respond to these and other topics as they are presented in the expert testimony of Mr. Barrett and Dr. Kopcke.

The above summary is not an exhaustive synopsis of all those matters to which Dr. Hubbard may testify.

4.   **Plaintiffs' objections to the qualifications of defendants' expert witnesses are: (The objections shall be referenced to the name of each listed expert.)**

None.

## PART VII.  <u>EXHIBITS</u>

In this section of the Final Pretrial Order, counsel should number each proposed exhibit and upon receipt of the exhibit list of an adversary, opposing counsel should prepare a response to this exhibit list indicating as to each exhibit whether there will be an objection and if there is, the nature of the objection.  Absent an extraordinary showing of good cause, <u>ONLY THE EXHIBITS LISTED BELOW SHALL BE INTRODUCED AT THE TIME OF TRIAL</u>.  You are not required to list exhibits that will be used, if at all, only for impeachment purposes.

Counsel are reminded that each such exhibit shall be physically pre-marked corresponding to the designation below.  Copies of exhibit lists shall be provided to the District Judge and the assigned court reporter at the time of trial.

A.    <u>Plaintiffs' Exhibits</u>

    1.    **Plaintiffs intend to introduce the following exhibits into evidence (list by number with a description of each):**

Plaintiffs' Exhibit List with Defense Objections, attached hereto as Exhibit F.

    2.    **Defendants object to the introduction of plaintiffs' exhibits (set forth number of an exhibit and grounds for objection):**

Plaintiffs' Exhibit List with Defense Objections, attached hereto as Exhibit F.

B.    <u>Defendants' Exhibits</u>

    1.    **Defendants intend to introduce the following exhibits into evidence (list by number with a description of each):**

Defendants' Exhibit List with Plaintiffs' Objections, attached hereto as Exhibit G.

    2.    **Defendants object to the introduction of plaintiffs' exhibits (set forth number of an exhibit and grounds for objection):**

Defendants' Exhibit List with Plaintiffs' Objections, attached hereto as Exhibit G.

### C.     Parties' Joint Trial Exhibit List

The Parties' Joint Trial Exhibit List is attached hereto as Exhibit H.  The Parties have stipulated as follows with respect to the Joint Exhibit List:

(1) All exhibits on the Joint Exhibit List are admitted into evidence.

(2) Any Party may argue that any Joint Exhibit:  (a) is not credible, (b) is inaccurate, (c) lacks probative value, and/or (d) for any other reason should not be given weight by the Court.


## PART VIII.  LAW

### A.     Plaintiffs

#### 1.     Plaintiffs' statement of the legal issues in this case:

1.     Are Plaintiffs entitled to a jury trial?[2]

2.     Is the magnitude of the management fees received by Defendants from the Plaintiffs' Funds during the period at issue consistent with the fiduciary duty owed by Defendants pursuant to § 36(b) of the Investment Company Act?

3.     Were the enormous management fees received by Defendants from the Plaintiffs' Funds during the period at issue the product of an arm's length negotiation?

4.     Were the enormous management fees received by Defendants from the Plaintiffs' Funds during the period at issue so disproportionately large that they bear no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining?

---

[2] Plaintiffs understand that the Court already granted Defendants' Motion to Strike Plaintiffs' Jury Demand, and only include this as a legal issue out of an abundance of caution to preserve it for appeal.

5.     Did Defendants' fiduciary obligation pursuant to § 36(b) of the Investment Company Act require them to share the savings reaped from use of Sub-Advisers with the shareholders?

6.     Is Defendants' compensation (*i.e.*, the portion of the management fees retained by Defendants from the total management fees) consistent with their fiduciary duty pursuant to § 36(b) of the Investment Company Act?

7.     Is Defendants' compensation so disproportionately large that it bears no reasonable relationship to the services rendered by Defendants and could not have been the product of arm's length bargaining?

8.     If Defendants' compensation is so disproportionately large that it bears no reasonable relationship to the services rendered by Defendants and could not have been the product of arm's length bargaining, can Defendants evade liability under § 36(b) of the Investment Company Act by bundling their compensation with the Sub-Advisory Fees paid to the Funds' Sub-Advisers?

9.     If Defendants' compensation is found to be a breach of fiduciary duty, what is the proper measure of damages and other relief to be awarded to the Plaintiffs' Funds?

10.    If Defendants' compensation is found to be a breach of fiduciary duty, are Plaintiffs entitled to recover lost profits?

11.    Did the Board apply the proper standard when it reviewed and approved the subject fees?[3]

12.    Is the Board's approval of the subject fees entitled to any deference given the facts of this case?

13.    If the Board's approval of the subject fees is entitled to deference, what is the impact of such deference on Plaintiffs' claims if the magnitude of the management fees received by Defendants is found to be so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining?

---

[3] Plaintiffs' understand that the Court has already made a ruling regarding the Board's actions, and thus simply list these legal issues in Numbers 11-13 out of an abundance of caution to ensure they are preserved for appeal.

**B.** __Defendants__

      **1.** **Defendants' statement of the legal issues in this case:**

1.    Are the investment management fees paid by the Funds to Defendants "so disproportionately large that [they] bear[] no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining," *see Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 346 (2010) (adopting standard established by the Second Circuit in *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 928-29 (2d Cir. 1982)), where Defendants provided extensive services to the Funds, the Court has already found that the Funds' Independent Directors had ample information concerning each *Gartenberg* factor, and the Independent Directors' decision to improve the Funds' fees is entitled to substantial weight?

2.    May Plaintiffs base their claim on the Funds' performance where fund performance is only "marginally helpful in evaluating the services . . . offer[ed]" by Hartford?  *Migdal v. Rowe Price-Fleming Int'l, Inc*, 248 F.3d 321, 327 (4th Cir. 2001).

3.    Have Plaintiffs adduced any evidence of breach of fiduciary duty by Defendants with respect to Defendants' receipt of compensation where the fees charged to the Funds fall within the range of fees charged by comparable funds?

4.    Have Plaintiffs shown any breach of fiduciary duty by Defendants with respect to Defendants' receipt of compensation where Defendants' profitability for each Fund is within the range of profitability that has been found acceptable by courts in other Section 36(b) cases and the Board's decision approving the compensation is entitled to substantial weight?  *See, e.g., Schuyt v. Rowe Price Prime Reserve Fund, Inc.*, 663 F. Supp. 962, 979 (S.D.N.Y. 1987) (pre-tax margins up to 77.3% and post-tax margins up to 38.6%); *In re Am. Mut. Funds Fee Litig.*, No. 04-5593, 2009 U.S. Dist. LEXIS 120597, at *135-137 (C.D. Cal. Dec. 28, 2009) (pre-tax margins ranged from 30% to 52%); *Kalish v. Franklin Advisers, Inc.*, 742 F. Supp. 1222, 1236, 1250 (S.D.N.Y. 1990) (post-tax margin up to 37.8% "neither requires nor supports a finding [of excessiveness]"); *Krinsk v. Fund Asset Mgmt., Inc.*, 715 F. Supp. 472, 502-03 & n.61 (S.D.N.Y. 1988) (margins as high as 33% were "well within the realm of reasonableness").

5.      Have Plaintiffs met their burden of proof regarding the *existence* of any potential economies of scale concerning any Fund?  *See In re Am. Mut. Funds Fee Litig.*, 2009 U.S. Dist. LEXIS 120597, at *77; *Krinsk*, 715 F. Supp. at 496.

6.      Have Plaintiffs adduced any evidence that economies of scale, if they existed, were inadequately shared with investors in the Funds, where Defendants implemented multiple mechanisms for sharing potential fee economies, including breakpoints (which courts have recognized as a form of sharing), fee waivers, and reinvestments in the Funds?  *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 528 F. Supp. 1038, 1054 (S.D.N.Y. 1981); *In re Am. Mut. Funds Fee Litig.*, 2009 U.S. Dist. LEXIS 120597, at *139-140.

7.      Did any indirect benefits (*i.e.*, "fall-out benefits") accrue to Defendants or their affiliates that "would not have occurred *but for* the existence of" the Funds? *In re Am. Mut. Funds Fee Litig.*, 2009 U.S. Dist. LEXIS 120597, at *53 (emphasis in original) (quoting *Krinsk,* 715 F. Supp. at 495).


## PART IX:  <u>MISCELLANEOUS</u>

**Set forth any additional stipulations of counsel and/or motions on other matters which require action of the court.**

**Set forth any notice required to be given under Rules 40(b), 609(b), 803(24) and 804(b)(5), Federal Rules of Evidence.**

For purposes of streamlining the case, Defendants agree not to argue that Plaintiffs' failure to call any individual Plaintiff as a witness at trial should be construed against Plaintiffs.

### A.     PENDING/CONTEMPLATED MOTIONS

<u>For Plaintiffs:</u>

Plaintiffs contemplate moving *in limine* to bar the following evidence

expected to be offered by Defendants at trial:

Plaintiffs contemplate moving to bar all evidence offered by the defense relating to distribution expenses and marketing expenses because these expenses are (a) irrelevant and (b) Defendants objected to producing discovery related to distribution expenses.

Plaintiffs contemplate moving the bar the testimony of Thomas Mack because his purported testimony constitutes expert opinion, Mr. Mack was not identified as an expert by the defense and Defendants did not serve an expert report or summary of his opinions as required by Fed. R. Civ. P. 26(a)(2)(C). Additionally, if the Court has already ruled on the degree of deference it will give the Board, Mr. Mack's testimony is irrelevant because he served as a Board consultant.

Plaintiffs contemplate moving *in limine* to bar the expert testimony of defense expert Robin Cooper for Defendants' failure to preserve and disclose to Plaintiffs records and notes of communications received by the experts during interviews they conducted with various Board Members and Defendants' employees, which persons made various statements and representations to these experts, which were used to formulate their opinions.

Plaintiffs contemplate moving *in limine* to bar the testimony of defense expert Robin Cooper for Defendants' failure to preserve and disclose to Plaintiffs information, revisions and comments provided by Analysis Group, Inc., to Mr.

Cooper for his expert report.   (Robin Cooper wrote his report in conjunction with the Analysis Group, Inc.).

The above information are facts and data that defense expert Cooper considered, reviewed or relied upon in developing and or formulating his opinions, and Fed. R. Civ. P. 26 (a)(2)(B) required their disclosure to the Plaintiffs.

Plaintiffs contemplate moving *in limine* to bar Defendants and Dr. Hubbard from use of and testimony surrounding the "Hubbard Peer Groups" for failure to satisfy the standards governing admissibility of expert testimony.

Plaintiffs contemplate moving *in limine* to bar Defendants use of DX-310, DX-311, DX-360, DX-361 and DX-480 because these documents were not produced in fact discovery.

**For Defendants:**

As described above in Part VI, Section 2, Defendants contemplate filing a motion to strike the testimony of each of: (i) Kent Barrett, CPA; and (ii) Richard Kopcke, Ph.D.  Defendants also intend to file a motion to strike any testimony related to independence, care, and conscientiousness of the Funds' Independent Directors, as the Court previously ruled in the Summary Judgment Opinion that no factual dispute remains with respect to the care and contentiousness of the Board. *See* SJ Opinion at 52-53.

In addition, Defendants intend to file a motion *in limine* to preclude Plaintiffs from introducing evidence or making argument that contradicts the Court's ruling that under Section 36(b), the "combined services" of both Hartford and Wellington "should be measured against the totality of the advisory fee." *Id.* at 42-43. Further, prior to any damages phase of this trial, Defendants contemplate filing a motion to preclude Plaintiffs from introducing evidence at trial of damages models or computations that were not disclosed prior to the close of discovery.

Further, Defendants contemplate moving *in limine* to bar Plaintiffs' use of certain exhibits at trial that are not on the parties' joint exhibit list because the exhibits were not produced in discovery. These exhibits include, for example, PX-268 through PX-274, PX-489, PX-490, and PX-504 through PX-508.

Finally, Defendants anticipate moving to seal portions of the trial record relating to Hartford's non-public, confidential information relating to internal cost and profit margins on the grounds that disclosure of this information would threaten Hartford's competitive standing in the mutual fund marketplace.

## B.    CHOICE OF LAW:

Federal substantive law applies under Section 36(b) of the ICA.

## C.    BIFURCATION:

The Court recently stated in its order granting Defendants' motion to strike Plaintiffs' jury demand that it will try the issues of liability and damages separately.

**PART X.**   **NON-JURY TRIALS (if applicable)**

No later than seven days prior to the scheduled trial date, counsel for each party shall submit to the District Judge, with a copy to opposing counsel, proposed findings of fact and conclusions of law.  There is reserved to counsel the right to submit additional requests during the course of the trial on those matters that cannot reasonably be anticipated.

**PART XI.**   **JURY TRIALS (If Applicable)**

No later than seven days prior to the scheduled trial date or at such time as the court may direct:

    **1.**   Each party shall submit to the District Judge and to opposing counsel a <u>trial brief</u> or memorandum with citations to authorities and arguments in support of the party's position on all issues of law.  The trial brief shall be electronically filed.

    **2.**   Each party shall submit to the District Judge and to opposing counsel, <u>written requests for charges to the jury</u>.  Supplemental requests to charge that could not have been anticipated may be submitted at any time prior to argument to the jury.  All requests for charge shall be on a separate page or pages, plainly marked with the name and number of the case; shall contain citations of supporting authorities; shall designate the party submitting same; and shall be numbered in sequence.

    <u>IF</u> you have the capability, the Proposed Requests for Charge should be submitted on computer disk, Word Perfect format.  All proposed requests for charges shall be electronically filed, and the paper copy must also be provided.

    **3.**   Each party shall submit to the judge and to opposing counsel <u>proposed voir dire questions</u>.

    **EACH OF THESE ITEMS IS TO BE FILED PRIOR TO THE FIRST TRIAL DATE EVEN IF THE CASE IS CONTINUED.**

    **COUNSEL ARE ON NOTICE THAT FAILURE TO PROVIDE TIMELY COMPLIANCE WITH THE REQUESTS OF PART X AND XI MAY RESULT IN THE POSTPONEMENT OF TRIAL AND THE**

**ASSESSMENT OF JUROR AND OTHER COSTS AND/OR THE
IMPOSITION OF SANCTION**

### CONCLUDING CERTIFICATION

We hereby certify by the affixing of our signatures to this Final Pretrial Order that it reflects the efforts of all counsel and that we have carefully and completely reviewed all parts of this Order prior to its submission to the Court. Further, it is acknowledged that amendments to this proposed Joint Final Pretrial order after October 31, 2016, will not be permitted except where the Court determines that manifest injustice would result if the amendment is not allowed.

Attorneys for Plaintiffs:                    Attorneys for Defendants:

/s/ Daniel S. Sweetser
Daniel S. Sweetser                            /s/ Anthony J. Sylvester
                                              Anthony J. Sylvester

                                              /s/ Sean M. Murphy
                                              Sean M. Murphy


Entry of the foregoing Joint Final Pretrial Order is hereby APPROVED this
___ day of _____, 20__



Hon. Karen M. Williams
UNITED STATES MAGISTRATE JUDGE
United States District Court
For the District of New Jersey


41